Jenny L. Riggs (SBN: 204417)
jriggs@meyersnave.com
Margaret W. Rosequist (SBN: 203790)
mrosequist@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
600 B Street, Suite 1650
San Diego, California 92101
Telephone: (619) 330-1700
Facsimile: (619) 330-1701

Attorneys for Defendant
CITY OF SAN DIEGO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ASPHALT SOUTH, INC, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a Municipal corporation,<br><br>Defendant. | Case No. 3:21-cv-00176-DMS-NLS<br><br>*[Assigned for All Purposes to:<br>Hon. Dana M. Sabraw, Dept. 13A]*<br><br>**DEFENDANT CITY OF SAN DIEGO'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Action Filed:    January 29, 2021<br>Trial Date:       None Set |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND ....................................................................... 1

    A. Investigation of AAS's Fraudulent Activity. ........................................... 1

    B. AAS's Request That The Debarment Hearing Be Delayed. ................... 3

    C. The City's Accusation And The Upcoming Debarment Hearing ........... 5

III. PLAINTIFF HAS NOT MET THE HIGH BAR REQUIRED TO SATISFY THE NEED FOR EMERGENCY EX PARTE RELIEF ................. 5

IV. PLAINTIFF HAS FAILED TO MEET THE SUBSTANTIVE REQUIREMENTS FOR THE ISSUANCE OF A TRO ................................. 8

    A. Plaintiff Will Not Suffer Irreparable Harm In The Absence Of A TRO. ......................................................................................................... 9

    B. Plaintiff Is Unlikely To Succeed On The Merits Of Its Claims. ............. 9

    C. The Balance Of Equities Tips Heavily In The City's Favor To Ensure The Integrity Of Its Bidding Process And Contractors. ........... 13

    D. Denial Of The TRO Request Is In The Public Interest As It Prevents A Bad Actor From Bidding On City Projects. ........................ 14

V. CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. United States*,
    932 F. Supp. 1206 (N.D. Cal. 1996) .................................................................. 13

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ............................................................................. 9

*Anderson v. United States*,
    612 F.2d 1112 (9th Cir. 1979) ............................................................................. 7

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972) .......................................................................................... 10

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959) ............................................................................................ 9

*Brown Jordan Int'l v. Mind's Eye Interiors, Inc.*,
    236 F. Supp. 2d 1152 (D. Haw. 2002) ................................................................ 6

*Golden Day Sch., Inc. v. State Dep't of Educ.*,
    83 Cal. App. 4th 695 (2000) ........................................................................ 10, 11

*Gonzalez v. Freeman*,
    334 F.2d 570 (D.C. Cir. 1964) .......................................................................... 10

*Gradetech, Inc. v. City of San Jose*,
    2020 WL 1667418 (N.D. Cal. 2020) ................................................................. 10

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*,
    415 U.S. 423 (1974) ............................................................................................ 6

*Guzman v. Shewry*,
    552 F.3d 941 (9th Cir. 2009) ............................................................................... 9

*Hunt v. Nat'l Broad. Co., Inc.*,
    872 F.2d 289 (9th Cir. 1989) ............................................................................... 6

*Mednik v. State Dep't of Health Care Servs.*,
    175 Cal. App. 4th 631 (2009) ............................................................................ 10

<a>
</a>

*Reno Air Racing Ass'n., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .................................................................................. 6

*Sagana v. Tenorio*,
    384 F.3d 731 (9th Cir. 2004) ................................................................................. 10

*San Bernardino Physicians' Servs. v. San Bernardino Cnty.*,
    825 F.2d 1404 (9th Cir. 1987) ............................................................................... 10

*Shane Meat Co. v. United States Dep't of Defense*,
    800 F.2d 334 (3rd Cir. 1986) ................................................................................ 13

*Stanchart Sec. Int'l, Inc. v. Galvadon*,
    2012 WL 5286952 (S.D. Cal. 2012) ....................................................................... 6

*Stanley v. Univ. of Southern Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ........................................................................... 6, 7, 9

*Tipple v. Cnty. of San Diego*,
    2006 WL 8455457 (S.D. Cal. 2006) .................................................................... 6, 7

*Transco Sec., Inc. v. Freeman*,
    639 F.2d 318 (6th Cir. 1981) ................................................................................. 11

*Winter v. Nat'l Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................... 8

*Yi Tai Shao v. Tsan-Kuen Wang*,
    2014 WL 12796401 (N.D. Cal. 2014) ..................................................................... 6

**Statutes**

California Government Code § 53087.6 .................................................................... 4

California Public Records Act ............................................................................... 1, 4

San Diego Municipal Code Chapter 2, Article 2, Division 8 ................................ 2, 3

**Other Authorities**

Fourteenth Amendment ............................................................................................. 9

City's Administrative Regulation No. 25.90, § 4.2.7 ......................................... 5, 11

Fed. R. Civ. Proc. R. 4 (j)(2) .................................................................................... 8

Fed. R. Civ. P. Rule 65(b)(1) ................................................................................... 8

Fed. R. Civ. Proc. § 65(b)(1)(A) ............................................................................... 6

## I. INTRODUCTION

Plaintiff American Asphalt South, Inc., has requested on an emergency, expedited basis that this Court issue a mandatory injunction to change the parties' positions with respect to each other – and all before Plaintiff has served its complaint on Defendant the City of San Diego. Its request arises from its contention that the City has delayed too long in seeking a hearing date for the hearing to permanently debar Plaintiff from bidding on public contracts in the City due to Plaintiff's fraud and bribery. But Plaintiff itself is responsible for much of the delay, and indeed in its related state court action against the City, it alleges in a Verified Petition that the City *must not* move forward on setting a debarment hearing until Plaintiff has obtained and reviewed a number of documents it has sought pursuant to the California Public Records Act.

Even leaving that aside, however, Plaintiff's Ex Parte Application for Temporary Restraining Order ("TRO") And Order To Show Cause Regarding Preliminary Injunction should be denied. Plaintiff has not met its burden of showing the need for immediate emergency injunctive relief to stay its suspension from bidding on projects for the City of San Diego ("City") pending the outcome of Plaintiff's debarment proceeding. Moreover, Plaintiff will not suffer irreparable harm without a TRO, is unlikely to succeed on the merits of its claims and cannot show that the balance of equities or the public interest will be served by the issuance of a TRO. The Court should deny Plaintiff's TRO request for these reasons as well. The City's temporary suspension of Plaintiff must be allowed to stand through the conclusion of the debarment process—the integrity of the City's bidding process depends on it.

## II. FACTUAL BACKGROUND

### A. Investigation of AAS's Fraudulent Activity.

A whistleblower report and law enforcement investigation prompted an internal investigation at the City. Mougin Decl., Exh. A, p. 6. That investigation

"determined that American Asphalt South, Inc. (AAS) has acted in ways that justify debarment as described in San Diego Municipal Code Chapter 2, Article 2, Division 8 (Debarment)." *Id.*  Quoting extensively from various emails exchanged between Plaintiff and a City employee whom Plaintiff provided with tickets and travel, the City's letter suspending Plaintiff pending debarment set out Plaintiff's pattern of cheating during the bidding process by providing gifts off the books for a City employee.  For example, Plaintiff provided a City employee with "tickets to a football game at Levi's Stadium in the San Francisco Bay Area, including hotel and airfare," as well as "invitations to Annual MSA Golf Tournaments between 2012 and 2016." *Id.*

But Plaintiff's conduct did not begin and end with making unauthorized gifts of travel and attendance at sporting events; it obtained advantages after it provided those "gifts" to a City employee.  The investigation revealed that "AAS obtained a competitive edge [in bidding] by convincing the City to accept a different slurry seal material, because AAS was unable to obtain the material that was originally called for in the invitation to bid." *Id.*, Exh. A, p. 7.  In addition, the investigation revealed that AAS had conspired with a City employee in an effort to "remove subcontractors listed in bid documents, … create fraudulent change orders, and complete an excess of $715,000 of subcontractor work in house." *Id.*

Plaintiff also sought the assistance of a City employee to submit "unreasonably low bids with a covert understanding that [the City employee] would later approve change orders and price increases." *Id.*, Exh. A, p. 8.  The wrongdoing was not limited to bids, however.  The investigation revealed that Plaintiff conspired with a City employee to "alter AAS billing so that AAS could obtain more money than they were entitled to." *Id.*, Exh. A, p. 9.

Furthermore, the investigation determined that Plaintiff's actions showed a consciousness of wrongdoing:  Plaintiff routinely avoided City email systems to engage in these covert communications with a City employee, addressing the emails

instead to the City employee's personal email account. *Id.*, Exh. A, p. 10. This, even though Plaintiff had been directed that its only communications were to be with the Resident Engineer on a project. *Id.* As the investigation concluded, "The preceding examples show the City's inability to trust AAS, as AAS was going behind the back of City employees that administer the contract, to obtain advice from [a City employee] on how to gain advantages over the construction managers…. AAS has shown their willingness to manipulate prices and the contracting process." *Id.*, Exh. A, p. 12.[1] The City therefore notified Plaintiff that Plaintiff was suspended pending a debarment hearing.

### B. AAS's Request That The Debarment Hearing Be Delayed.

After the City sent its letter suspending Plaintiff pending debarment, the City learned that Plaintiff had retained a law firm that previously had represented the City. Concerned about the perceived conflict of interest to find that its former lawyers now were adverse to it, the City necessarily considered whether this perceived conflict needed to be remedied. Ultimately, on September 30, 2020, the City advised its former lawyers that "the City has decided to not pursue further action against your firm in regard to the conflict of interest issues previously identified." Mougin Decl., ¶¶ 5-6 and Exh. B. The City therefore requested that Plaintiff cooperate in providing dates it would be available for a hearing with the Office of Administrative Hearing ("OAH"). *Id.* When filing an Accusation for debarment with the OAH, a form "Request to Set" is concurrently submitted and asks counsel for both parties to provide available dates. *See* Johnson Decl., Exh. C.

///

///

---

[1] Plaintiff does not deny that it engaged in these actions; instead, it accuses the City of misunderstanding Plaintiff's "business practices" and alleges that the City lacks "context" for Plaintiff's actions. *See* MPA ISO Ex Parte at 3:12, 5:3. Presumably at the debarment hearing Plaintiff will offer the missing context that it believes will explain its conduct that, on its face, is grounds for debarment.

While the City was investigating the potential conflict of interest with Plaintiff's counsel, Plaintiff began submitting a number of requests under the California Public Records Act, seeking various documents. Mougin Decl., ¶ 8. The City dutifully began responding to those requests, but given the voluminous nature of the requests (nearly a hundred separate requests, some covering a span of ten years), the documents were provided on a rolling basis. In addition, some of the documents sought under the Public Records Act (particularly those subject to the Act's whistleblower protections at California Government Code § 53087.6) simply are not disclosable records. *See*, *e.g.*, Mougin Decl., ¶ 4. But others are, and the City has been rolling productions out to Plaintiff.

Despite this, on October 22, 2020, Plaintiff filed an action against the City in state court. Mougin Decl., ¶ 9, Exh. D. In its Verified Petition, Plaintiff asserted that the City could not move forward with the debarment hearing because, Plaintiff contended, it needed the advantage of obtaining documents from the City to prepare for the debarment hearing, before engaging in the discovery process (which, of course, would allow the City to obtain information from Plaintiff). *See*, *e.g.*, *id.*, Exh. D at ¶ 41. Having sued the City in state court, claiming its rights were being violated because the City was moving forward with a debarment hearing, Plaintiff now sues in federal court (its state action remains pending), claiming the precise opposite.

While Plaintiff has provided no authority for its position in its state court action that debarment cannot move forward until Plaintiff has gathered sufficient public records from the City, its litigation position and the City's attempts to coordinate with Plaintiff may provide an argument that such constitutes "good cause"[2] to delay setting a hearing date. Plaintiff has not withdrawn its state court

---

[2] Specifically. pursuant to the City's Administrative Regulation "When a *bidder* or *contractor* is suspended, the Chief Operating Officer should appoint a *Board* or an independent hearing officer to hear the *debarment* within a reasonable amount of time, based on the circumstances of the case, not to exceed 30 calendar days unless the *bidder* or *contractor* presents good cause to extend the time." Mougin Decl.,

action against the City. It has simply filed the instant action in federal court, making an assertion contrary to its assertion in its pending state court action. Plaintiff cannot have it both ways, claiming foul if the City moves forward with OAH to set a debarment hearing date and then filing suit claiming the City has violated its constitutional due process rights because no hearing date has been set.

### C. The City's Accusation And The Upcoming Debarment Hearing

The City has now filed and served its Accusation with the OAH, and awaits the OAH's assignment of a hearing officer and a hearing date. Johnson Decl., ¶ 5 and Exh. C. Despite Plaintiff's assertions to the contrary, the City does not control the hearing date; much as with a trial court, the parties do not dictate the hearing date. According to communications with staff at OAH, the hearing date is largely set based on the length of time the hearing is anticipated to take. The City made its best estimate when it filed (it did not have Plaintiff's time estimate to provide), and now awaits an assigned hearing date.

### III. PLAINTIFF HAS NOT MET THE HIGH BAR REQUIRED TO SATISFY THE NEED FOR EMERGENCY EX PARTE RELIEF

Plaintiffs' ex parte request for a temporary restraining order must be denied as Plaintiff does not qualify for, nor has it made a sufficient showing to support a need for, emergency expedited ex parte relief. This is especially true in this case where granting the ex parte relief sought by Plaintiff will undermine the integrity of the City's bidding process and allow a bad actor to continue to bid on, and potentially be awarded, City projects despite pending debarment proceedings.

Temporary restraining orders are for real emergencies only. The Federal Rules of Civil Procedure provide that a temporary restraining order may only be granted if specific facts are stated in an affidavit or a verified complaint that clearly

---

Exh. A, at p. 51 (City's Administrative Regulation No. 25.90, § 4.2.7).

show an immediate and irreparable injury that will result to the movant before the adverse party can be heard in opposition. Fed. R. Civ. Proc. § 65(b)(1)(A). Thus a plaintiff must clear a high bar to obtain ex parte relief. This "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438-39 (1974). Courts recognize very few circumstances justifying the issuance of an ex parte temporary restraining order. *See Reno Air Racing Ass'n., Inc. v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006).

While the standard for granting a temporary restraining order is "identical" to that for granting a preliminary injunction, where ex parte relief is sought, there is the additional requirement that the applicant show that immediate relief is necessary. *See, e.g.*, *Hunt v. Nat'l Broad. Co., Inc.*, 872 F.2d 289, 292 (9th Cir. 1989); *see also Stanchart Sec. Int'l, Inc. v. Galvadon*, 2012 WL 5286952, at *1 (S.D. Cal. 2012); *Brown Jordan Int'l v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002). Thus, ex parte temporary restraining orders are "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc.*, 415 U.S. at 438–39. Moreover, mandatory injunctive relief, namely where a plaintiff seeks to alter the status quo, is particularly disfavored. *Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1319-20 (9th Cir. 1994); *Tipple v. Cnty. of San Diego,* 2006 WL 8455457 (S.D. Cal. 2006).

First and foremost, Plaintiff's application for a temporary restraining order is fatally flawed as there is no risk of immediate irreparable injury justifying ex parte issuance of such relief. *See Stanchart Sec. Int'l, Inc.*, 2012 WL 5286952 at *3 (finding that, because the movants failed to show irreparable harm, the court need not analyze other factors for a temporary restraining order); *see also Yi Tai Shao v. Tsan-Kuen Wang*, 2014 WL 12796401, at *1 (N.D. Cal. 2014) (because the court

found that no "immediate and irreparable" harm will result the court did not address the merits of plaintiff's motion further).  Specifically, Plaintiff delayed before it sought ex parte TRO relief, waiting until the City advised it that the debarment Accusation was forthcoming.  Plaintiff's alleged due process injury is illusory and there are simply no facts in this case that justify issuing emergency injunctive relief to stay Plaintiff's suspension without giving the City time to present the full factual record to the Court.

Moreover, Plaintiff appears to rest on the mistaken proposition that because it alleges a constitutional violation, no further showing of a basis for emergency relief or irreparable injury is required.  Not so.  Plaintiff does not get a "free pass" simply because it is making a due process claim.  Likewise, Plaintiff's purported business harm, namely its alleged speculative business losses from not being able to bid for City projects, does not support injunctive relief as the appropriate relief (if any) would be monetary.  In short, Plaintiff has identified no threat of "irreparable harm" that meets the standard for an ex parte TRO.

Finally, courts disfavor mandatory injunctive relief—that is, relief seeking to alter the status quo. *Tipple,* 2006 WL 8455457, * 2; *Stanley,* 13 F.3d at 1320; *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (mandatory injunctive relief subject to a higher level of scrutiny).  And it is exactly such disfavored relief that Plaintiff seeks here.  Specifically, its TRO request for the Court to lift the City's suspension is an attempt to change Plaintiff's position vis a vis the City before Plaintiff's debarment proceeding is concluded.  The City has filed its Accusation regarding Plaintiff's fraudulent conduct, and Plaintiff is not entitled to TRO relief allowing it to disrupt the debarment process that is now under way—to find otherwise would allow Plaintiff to be awarded City contracts despite the serious accusations of bribery and fraud against Plaintiff that OAH will be considering and rendering a judgment on within the coming months.

///

Finally, Plaintiff has yet to effect service of process in this action, which requires Plaintiff to serve the City's "chief executive officer" or to serve the complaint in a manner that complies with state law. Fed. R. Civ. Proc. R. 4 (j)(2). Plaintiff's counsel (the City's former attorneys) have been informed previously, and again in relation to this action, that the City Clerk is the authorized agent for service of process. Despite this, Plaintiff has yet to make such service (it has sent copies to various other people, all of whom have informed Plaintiff's counsel that they are not authorized to accept service of process). Plaintiff's failure to serve the City is grounds to deny the emergency, expedited relief sought here.

## IV. PLAINTIFF HAS FAILED TO MEET THE SUBSTANTIVE REQUIREMENTS FOR THE ISSUANCE OF A TRO

The City has a critical interest in protecting the integrity and fairness of its bidding process, which includes preventing companies that engage in bribery and fraud from working on City projects. Plaintiff's demand that the Court lift the City's suspension prohibiting Plaintiff from bidding on City projects while Plaintiff's debarment proceeding is underway, is fundamentally flawed and the request for TRO relief to that effect must be rejected outright.

The Supreme Court has deemed a preliminary injunction to be "an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such extraordinary relief requires the moving party to show:

(1) likelihood of success on the merits;

(2) likelihood of irreparable harm absent a preliminary injunction;

(3) that the balance of equities tips in favor of issuing an injunction; and

(4) that an injunction is in the public interest.

*Winter*, 555 U.S. at 24; Fed. R. Civ. P. Rule 65(b)(1). In the alternative, the "sliding scale" approach can be used. Under this approach, a party seeking a preliminary injunction must show a combination of serious questions going to the merits, and

must also show that the balance of hardships tips sharply in the movant's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (holding that the sliding scale test remained valid). A weaker showing on either of the two points can be outweighed by a stronger showing on the other. *Id*. Plaintiff falls well short of satisfying either of the standards for granting extraordinary relief.

### A. Plaintiff Will Not Suffer Irreparable Harm In The Absence Of A TRO.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 & n. 8 (1959); *Stanley,* 13 F.3d at 1320. Here, Plaintiff seeks a mandatory TRO (one that changes the status quo). The Court accordingly must also consider whether the law and the facts clearly favor a finding of irreparable harm and inadequate remedies sufficient to grant a TRO, and in this case they do not. *See id.*. As discussed in detail above, Plaintiff has failed to make a showing of immediate irreparable harm that would warrant this Court issuing an order staying the City's suspension of Plaintiff while the debarment process is underway. Accordingly, its TRO request must be denied.

### B. Plaintiff Is Unlikely To Succeed On The Merits Of Its Claims.

Plaintiff argues it is entitled to a TRO because it is likely to succeed on the merits of its Fourteenth Amendment procedural due process claim based on an alleged fundamental constitutional right to bid on City projects and because the City has violated its due process rights. Plaintiff is wrong on both counts.

First, Plaintiff's suspension does not rise to the level of impacting a fundamental constitutional right. While the Ninth Circuit has recognized there is a potential interest in pursuing one's calling, "all cases recognizing such a right" involve "a *complete prohibition* on the right to engage in a calling, and not [a] sort of brief interruption." *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009) (alteration and emphasis in original) (internal quotation marks omitted). As such,

any right to work is a "very narrow one" and has never been held to be "fundamental." *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004). Here, the City's suspension of Plaintiff's right to bid on City contracts does not implicate a fundamental right as it is not a complete prohibition on Plaintiff's "calling" or right to work. Plaintiff is free to bid on contracts for other municipalities, government agencies or on projects for private parties. Moreover, Plaintiff's ability to bid on City contracts is only impacted until the debarment proceeding is complete, and courts have specifically found that a suspension (unlike a permanent debarment) is not a violation of a liberty interest or fundamental right. *See Gradetech, Inc. v. City of San Jose*, 2020 WL 1667418, at *7 (N.D. Cal. 2020). Moreover, Plaintiff does not have any clearly protected constitutional right to bid on future potential contracts that it has not already won. *See Gradetech*, 2020 WL 1667418, *8; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575-76 (1972); *San Bernardino Physicians' Servs. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987). If Plaintiff is not debarred, there will be no ongoing effect from its suspension, and if it is debarred it can then evaluate any due process claim related to the actual debarment. *See Gradetech,* 2020 WL 1667418, *7. In short, Plaintiff's suspension does not amount to a permanent bar from public contracts or a total bar to a profession. Plaintiff's own authority recognizes there is no legal right to do business with the government and that instead there is simply a right to fairness in the process. *Golden Day Sch., Inc. v. State Dep't of Educ.*, 83 Cal. App. 4th 695, 706 (2000) citing *Gonzalez v. Freeman*, 334 F.2d 570, 574 (D.C. Cir. 1964). Accordingly, Plaintiff is highly unlikely to succeed on the merits of its claim that the City has deprived Plaintiff of its liberty interest in the pursuit of a chosen occupation by suspending its right to bid pending the outcome of the debarment proceeding. *See Gradetech,* 2020 WL 1667418, *8.

Second, Plaintiff's suspension does not violate due process. The courts specifically recognize that the process due for temporary suspensions is not as high

as the process due for a permanent debarment. *Mednik v. State Dep't of Health Care Servs.*, 175 Cal. App. 4th 631, 642 (2009). Moreover, even where a lengthy suspension is considered a de facto debarment, the process due is the same as for debarment itself, namely the right of the accused to know the charges against it, an opportunity to rebut the accusations, and (under most circumstances) the right to a hearing. *Golden Day Sch., Inc.,*, 83 Cal. App. 4th at 706; *Transco Sec., Inc. v. Freeman,* 639 F.2d 318, 321 (6th Cir. 1981). Here, all the elements of due process have been met, to wit: a formal Accusation has been filed against Plaintiff; Plaintiff will have the opportunity to rebut the charges; and a hearing is being set before the neutral decision-maker OAH at its earliest available date.[3] And even prior to the filing of the formal Accusation, Plaintiff was aware of the charges against it from lengthy communications between its counsel and City representatives. In short, Plaintiff is being given the process it is due.

To overcome this conclusion, Plaintiff attempts to manufacture a constitutional due process claim from its purported grievances about the length of the suspension and debarment process. But this stance lacks any factual or legal merit. In particular, while the process has taken longer than originally expected, this is in part because of Plaintiff's own actions. Moreover, the City's rules recognize that the timing may vary based on the circumstances of the case and where good cause to extend the time is present. *See* City's Administrative Regulation No. 25.90, § 4.2.7.[4] Here, Plaintiff requested a delay of the debarment proceedings (in fact claiming that if the debarment hearing were to be set, that alone would violate

---

[3] The OAH, like the federal and state courts, is highly impacted and hearings are not available for months out from the time of request. The City does not have control over these dates and instead is seeking to set the debarment hearing based on OAH's first available dates.

[4] The pertinent sections of the City's Administrative Regulation were attached as Attachment 3 to the June 16, 2020 letter to AAS regarding its suspension. Mougin Decl., Exh. A at p. 51.

Plaintiff's due process rights), prolonged the process by sending extensive PRA requests rather than using the discovery process of the debarment proceeding itself, and engaged in gamesmanship rather than coordinating with the City on debarment hearing dates to reserve with OAH.

Additionally, even assuming *arguendo* that Plaintiff had grounds to complain about the extension of time in setting the debarment hearing (which it does not), the mere fact that the debarment process is taking longer than specified does not warrant the TRO relief sought by Plaintiff here—namely, the stay of its suspension. Rather, Plaintiff is entitled to timely consideration of its debarment case and if its real concern is the alleged lack of due process because of purported delays, its relief is for the Court to order the City to file its Accusation, allow Plaintiff to rebut the Accusation, and provide Plaintiff with a debarment hearing. All these due process elements are being met and there is no injunctive relief for this Court to offer Plaintiff regarding its due process claim.

If after the debarment hearing Plaintiff is permanently debarred (as the City believes it should be), and if Plaintiff believes it was not afforded the process it was due, then it may bring a claim to this Court. But the City has sought a debarment hearing with OAH precisely because of its reputation for providing independent hearing officers, which further protects any of Plaintiff's due process rights, precluding litigation on that point.

But Plaintiff's request for TRO relief is not actually aimed at rectifying alleged due process violations; instead, it impermissibly seeks to circumvent the impact of debarment itself. For example, if Plaintiff is allowed to bid on City contracts, is then awarded a contract for a lengthy project, and a month later is debarred, Plaintiff will be working on an on-going City project despite its debarment or in the alternative the City will have to delay its project and reopen the bidding process. This is just what Plaintiff's temporary suspension is meant to avoid. Any claim about the lack of due process is not ripe, as the debarment proceeding is still

underway and this Court should not issue any TRO relief while OAH is considering the debarment.  In sum, this Court should reject Plaintiff's request to stay its suspension as Plaintiff is unlikely to win on the merits of its due process claims and as its TRO request is an impermissible attempt to circumvent the debarment proceeding.

### C. The Balance Of Equities Tips Heavily In The City's Favor To Ensure The Integrity Of Its Bidding Process And Contractors.

The balance of equities also precludes granting the emergency TRO relief sought by Plaintiff given the strong interest of the City in the fairness of its bidding process.  Specifically, a debarment proceeding is designed to protect the pivotal government interest in maintaining the integrity of government contracts.  *Shane Meat Co. v. United States Dep't of Defense*, 800 F.2d 334, 338 (3rd Cir. 1986).  An agency may impose debarment for the fraudulent conduct of a contractor as the government has a strong interest in protecting the integrity of the bidding process and of its contractors.  *Ali v. United States*, 932 F. Supp. 1206, 1210 (N.D. Cal. 1996).  The government's interest is not merely economic, but involves its ability to protect itself from dishonest contractors.  *Id.*  Thus, a contractor cannot tip the balance of equities in its favor for injunctive relief by asserting economic or speculative injury, such as a claim that the contractor is "missing valuable opportunities to obtain government contracts." *Id*. (finding the balance of hardships did not tip in the contractor's favor in claim for injunctive relief to stay debarment).

Here, the balance of equities clearly tips in the City's favor to prevent an alleged dishonest contractor from continuing to bid on contracts while the debarment proceeding moves forward.  Plaintiff here took steps to conceal its covert actions from the City.  For example, Plaintiff avoided the City employees charged with administering the contracts with Plaintiff, and instead directed communications to the private email of a City employee to get inside information about the bidding process.  After providing a host of examples of Plaintiff's lack of trustworthiness,

the City's Chief Operating Officer advised, "The preceding examples show the City's inability to trust AAS, as AAS was going behind the back of City employees that administer the contract, to obtain advice from [a City employee] on how to gain advantages over the construction managers…. AAS has shown their willingness to manipulate prices and the contracting process." Mougin Decl., Exh. A, p. 12. In light of these actions, the City opted to suspend Plaintiff from further bids on contracts, pending a review by an independent hearing officer.

### D. Denial Of The TRO Request Is In The Public Interest As It Prevents A Bad Actor From Bidding On City Projects.

Plaintiff's TRO relief should also be denied in order to protect the public interest. Here the City's interest in protecting the integrity of the bidding process is also in the public interest. The City's residents and business community should be protected from fraudulent contractors seeking to take advantage of the City's bidding process. The public interest in seeing unfair business practices shutdown will increase the public's trust in the bidding process and help prevent the waste of taxpayer money. Plaintiff's suspension for egregious and fraudulent bidding activity must not be lifted pending the outcome of its debarment hearing. To do otherwise will seriously undermine the public interest in protecting the integrity of the process that awards lucrative City contracts.

///
///
///
///
///
///
///
///
///

## V. CONCLUSION

For all the foregoing reasons, the City respectfully requests that this Court deny Plaintiff's ex parte application for a temporary restraining order and order to show cause regarding preliminary injunction.

DATED: February 3, 2021

MEYERS, NAVE, RIBACK, SILVER & WILSON

By: *[signature]*
JENNY L. RIGGS
MARGARET W. ROSEQUIST
Attorneys for Defendant
CITY OF SAN DIEGO