1 | Jenny L. Riggs (SBN: 204417)
jriggs@meyersnave.com
2 | Margaret W. Rosequist (SBN: 203790)
mrosequist@meyersnave.com
3 | MEYERS, NAVE, RIBACK, SILVER & WILSON
600 B Street, Suite 1650
4 | San Diego, California 92101
Telephone: (619) 330-1700
5 | Facsimile: (619) 330-1701

6 | Attorneys for Defendants
CITY OF SAN DIEGO

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 |

11 | AMERICAN ASPHALT SOUTH, INC, a California corporation,

12 | Plaintiff,

13 | v.

14 | CITY OF SAN DIEGO, a Municipal corporation,

15 |

16 | Defendant.

| Case No. 3:21-cv-00176-DMS-NLS

*[Assigned for All Purposes to: Hon. Dana M. Sabraw, Dept. 13A]*

**DECLARATION OF DEPUTY CITY ATTORNEY CASSANDRA MOUGIN IN SUPPORT OF DEFENDANTS CITY OF SAN DIEGO'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Action Filed:    January 29, 2021
Trial Date:      None Set

# DECLARATION OF CASSANDRA MOUGIN

I, Cassandra Mougin, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an attorney duly admitted to practice before this Court. I am a Deputy City Attorney with Defendant City of San Diego ("the City"), the Defendant in this action.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.     I have worked as a Deputy City Attorney for the City since April 2017. One of my primary responsibilities as a Deputy City Attorney has been to provide legal advice to the City's Department of Engineering and Capital Projects and the Department of Transportation and Storm Water.  As a result of my responsibilities with respect to those departments, I am familiar with issues pertaining to the suspension pending debarment of Plaintiff American Asphalt South, Inc. ("AAS") and am therefore familiar with the matters set forth herein.

3.     I have reviewed the June 16, 2020 letter sent by Chief Operating Officer Kris Michell to Allan Henderson, President and CEO of AAS, the Plaintiff in this action.  A true and correct copy of that letter is attached hereto as Exhibit A. The letter explains that much of the information leading to AAS's suspension pending debarment arose from a whistleblower complaint.  Attached as Attachment 2 to Ms. Michell's letter is a memo dated April 13, 2020, addressed to Ms. Michell from Kyle Elser, then the Interim City Auditor.  In the first paragraph of Mr. Elser's memo, he states that the investigation began from a "Fraud Hotline Report alleging fraud by a City employee."  That whistleblower report was, according to Mr. Elser, turned over to law enforcement to investigate.

4.     On July 9, 2020, I participated in a phone call with Brian Wheeler, counsel for AAS.  I have reviewed Mr. Wheeler's declaration submitted in support of Plaintiffs' Ex Parte application, and although Mr. Wheeler in his declaration does

1    not identify the "two deputy City attorneys" with whom he spoke (as set forth in

2    paragraphs 3 and 4 of his declaration), I am not aware that he had a call that day

3    with any other deputy City attorneys, and must presume that Mr. Wheeler simply

4    forgot that I participated in that call.  My memory of that July 9, 2020 call is

5    different than that of Mr. Wheeler.  For example, Mr. Wheeler states that the deputy

6    City attorneys with whom he spoke that day told him that the City would produce to

7    Plaintiff the emails cited in Ms. Michell's letter regarding AAS's suspension

8    pending debarment "shortly thereafter."  I do not recall either myself or my

9    colleague making that statement and because the emails at issue implicate the

10   statutory whistleblower protections under the California Public Records Act (see,

11   for example, California Government Code § 53087.6), I understand that there are

12   limitations on distribution of such materials.

13       5.      I am aware that in Mr. Wheeler's declaration at paragraph 3, with

14   respect to the informal meeting with Ms. Michell on July 15, 2020, he says that he

15   did not know "the contours of the meeting or what AAS should expect at the

16   meeting."  Again, my memory of that phone call is different from Mr. Wheeler's

17   memory.  I recall that Mr. Wheeler was told that the July 15, 2020 meeting would be

18   for Plaintiff to present whatever arguments or information it wanted the City to

19   consider with regard to Plaintiff's suspension pending debarment.  Further, the

20   City's position was that there would be no "evidentiary" rules or limitations on what

21   or how AAS could present the information it wanted to present.  I attended the

22   meeting on July 15, 2020, and at that meeting, Plaintiff through its counsel made an

23   informal presentation but did not provide (or even show) any documents to the City.

24       6.      I am informed and believe that counsel for AAS (Atkinson, Andelson,

25   Loya, Ruud & Romo) previously represented the City, including in relation to a

26   whistleblower complaint.  As a result, the City required some time to consider this

27   potential conflict of interest, during which time I limited my communications to

28   Plaintiff's counsel to avoid a claim that the City had waived the conflict.  The

2

Case No. 3:21-CV-00176-DMS-NLS

DECLARATION OF CASSANDRA MOUGIN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER

potential conflict was an issue of significant inquiry not only by the City but also by AAS's counsel, which I recall hired an outside firm to advise it on the issue. After the City considered whether counsel's representation of AAS adverse to the City was a conflict of interest, the City ultimately determined not to press on that point. On September 30, 2020, I therefore emailed counsel for AAS (Scott Dauscher and Mr. Wheeler), informing them that "[w]e were recently advised that the City has decided to not pursue further action against your firm in regard to the conflict of interest issues previously identified."

7. In that same email, I advised Mr. Wheeler and Mr. Dauscher that the Office of Administrative Hearings (the "OAH") prefers parties to agree on potential hearing dates when filing. I did not know what dates the OAH had available for a debarment hearing, but said "we think it is likely sometime this year. Please provide dates in the next few months and we will provide those to OAH." A true and correct copy of the email chain containing my September 30, 2020 email is attached hereto as Exhibit B.

8. On October 2, 2020, Mr. Dauscher responded to my email about hearing dates by replying, "We will get available dates and send them to you." A true and correct copy of the email chain containing my September 30, 2020 email is attached hereto as Exhibit C. Mr. Dauscher did not send any such dates.

9. Instead, counsel for AAS communicated that AAS would only be willing to proceed with setting a debarment hearing if the City agreed to produce all documents responsive to AAS's Public Records Act requests by a specific date, to allow AAS to prepare for a debarment hearing. AAS's Public Records Act requests, however, are in my opinion voluminous. As of the filing of this declaration, to the best of my knowledge, AAS has submitted about five different Public Records Act requests, containing approximately ninety-eight separate categories of information, some seeking ten or more years of information. The City's practice is to have each department respond to each PRA request independently, and therefore given the

3

1  extensive and voluminous nature of Plaintiff's PRA requests, the City has been

2  providing responsive documents on a rolling basis but was unable to provide all

3  documents by Plaintiff's suggested date.

4          10.     On or about October 22, 2020, AAS filed a Verified Petition for Writ of

5  Mandate (C.C.P. § 1085) and Complaint For Declaratory Relief For Public Records

6  in California Superior Court, County of San Diego (Case No. 37-2020-00038338-

7  CU-WM-CTL).  A true and correct copy of that Petition is attached hereto as

8  Exhibit D.  In that Petition, AAS states that the City must not be permitted to move

9  forward with a debarment hearing against AAS until it has responded to AAS's

10  Public Records Act requests:  "the City intends to proceed with its baseless

11  debarment hearing against AAS by the end of the year. Such an unconscionable

12  attempt to push through an enforcement proceeding without responding to AAS's

13  critical requests must not be permitted."  (See ¶ 41.)  The City was served with this

14  Petition on or about November 9, 2020.

15          I declare under penalty of perjury under the laws of the United States of

16  America that the foregoing is true and correct.

18          Executed February 3, 2021, at San Diego, California.

20  _____

    Cassandra Mougin

DECLARATION OF CASSANDRA MOUGIN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER

# EXHIBIT A



CITY OF SAN DIEGO

## KRIS MICHELL
### CHIEF OPERATING OFFICER

June 16, 2020

Mr. Allan A. Henderson, President & CEO
American Asphalt South, Inc.
14436 Santana Ave
Fontana, CA 92331

Re: Notice of Suspension and Initiation of Debarment Proceedings

Dear Mr. Henderson,

This letter is to inform you that the City of San Diego (City) is suspending American Asphalt South, Inc., pending debarment[1] proceedings, along with its officers, and its affiliates under San Diego Municipal Code (SDMC) §22.0807(a)(4) and 22.0807(a)(7). The grounds for suspension pending debarment are based on the following facts and evidence:

On April 13, 2020, the Office of the City Auditor issued a report entitled "Hotline Investigation of Gifts Received by a City Employee" (Attachment 2). This report prompted City staff to review and conduct a separate, internal investigation, of potential wrongdoing based on behavior identified by vendors included in the report. After conducting an internal investigation of City email correspondence and reviewing the City Auditor's confidential report, staff determined that American Asphalt South, Inc. (AAS) has acted in ways that justify debarment as described in San Diego Municipal Code Chapter 2, Article 2, Division 8 (Debarment).

1. **AAS created a conflict of interest by providing gifts, travel, and entertainment to City Employee A, a public employee with the authority to award option contracts, approve change orders up to $250,000, and authorize field order money up to $150,000 on AAS contracts.**

    City Employee A confirms he received gifts from contractors. Specifically, from AAS, tickets to a football game at Levi's Stadium in the San Francisco Bay Area, including hotel and airfare. The value of this gift totaled $563.60.

    Further, City Employee A received and attended invitations to Annual MSA Golf Tournaments between 2012 and 2016. The cumulative value of these tournaments totaled $382.50 (refer to Attachment 2 for detailed information).

2. **AAS has engaged in corrupt practices in the bidding, award, administration, or performance of a contract (SDMC §22.0807(a)(4)).**

---

[1] The City's debarment procedures are described in San Diego Municipal Code §22.0801 through 22.0826. Refer to Attachment 1.

Page 2 of 8
Mr. Allan A. Henderson, President & CEO
June 16, 2020

A contractor may be permanently debarred from City contracts when "... engaged in any corrupt practice in bidding, award, administration, or performance of a contract." For every bid submitted, AAS certified under the penalty of perjury a "Non-Collusion Affidavit" under 23 United Stated Code 112 and Public Contract Code 7106. In all instances where AAS was a prime bidder, this certification was attested to. However, based on the examples noted within this recommendation, the evidence found during the investigation indicate AAS frequently and actively engaged in dishonest and corrupt behavior in connection with City contracts, conspired with City Employee A to receive competitive advantages, and submitted sham bids. Based on the evidence, the following corrupt practices committed by AAS staff and officers include:

    **A. Scheming with City Employee A to extend bid opening dates and alter bidding documents via addendum to allow AAS to bid on projects.**

On at least one occasion, AAS obtained a competitive edge by convincing the City to accept a different slurry seal material, because AAS was unable to obtain the material that was originally called for in the invitation to bid.

In an email between City Employee A and a representative from AAS, a bid item for "Scrub Seal" on the FY '10 Slurry Seal Group V project that was actively advertising, the AAS representative asked City Employee A to delete the item:

    **AAS Representative:** *"You can't just delete the item."*

    **City Employee A:** *"Nope. It's set in stone...politics bro."*

In a separate email related to the same bid, a representative from AAS forwards an email between AAS and Petrochem Manufacturing, Inc. (PMI) indicating PMI has decided not to quote AAS. By PMI indicating they would not quote AAS for the proprietary product (Rubberized Emulsion Aggregate Slurry, known as REAS) specified in the bid, AAS would not be able to bid the project. Instead, working with City Employee A to change the proprietary product to a non-proprietary product, AAS put itself in a position to bid.

    **City Employee A:** *"Looks like I may be switching to RPMS then. Hang tight, I just discussed this with our Purchasing Dept. and they asked me to consult with my attorney. I'll get back to you. If PMI does have the legal right to do this, then I will have to delay the bids on all my projects one more month in order to switch the product."*

Subsequently, the bid opening date was extended, and a change in product was made to include an "or equal clause." This permitted AAS to submit a bid to include Rubber Polymer Modified Slurry (RPMS) in lieu of the proprietary PMI product.

    **AAS Representative:** *"You're the MAN!!!!!!!!!!!!!!!!!"*

    **City Employee A:** *"PMI doesn't have me in their pocket AND I don't take kindly to them playing dirty. It's a good thing AA[S] has you working for them and we both like guns."*

    **B. Conspired with City Employee A to remove subcontractors listed in bid documents, in violation of WHITEBOOK requirements, create fraudulent change orders, and complete an excess of $715,000 of subcontractor work in-house.**

Mr. Allan A. Henderson, President & CEO
June 16, 2020

Subcontractors listed on bid documents cannot be substituted without the express authorization of the City. Contractors' must follow the subcontractor substitution procedure contained within City of San Diego Standard Specifications for Public Works Construction, "The WHITEBOOK", including complying with Public Contract Code (PCC) 4107. Substitution requests must comply with one of the nine (9) reasons identified under PCC and as mirrored in the WHITEBOOK. Verification that a valid reason to substitute exists is conducted prior to authorizing such a substitution by appropriate City staff. Unauthorized, or illegal substitution of a subcontractor will result in a penalty being assessed as outlined under PCC 4110.

In an email from an AAS representative and City Employee A:

> **AAS Representative:** "*Here is the information on the last 2 options FY10 group III and FY10 group V. FY10 group III on this one we can delete the AC item (to get rid of Frank and sons) and CCO its back in afterwards so we can do it in house. Sub out the crack seal and striping depending on the $ amount to meet the goals to meet the 15.1% subcontracting goals. FY 10 group V on this one we have to give the AC to PAL due to the SLBE and ELBE goals. But we could not list Safe USA for the crack seal and do it in house.*"

The subcontractors on these projects were listed for $377,842 (Frank and Sons) and $338,340 (Safe USA) worth of work. The award to AAS was made based on low bid, but also the mandatory subcontractor participation requirements identified in the contract. Listing subcontractors to meet subcontractor participation requirements, and subsequently removing them to perform work in house is a violation. It is evident that AAS submitted a sham bid as AAS had no desire to provide the subcontract opportunities to the listed subcontractors. AAS intended to remove the subcontractors and retain the City money that would have gone to those listed subcontractors.

C. **Submission of unreasonably low bids with a covert understanding that City Employee A would later approve change orders and price increases.**

Prior to submitting its bids, AAS sought to gain a competitive advantage by asking City Employee A to comment upon or revise its bid.

A representative from AAS sent an email to City Employee A regarding the bid proposal for contract Option 14 S1.

> **AAS Representative:** "*I made this sheet for you to look at.*"

> **City Employee A:** "*See attached proposal. You guys are fleecing me! Yes, it's lower than the original contract, BUT you'll make it up in about $3 to $400k in change orders for mill/paves AND check out the bonus I'm giving you guys in bid items 12, 13, & 15! PARTY! Make sure you guys get yourself a little something special.*"

D. **Conspiring with City Employee A to obtain favorable prices and terms on City contracts to the detriment of the City, including being paid twice for completed work, creating change orders for payment of work already listed in contract documents and submitting invoices for incomplete work.**

In an email exchange regarding Slurry contracts:

> **AAS Representative:** "*Attached is the proposal for Granada Avenue.*"

Mr. Allan A. Henderson, President & CEO
June 16, 2020

> **City Employee A:** *"Thanks! Looks good. Don't think I didn't see the $750/ton digouts. I'm going to ask Field to ask you for a quote. Stay tuned."*

In an email exchange for a specific contract (FY11, Group 6), Transportation & Storm Water (TSW) Staff question a quote submittal by AAS for PCC Trench Resurfacing with City Employee A:

> **TSW Staff:** *"These tons were already identified in the bid docs. The contract states no additional payment shall be made for milling, grinding, or saw cutting PCC or other material. The REs don't understand why a perfectly good PCC trench cap needs removal—most likely due to failing sub around the trench. I know PAL doesn't like PCC but our contract is pretty clear. I've told the REs before that the issue is between PAL and American, not us.*
>
> *Do you want to approve all this 'extra work' that isn't?"*

> **City Employee A:** *"I see your point, but their claim is that it's a full digout of the PCC which by what I can tell isn't covered under milling, grinding, or saw cutting. In future overlay/slurry contracts, we're going to include a bid item for utility trench R&R."*

> **TSW Staff:** *"These were marked out and quantified as dig outs. What is the difference with so much PCC in the streets? AC contractors should know about San Diego streets being full of PCC trench caps. I'm missing the point of adding more bid items that don't get inspected. Contractors could claim all AC work is trench work and the RE wouldn't be the wiser. And, since Field won't enforce the contract, contractors get away with so many CCOs for 'extra work'. I know, I know--it is none of my business. I'll approve all CCOs without comment."*

In another instance, City Employee A forwards an email exchange amongst internal City staff related to work related to the Governor Drive Library. By forwarding such exchanges, AAS is given insider knowledge on what City staff is expecting, urgency, and willingness to execute a contract. Insider information allows a bidder to formulate their bid or quote in such a way that will appear attractive to the reviewer of such quote.

> **City Employee A:** *"Can you do a Type 2 over 3 on this? I'll pay the extra."*

> **AAS Representative:** *"I don't see why not. I'll look at it in the morning."*

AAS and City Employee A also plotted to alter AAS billing so that AAS could obtain more money than they were entitled to. AAS sent these communications to City Employee A's personal email account so that their scheming would not be discovered:

> **AAS Representative:** *"Hi [City Employee A], When we spoke a couple of weeks ago, you told me to send the June billings to you before sending them to the City for your review. I have attached the 3 estimated billings that would be completed at that time. Please let me know if there are any changes you would like me to make."*

> **City Employee A:** *"Looks good. I noticed the 'Crack Seal' bid item is really low on the billing. Can you bill me a lot more for that and still justify it to Field without them questioning you?"*

> **AAS Representative:** *"I have talked to our subcontractor for Crack Sealing and he was completely finished in May. He told me that [Name redacted] is aware of that."*

Mr. Allan A. Henderson, President & CEO
June 16, 2020

> **City Employee A:** *"Ok. Submit the invoices to Field Division today. Don't worry, you'll get all that money left on the contract. Thanks.*

3. **American Asphalt South has committed an act or omission so serious or compelling in nature that it affects the present responsibility of the bidder or contractor to be awarded a contract or to participate as a subcontractor (SDMC §22.0807(a)(7)).**

To promote integrity in the City's contracting processes and to protect the public interest, the City shall only do business with responsible bidders and contractors. A "responsible bidder" is defined as a one that has the quality, fitness, and capacity to satisfactorily perform the proposed work, while a non-responsible bidder does not. Further, Public Contract Code section 1103 defines "responsible bidder" – means a bidder who has demonstrated the attribute of **trustworthiness**, as well as quality, fitness, capacity, and experience to satisfactorily perform the public works contract. The City makes the determination if a contractor has the capability to fully perform contract requirements and the business integrity to justify the award of public funds.

Further, in *City of Inglewood– LA County Civic Center Auth. v Superior Court*, 7 Cal.3d 861, 863 (1972) the court defined responsible to include attributes of trustworthiness.

Based on the findings of the investigations conducted by Public Works and Office of the City Auditor, AAS has committed acts so serious that it affects their ability to perform as a responsible bidder, reveals their lack of business integrity, and puts into question their trustworthiness. The following acts committed by AAS and their staff supports these conclusions:

A. **AAS circumvented official City communications policy and protocol to achieve preferential treatment from City Employee A. AAS was informed through the WHITEBOOK, City bidding documents, and preconstruction meetings that a project's resident engineer is the single point of contact between the City and the contractor. AAS staff consistently sidestepped this policy and communicated directly with City Employee A on both his work and personal email accounts.**

Minutes of preconstruction meetings wherein AAS was a prime contractor all show the same direction was given to AAS regarding a single point of communication:

> *"There is a single point of contact between the City and the contractor, and that is the Resident Engineer, All communication and correspondences between the City and Contractor shall be through the RE, unless agreed to otherwise by the Resident Engineer. The contractor is represented by the Superintendent."*

AAS continuously circumvented this direction by reaching out directly to City Employee A, instead of the assigned resident engineer.

In an email exchange regarding a change in REAS to Type II Slurry, the AAS representative is showing their willingness to circumvent field engineering staff, the designated point of contact, and instead work through a project manager to get the product changed. Failure to follow clear, defined direction shows a lack of responsibility.

> **City Employee A:** "*I told you. The lab does not approve anything. They are there to do testing. I would find out who the project manager on the job is and go through that person to*

Mr. Allan A. Henderson, President & CEO
June 16, 2020

> change the product. Don't ever deal with Field Division on issues like this. Tell the project
> manager that you've already spoken with me and I'm ok with using RPMS."

> **AAS Representative:** *"I'll find out who the PM is."*

> City Employee A: *"I just thought of something that may help. [City employee name
> redacted] going to be upset if he finds out you went around the RE and asked the project
> manager directly. Give me an intersection near the project and I can look up the project
> manager for you with his email.  Then, email your question to the RE and cc the project
> manager.  That way you're letting the project manager what you want to do AND your still
> dealing directly with the RE.*

> **AAS Representative:** *"I see, good idea!"*

In an email related to an invoice for a group project, an AAS representative forwards an
exchange between TSW staff and AAS to City Employee A with the following question:

> **AAS Representative:** *"Do we really have to deal with the field orders on March invoice?"*

Here, the AAS Representative is questioning the resident engineer's request to correct the
invoice as submitted. The resident engineer states that money needed to be allocated to the
field order for extra work and that the quantities needed to be agreed upon prior to the
submittal as opposed to trying to back track charges.

Another email shows an exchange forwarded by an AAS Representative to City Employee A
regarding the Aldine Drive Slope Restoration project, awarded in April of 2011, where AAS
was performing as a subcontractor. The scope of the project was to install a retaining wall to
stabilize the slope on Aldine Drive segment between Van Dyke and Fairmount Avenues in the
Kensington neighborhood. The work would also include restoration of private property,
installation of irrigation, and street resurfacing and/or slurry. The application of the slurry
product by AAS was showing signs of failure and noted by City staff and AAS. The AAS
Representative indicated they [AAS] could make the repairs but would not be able to slurry
until August to help minimize shade and dry out wet areas.

> **AAS Representative:** *"Can they fix the seeping water?"*

> **City Employee A:** *"No."*

> **AAS Representative:** *"Have you decided what you want to do with this? This guy from
> [Contractor Name Redacted] is something else. He called my office wanting to talk to my boss
> so we gave him to [AAS Representative Name Redacted] and told him he needs to deal with
> me on it. Haha!!!! He said he just needs something from the city saying it is accepted because
> field is saying it is not. If you want I can re-slurry it again this time in a full closure in august
> and hope it holds until winter. Just to make it go away!"*

A separate email string with the same email string shows a separate question after City
Employee A says, "No.":

> **AAS Representative:** *"Why not add it to one of my contracts and do an over lay?"*

The request from the AAS Representative shows a blatant disregard to the use of public
funds. Instead of working to resolve the project under the warranty provisions of the

Mr. Allan A. Henderson, President & CEO
June 16, 2020

appropriate contract [Aldine Drive Slope Restoration, referenced above], AAS shows clear intent on requesting this be moved to a separate contract and to be paid for the same work for a second time.

**B. City Employee A covertly forwarded and blind copied AAS staff to internal City email communications. AAS staff received City communications involving citizen complaints, contractor performance issues, billing and invoicing disputes, changes in bidding documents, and internal City email communications. AAS was privy to internal City dialogue regarding their contracts, and benefited from advanced, inside knowledge.**

In an internal City email exchange forwarded to an AAS representative related to a Field Engineering/Street Division Coordination Meeting, the AAS Representative becomes aware of internal discussions and concerns related to AAS invoicing:

**City Employee A:** *"FYI. Stop submitting incorrect invoices."*

**AAS Representative:** *"That's not the issue. [City employee name redacted] is not making sense"*

**City Employee A:** *"It's always funny to hear their side of the story. How can there be quantity disputes every month? Why isn't the RE verifying quantities as the work occurs???"*

**AAS Representative:** *"I know, we have not had any disputes on quantities yet that I know of. The only problem we have is the as builts not being correct until mid-month sometimes"*

**City Employee A:** *"So then what's [City employee name redacted] crap about the invoices always been wrong?"*

**AAS Representative:** *"She had [City employee name redacted] change the dates and move stuff around (CCO)"*

**City Employee A:** *"You guys love to get abused. DON'T EVER CHANGE DATES. Make them pay you what the invoice you submit says and deal with the change orders as a separate issue."*

The preceding examples show the City's inability to trust AAS, as AAS was going behind the back of City employees that administer the contract, to obtain advice from City Employee A on how to gain advantages over the construction managers. These examples are not necessarily exhaustive of all communications between AAS and City Employee A. AAS has shown their willingness to manipulate prices and the contracting process. These actions make AAS a non-responsible bidder and unable to perform on City work.

It is in the best public interest to prevent harming the public's financial well-being and to maintain the public's trust to contract with contractors that do not violate the law.

<u>Presentation of Evidence, Arguments, and Burden of Proof:</u>

Pursuant to SDMC section 22.0809, an independent hearing officer will hear evidence and arguments from AAS and the City. The City shall bear the burden of proof by a preponderance of the evidence.

Page 8 of 8
Mr. Allan A. Henderson, President & CEO
June 16, 2020

Debarment proceedings before an independent hearing officer and the debarment process are also governed under Administrative Regulation 25.90 (Attachment 3). The City will contact you regarding scheduling a hearing.

You have the opportunity to appeal this suspension prior to the debarment hearing. If you want to appeal this suspension, you must submit a timely request to:

Ms. Alia Khouri, Deputy Chief Operating Officer
City of San Diego
202 C Street, 9th Floor, MS 9A
San Diego, CA 92101

Upon receipt of your written appeal, I will provide you with an opportunity to appeal the suspension at an informal meeting within seventy-two (72) hours, unless there is good cause to extend the time. Refer to the attached Administrative Regulation 25.90 for additional information.

By: _____
Kris Michell
Chief Operating Officer

Attachment(s):     1. SDMC §§ 22.0801–22.0826 – Debarment Ordinance
                              2. Hotline Investigation of Gifts Received by a City Employee (Report)
                              3. Administrative Regulation 25.90 – Procedures for Initiating
                                 Debarment and Debarment Hearings

cc:     Aimee Faucett, Chief of Staff, Office of the Mayor
        Jeff Sturak, Assistant Chief Operating Officer
        Rolando Charvel, Chief Financial Officer
        Eric Caldwell, Deputy Chief Operating Officer, Smart & Sustainable Communities
        Alia Khouri, Deputy Chief Operating Officer, General Services
        Johnnie Perkins, Deputy Chief Operating Officer, Public Utilities
        Matthew Helm, Chief Compliance Officer
        Kris McFadden, Director, Transportation Storm Water Department
        James Nagelvoort, Director, Public Works Department
        Kristina Peralta, Director, Purchasing & Contracting Department
        Myrna Dayton, Assistant Director, Public Works Department
        Cassandra Mougin, Deputy City Attorney, Office of the City Attorney
        Christina Rae, Deputy City Attorney, Office of the City Attorney
        Claudia C. Abarca, Deputy Director, Public Works Department

## Article 2:  Administrative Code

### Division 8:  Debarment
*("Budget Estimate" added 1–22–1952 by O–5046 N.S.)*
*(Retitled to "Debarment" on 4–15–1996 by O–18283 N.S.)*


**§22.0801        Purpose and Intent**

(a)        In order to promote integrity in the City's contracting processes and to protect the public interest, the City shall only do business with responsible *bidders* and *contractors*.

(b)        This Division sets forth the grounds for *debarment* and *suspension*.

*("Statement of Purpose" repealed and "Statement of Purpose" added 9–3–2002 by O–19093 N.S.)*
*("Retitled from "Statement of Purpose" to "Purpose and Intent" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*


**§22.0802        Definitions**

All defined terms in this Division appear in italics. For purposes of this Division:

*Adequate evidence* means information sufficient to support the reasonable belief that a particular act or omission has occurred.

*Affiliate* means:

(a)        the assignee, successor, subsidiary of, or parent company, of another *person*; or,

(b)        a *controlling stockholder* of a *person*; or,

(c)        a *person* who has the same or similar *management* of the *debarred* corporate or other legal entity; or,

(d)        a *person* who directly or indirectly controls, or has the power to control, another *person*, or is directly or indirectly controlled by another *person*. Indicia of control include interlocking *management* or ownership, identity of interests among *relatives*, shared facilities and equipment, and common use of employees; or,

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

(e)     a business entity organized following the *debarment*, *suspension*, or proposed *debarment* of a *person* which has the same or similar *management*, ownership or principal employees as the *bidder* or *contractor* that was *debarred*, *suspended* or proposed for *debarment*, or the *debarred person* or the business entity created after the *debarment*, *suspension*, or proposed *debarment* operates in a manner designed to evade the application of this Division or to defeat the purpose of this Division.

*Bidder* means a *person* who submits a bid, proposal, or other document to the City seeking award of a *contract*. The term *bidder* does not include a *subcontractor*.

*Contract* means any written agreement between the City and a *person* for public works, goods, services, franchise, or consultant services.

*Contractor* means a *person* who has contracted with the City to provide public works, goods, services, franchise, or consultant services for or on behalf of the City. The term *contractor* includes a *subcontractor*, vendor, franchisee, consultant, or any of their respective officers, directors, shareholders, partners, managers, employees, or other individuals associated with the *contractor*, *subcontractor*, consultant, or vendor.

*Controlling stockholder* means a stockholder who:

(a)     owns more than 25% of the voting stock of a corporation; or,

(b)     notwithstanding the number of shares that the stockholder owns, has the power to direct or control the direction of the *management* or policies of a corporation.

*Debar* or *Debarment* means an action taken by the City which results in a *bidder* or *contractor* being prohibited from any of the following: bidding or proposing on a *contract*; being awarded a *contract*; or performing work on a *contract* for a defined period of time. A *bidder* or *contractor* subject to such prohibition is *debarred*.

*Debarment Hearing Board* means a board established by the City Manager to hold hearings, to take evidence, and to make *debarment* determinations for the City.

*Department* means a City department acting through the department director or designee.

*Final Performance Evaluation* means a City-issued final evaluation of a *contractor's* overall performance which is generally issued subsequent to completion of performance on the *contract*.

*Management* means the officers, partners, owners, foremen, or other individuals responsible for a corporate or other legal entity's financial and operational policies and practices.

*Person* has the same meaning as that in San Diego Municipal Code section 11.0210. In addition, if a *person* is a corporate or other legal entity, it includes individuals who constitute the *person's management*. It also includes any individual or other legal entity that

(a)     Directly or indirectly (e.g. through an *affiliate*), submits offers for or is awarded, or reasonably may be expected to submit offers for or be awarded, a *contract*, or a subcontract under a *contract*; or

(b)     conducts business, or reasonably may be expected to conduct business, with the City as an agent or representative of another *person*.

*Preponderance of the evidence* means proof by information that, compared with that opposing it, leads to the conclusion that the fact at issue is more probably true than not.

*Prime contractor* means a *person* who enters a *contract* directly with the *City*.

*Relative* means:

(a)     an individual related by consanguinity within the second degree as determined by the common law; or,

(b)     a spouse; or,

(c)     an individual related to a spouse within the second degree as determined by the common law; or,

(d)     an individual in an adoptive relationship within the second degree as determined by the common law; or

(e)     any individual considered to be "family" in commonly understood terms of the word.

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |

*Subcontractor* means:

(a)   a *person* who contracts directly with a *prime contractor* but not directly with the *City*; or,

(b)   any *person* under contract with a *prime contractor* or another *subcontractor* to provide any service, materials, labor or otherwise perform on a *contract*.

*Suspend* or *Suspension* means the *debarment* of a *bidder* or *contractor* for a temporary period of time pending the completion of an investigation and any proceedings before a *Debarment Hearing Board* or independent hearing officer and any appeals therefrom.

*("Definitions" repealed and "Definitions" added 9–3–2002 by O–19093 N.S.)*
*(Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

## §22.0803   Scope of Division

(a)   This Division establishes procedures for determining whether a *bidder* or *contractor* is to be *debarred*, *suspended*, or both.

(b)   This Division sets forth the grounds for *debarment* and *suspension*.

(c)   This Division provides that a list of *debarred* and *suspended persons* is to be created and maintained by the City Manager. It further spells out the consequences of a *person's debarment* and *suspension*.

(d)   The City Manager shall adopt procedures and regulations to implement this Division, including procedures for the conduct of *debarment* hearings, *suspension* meetings, and appeals of *final performance evaluations*.

*("Debarment Procedures for Procurement and Public Works Contracts" repealed; "Scope of Division" added 9–3–2002 by O–19093 N.S.)*
*(Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**§22.0804        Debarment Hearing Board**

(a)     Upon a recommendation from a *department* for *debarment* other than *debarments* set forth in sections 22.0808(a)(1) and 22.0808(a)(2), the City Manager shall appoint a *Debarment Hearing Board* to hear and determine whether a *bidder or contractor* should be *debarred*.

(b)     The City Manager shall appoint three individuals to serve on each *Debarment Hearing Board*. These individuals may be City employees, but shall not be employees who have participated in the decision to recommend the *debarment*, or employees who work in the department recommending *debarment.*

*("Debarment Procedures for Materials, Supplies, Equipment, Insurance or Personal Service Contracts" repealed; "Debarment Hearing Board to be Established" added 9–3–2002 by O–19093 N.S.)*
*(Retitled from "Debarment Hearing Board to be Established" to "Debarment Hearing Board" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0805        Suspension While Debarment Proceedings are Pending**

(a)     The City Manager may *suspend* a *bidder* or *contractor* pending a *debarment* decision if the City Manager determines that *adequate evidence* of one of the grounds for *debarment* listed in section 22.0807 exists.

(b)     The City Manager shall, upon 72 hours' notice, provide a *suspended bidder* or *contractor* with an opportunity to appeal the *suspension* at an informal meeting.

(c)     The City Manager shall notify the *bidder* or *contractor* of the *suspension* in accordance with section 22.0806.

(d)     The *suspension* is effective until the *Debarment Hearing Board* makes a final decision on the proposed *debarment*, until there has been a final ruling by an independent hearing officer in accordance with section 22.0809, or until a *bidder* or *contractor* is *debarred* under section 22.0811(e).

*("General" repealed; "Suspension Once City Manager Decides to Recommend Debarment" added 9–3–2002 by O–19093 N.S.)*
*(Retitled from "Suspension Once City Manager Decides to Recommend Debarment" to "Suspension While Debarment Proceedings are Pending" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

§22.0806        **Notices Required Under This Division**

(a)        Notice shall be by any of the following methods:

(1)        Personal delivery with service effective on the date of delivery; or,

(2)        Certified mail, postage prepaid, return receipt requested. Simultaneously, the same notice may be sent by regular mail. If a notice that is sent by certified mail is returned unsigned, then service shall be deemed effective five calendar days after mailing by regular mail, provided the notice that was sent by regular mail is not returned; or

(3)        Regular mail, if not returned, with service effective five calendar days after mailing; or,

(4)        Publication. Service shall be deemed effective on the first date of publication.

(b)        Proof of delivery of notice shall be made by the certificate of any officer or employee of the City or by declaration under penalty of perjury of any person over the age of eighteen years. The proof of delivery shall show that delivery was done in conformity with this Division.

(c)        The failure of any *person* to receive any notice served in accordance with this Division shall not affect the validity of any *debarment* proceedings.
*("List of Debarred Contractors" repealed; "Notices" added 9–3–2002 by O–19093 N.S.)*
*(Retitled from "Notices" to "Notices Required Under This Division" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0807        **Grounds for Debarment**

(a)        Grounds for Permanent Debarment

(1)        A judgment, settlement, stipulation, plea agreement, final conviction, including a plea of nolo contendere, or final unappealable civil judgment, of any of the grounds listed below, constitutes grounds for permanent *debarment* of the *bidder* or *contractor* who is subject to, or the *affiliate* of, the *bidder* or *contractor* who is subject to the judgment, settlement, stipulation, plea agreement, final conviction, or final unappealable civil judgment:

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

(A) under any local, state, or federal law or regulation for embezzlement, theft, bid rigging, perjury, forgery, bribery, falsification or destruction of records, conspiracy, collusion, or receiving stolen property; or,

(B) any offense, action, or inaction indicating a lack of business integrity or business honesty; or,

(C) for commission of a criminal offense arising out of obtaining or attempting to obtain a public or private *contract* or *subcontract*, or in the performance of such *contract* or *subcontract*.

(2) A Fair Political Practices Commission enforcement order against a *bidder* or *contractor*, either following a hearing or by stipulation, imposing a penalty for a violation of California Government Code sections 84300(c) or 84301, or a City of San Diego Ethics Commission enforcement order against a *bidder* or *contractor*, either following a hearing or by stipulation, imposing a penalty for a violation of San Diego Municipal Code sections 27.2941, 27.2943, or 27.2944.

(3) The *bidder* or *contractor* violated San Diego Charter section 97.

(4) The *bidder* or *contractor* has engaged in any corrupt practice in bidding, award, administration, or performance of a *contract*.

(5) The *bidder* or *contractor* operates in a manner designed to evade the application of this Division or to defeat the purpose of this Division.

(6) The City has issued the *bidder* or *contractor* four or more *final performance evaluations* with a rating of unsatisfactory in any four year period.

(7) The person has committed an act or omission so serious or compelling in nature that it affects the present responsibility of the *bidder* or *contractor* to be awarded a *contract* or to participate as a *subcontractor*.

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |

(b)     Grounds for Debarment of Three Years or More

(1)     The *bidder* or *contractor* willfully breaches a material term of a *contract*.

(2)     Violation of a local, state, or federal law or regulation applicable to a *contract* other than those identified in section 22.0807(a).

(3)     The *bidder* or *contractor* used substandard materials, or has failed to furnish or install materials in accordance with *contract* requirements, even if the discovery of the defect is subsequent to acceptance of the work and expiration of the warranty, if such defect is because of intentionally deficient or grossly negligent performance of the *contract*.

(4)     The *bidder* or *contractor* submits materially false information to the City pertaining to:

(A)     the City's evaluation of the *bidder* or *contractor* as a Minority Business Enterprise, Woman Business Enterprise, Disadvantaged Business Enterprise, Small Local Business Enterprise, Emerging Local Business Enterprise, or Disabled Veteran Business Enterprise;

(B)     the City's prequalification or eligibility process; or,

(C)     the *bidder's* or *contractor's* statement of gross income submitted under the City's Minor Public Works Construction Project Program.

(5)     The *bidder* or *contractor* has not implemented its Equal Employment Opportunity Plan, or taken corrective action after sufficient notice by the City.

(6)     The *bidder* or *contractor* has engaged in unlawful discrimination in employment.

(7)     The *bidder* or *contractor* has received three or more *final performance evaluations* with a rating of unsatisfactory in any three year period.

(8)     The *bidder* or *contractor* fails to pay prevailing or living wages, or fails to comply with the City of San Diego's Earned Sick Leave and Minimum Wage Ordinance.

(9)     The *bidder* or *contractor* violates a material provision of any settlement of a *debarment* action.

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |

San Diego Municipal Code                                    **Chapter 2:  Government**
(9-2016)

(c)      Grounds for Debarment of Two Years

A *bidder* or *contractor* may be *debarred* for two years if a *bidder* or *contractor* has received two or more *final performance evaluations* with a rating of unsatisfactory in any two-year period.

(d)      Grounds for Debarment of One Year

(1)      The *bidder* or *contractor* made two or more claims of computational or other error in a bid to the City within a two-year period.

(2)      The *bidder* or *contractor* failed to timely submit bond, *contract*, insurance documents, or any other documentation required as a condition of award or performance of a *contract.*

*("Effect of Listing" repealed; "Grounds for Debarment" added 9–3–2002 by O-19093 N.S.)*
*(Amended 1-24-2005 by O-19353.)*
*(Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0808      Debarment Proceedings before a Debarment Hearing Board**

(a)      The *Debarment Hearing Board* shall hear all recommendations for *debarment* other than:

(1)      permanent *debarment*, which are heard in accordance with section 22.0809; and

(2)      *debarment* based on unsatisfactory *final performance evaluations*, which are heard in accordance with section 22.0811.

(b)      The *Debarment Hearing Board* shall determine by a *preponderance of the evidence* whether a *bidder* or *contractor* is to be *debarred* and for what length of time in accordance with this Division. The *Debarment Hearing Board* may increase, decrease, or accept the *department's* recommendation of the length of *debarment*. The *debarment hearing board* may not impose less than the length of *debarment* specified in section 22.0807(b) and (d).

(c)      The *Debarment Hearing Board's* decision on *debarment* must be in writing and is final.

| Ch. | Art. | Div. |
|-----|------|------|
| 2 | 2 | 8 |

(d)     The failure of a *person* recommended for *debarment* to appear at a *debarment* hearing after notice under section 22.0806 constitutes a waiver of that *person's* right to contest the *debarment* recommendation, and the *department's* recommendation shall become final.

*("Continuation of Existing Contracts" repealed; "Debarment Proceedings before the Debarment Hearing Board or City Council" added 9–3–2002 by O–19093 N.S.) (Retitled from "Debarment Proceedings before the Debarment Hearing Board or City Council" to "Debarment Proceedings before a Debarment Hearing Board" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0809      **Debarment Proceedings before an Independent Hearing Officer**

(a)     The City Manager shall appoint an independent hearing officer.

(b)     An independent hearing officer shall hear all recommendations that include one or more grounds for permanent *debarment*, except for *debarments* based on unsatisfactory *final performance evaluations*, which are heard in accordance with section 22.0811.

(c)     The independent hearing officer shall determine by a *preponderance of the evidence* whether a *person* is to be *debarred* and for what length of time, in accordance with this Division. The independent hearing officer may increase, decrease, or accept the *department's* recommendation of the length of *debarment*. The independent hearing officer may not reduce the length of a permanent *debarment* if the hearing officer determines a violation identified in section 22.0807(a) occurred, or impose less than the length of debarment specified in section 22.0807(b) and (d).

(d)     The independent hearing officer's decision on *debarment* must be in writing and is final.

(e)     The failure of a *person* recommended for *debarment* to appear at a *debarment* hearing after notice under section 22.0806 constitutes a waiver of that *person's* right to contest the *debarment* recommendation, and the *department's* recommendation shall become final.

*("Scope of Debarment" repealed; "Debarment Hearing Board's Authority to Debar; Debarment Hearing Board's Decision Final" added 9–3–2002 by O–19093 N.S.) (Retitled from "Debarment Hearing Board's Authority to Debar; Debarment Hearing Board's Decision Final" to "Debarment Proceedings before an Independent Hearing Officer" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

### §22.0810      Imputation of Knowledge and Conduct

(a)     The fraudulent, criminal, or other serious misconduct of any officer, director, shareholder, partner, employee, or other individuals associated with a *bidder* or *contractor* may be imputed to the *bidder* or *contractor* when the conduct occurred in connection with the individual's performance of duties for, or on behalf of, the *bidder* or *contractor*, or with the *bidder's* or *contractor's* knowledge, approval, or acquiescence. Acceptance of the benefits derived from the conduct shall be evidence of such knowledge, approval, or acquiescence.

(b)     The fraudulent, criminal, or other serious misconduct of a *bidder* or *contractor* may be imputed to any officer, director, shareholder, partner, employee, or other individual associated with the *bidder* or *contractor* who participated in, knew of, or had reason to know of the *bidder's* or *contractor's* conduct.

(c)     The fraudulent, criminal, or other serious misconduct of one *bidder* or *contractor* participating in a joint venture or similar arrangement may be imputed to other participating *bidders* or *contractors* if the conduct occurred for, on approval of, or acquiescence of these *bidders* or *contractors.* Acceptance of the benefits derived from the conduct shall be evidence of such knowledge, approval, or acquiescence.

*("Appeals to City Council from Certain Decisions of Debarment Hearing Board" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Appeals to City Council from Certain Decisions of Debarment Hearing Board" to "Imputation of Knowledge and Conduct" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

### §22.0811      Appeal of Final Performance Evaluations

(a)     A *bidder* or *contractor* may appeal a *final performance evaluation* with a rating of unsatisfactory on a public works *contract* or an architectural or engineering consultant *contract* to the City Engineer.

(b)     A *bidder* or *contractor* may appeal a *final performance evaluation* with a rating of unsatisfactory on a goods, services, or non-engineering, non-architectural consultant *contract* to the Purchasing Agent.

(c)     A *bidder* or *contractor* must submit an appeal in writing to the City Engineer or Purchasing Agent within sixty days after notice of the *final performance evaluation* pursuant to section 22.0806. Evaluations may not be appealed after sixty days from the date of such notice.

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

(d)     The decision of the City Engineer and the Purchasing Agent to uphold an unsatisfactory performance evaluation or a *debarment* determination shall be issued to the *bidder* or *contractor* in writing and are final.

(e)     The City Manager may, upon recommendation of the City Engineer or Purchasing Agent, *debar* a *bidder* or *contractor* who has received an unsatisfactory *final performance evaluation*. This determination shall be in writing and is final.

*("Submission of Argument on Appeal" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Submission of Argument on Appeal" to "Appeal of Final Performance Evaluations" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0812     Judicial Review**

California Code of Civil Procedure section 1094.6 governs judicial review of a final *debarment* decision.

*("Standard of Proof" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Standard of Proof" to "Judicial Review" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0813     Creation of List of Debarred and Suspended Persons**

(a)     The City Manager shall create, maintain, and make publicly available a list of the names, addresses, and applicable *debarment* or *suspension* commencement and expiration dates of all *debarred* or *suspended bidders* and *contractors*.

(b)     The City Manager shall establish procedures to provide for the effective use of the list to ensure that the City does not do business with *bidders* or *contractors* who have been *debarred* or *suspended*.

*("Imputation of Knowledge and Conduct" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Imputation of Knowledge and Conduct" to "Creation of List of Debarred and Suspended Persons" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**§22.0814        Effect of Debarment or Suspension**

(a)      *Bidders* and *contractors* who have been *debarred* or *suspended* are excluded from submitting bids, submitting responses to requests for proposal or qualifications, receiving *contract* awards, executing *contracts,* participating as a *subcontractor*, employee, agent or representative of another *person* contracting with the City.

(b)      The City shall not accept, evaluate for award, or include any proposals, quotations, bids, or offers from any *debarred* or *suspended bidders* and *contractors.*

(c)      The City shall not award or approve the award of a *contract* or execute a *contract* under which a *debarred* or *suspended bidder* or *contractor* is intended to participate as a *subcontractor* or material supplier.

(d)      A *prime contractor* shall not employ, subcontract with, or purchase materials or services from a *debarred* or *suspended bidder* or *contractor*.

(e)      The City Manager shall report *debarments* under this Division to the appropriate local, state, and federal agencies and authorities.

*("Judicial Review" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Judicial Review" to "Effect of Debarment or Suspension" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0815        Effect of Debarment or Suspension on an Affiliate**

(a)      *Affiliates* are debarred or suspended to the same extent as the *debarred* or *suspended bidder* or *contractor*.

(b)      A *bidder* or *contractor* may appeal the City's determination that the *bidder* or *contractor* is an *affiliate* in writing to the City Manager within sixty days after notice of the *affiliate's debarment* pursuant to section 22.0806.

(c)      An *affiliate* may not appeal the *debarment* of any other *bidder* or *contractor* underlying the *affiliate's debarment*.

(d)      The decision of the City Manager shall be issued to the *bidder* or *contractor* who is an *affiliate* in writing and is final.

*("Effect of Debarment or Suspension on an Affiliate" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

### §22.0816      Effect of Debarment by Another Governmental Agency

The City Manager may *debar* a *bidder* or *contractor* who has been debarred by another governmental agency until the term of the debarment by the other governmental agency expires. The City Manager's decision under this section is final, and not subject to a hearing before the *Debarment Hearing Board* or an independent hearing officer.

*("Effect of Debarment by Another Governmental Agency" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

### §22.0817      Liability for Increased Costs

Any *bidder or contractor* who enters into a *contract*, either directly as a *prime contractor* or indirectly as a *subcontractor*, during a period of *suspension* or *debarment* imposed upon that *bidder* or *contractor*, shall be liable to the City for increased costs incurred as a result of replacing the *debarred* or *suspended bidder* or *contractor*.

*("Liability for Increased Costs" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

### §22.0818      Effect of Debarment or Suspension on Existing Contracts

(a)      The *City* may continue or terminate *contracts* or subcontracts it has with a *debarred* or *suspended bidder* or *contractor* that are in existence at the time the *bidder* or *contractor* is *debarred* or *suspended*.

(b)      The City shall not renew or otherwise extend the duration of current *contracts,* or consent to subcontracts, with *debarred* or *suspended bidders* or *contractors*, unless the City Manager certifies in writing compelling reasons for such renewal or extension.

(c)      The City may contract with another *person* to perform public works, goods, services, or consultant services that a *debarred contractor* had been hired to perform.

*("Effect of Debarment or Suspension on Existing Contracts" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |

§22.0819        **Agreement Not to Bid or Submit Proposals in Lieu of Debarment or Suspension**

(a)        The City may offer a *bidder* or *contractor* the opportunity to execute a written agreement not to bid or submit proposals or perform any work on *contracts* in lieu of the City's pursuing *debarment or suspension.*

(b)        This agreement not to bid or submit proposals for *contracts* in lieu of the City's pursuing *debarment or suspension* does not constitute a *debarment*.

*("Creation of List of Debarred and Suspended Persons" added 9-3-2002 by O-19093 N.S.)*
*(Renumbered from former Section 22.0820, retitled from "Creation of List of Debarred and Suspended Persons" to "Agreement Not to Bid or Submit Proposals in Lieu of Debarment or Suspension" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |



**Attachment 2**

# THE CITY OF SAN DIEGO

DATE:        April 13, 2020

TO:          Kris Michell, Chief Operating Officer

FROM:        Kyle Elser, Interim City Auditor
             Office of the City Auditor

SUBJECT:     Hotline Investigation of Gifts Received by a City Employee

On September 30, 2015, the Office of the City Auditor received a Fraud Hotline Report alleging fraud by a City employee. The case was referred to law enforcement for additional investigation, and on March 11, 2019, we reopened the case after obtaining the documents related to that investigation. Prior to that date, the information contained in the law enforcement documents could not be disclosed to City management. The law enforcement investigations were ultimately closed without criminal charges. The information contained in the law enforcement documents relates to undisclosed gifts to a City employee from contractors the employee managed.

Our investigation determined that a City employee:

- received over $3,000 in gifts from vendors
- managed employees who supervised the vendors
- covertly advised the vendors to increase revenues on City contracts
- awarded option contracts worth millions to the vendors
- acknowledged receiving the gifts only after questioning by law enforcement
- failed to disclose the gifts and under-reported the amounts on disclosure forms by over $1,600

A detailed confidential version of this report was provided to City management. For the purposes of this report, the subject vendors will be referred to as Vendor A and Vendor B. Management agreed to implement our four recommendations.



Page 2 of 21

Hotline Investigation of Gifts Received by City Employee

**The Ethics Commission's Jurisdiction Excludes Classified Employees**

The City of San Diego Ethics Ordinance (Ordinance) includes the laws governing financial disclosures and conflicts of interest. This Ordinance is codified in §27.3501 – §27.3595 of the San Diego Municipal Code (SDMC) and includes provisions mirroring the laws contained in California's Political Reform Act of 1974 (CPRA). The CPRA is implemented in California Code of Regulations (CCR), Title 2, Division 6, §18110 - 18997 and is administered and enforced by the Fair Political Practices Commission (FPPC).

Among other requirements, the SDMC and the CPRA require certain public employees to file a Form 700 Statement of Economic Interests (SEI) disclosing various forms of income. The purpose is to allow the public to examine the potential conflicts of interest of an employee. The FPPC developed the SEI to be used when disclosing a person's financial interests. The Ordinance requires designated City employees to file an SEI annually, and identifies filers as falling into two categories: (1) High Level Filers and (2) Local Code Filers. High Level Filers include the Mayor, members of the City Council, the City Attorney, the City Treasurer, the City Auditor, and other positions as identified in the Ordinance. City employees who are not considered High Level Filers may be designated as Local Code Filers. For Local Code Filers, the City Council has adopted a Conflict of Interest Code tailoring the disclosure requirements for each position within the City to the types of governmental decisions a person holding that position would make. This investigation pertains to a Local Code Filer.

The City's Ethics Commission was established in SDMC §26.0401, with the following purpose and intent:

> The purposes of the Commission shall be to monitor, administer, and enforce the City's governmental ethics laws, propose new governmental ethics law reforms, conduct investigations, refer violations to appropriate enforcement agencies, audit disclosure statements, and advise and educate City officials and the public about governmental ethics laws.

Classified employees are specifically exempt from the Ethics Commission jurisdiction in SDMC §26.0413(a)(4). The subject City employee was a Local Code Filer and was required by their department's Conflict of Interest Code to file an SEI

Page 3 of 21

Hotline Investigation of Gifts Received by City Employee

annually. However, the City employee was also a classified employee which meant this employee was not under the jurisdiction of the Ethics Commission and was not required to attend Ethics training.

In 2007, the Commission sought to expand its jurisdiction to include classified employees. In a memorandum dated October 2, 2007, the Ethics Commission recommended that the Commission be expanded for both education and enforcement purposes. The Ethics Commission argued that it is not good public policy to dedicate its resources to education without also ensuring the public that there will be oversight and investigations of apparent violations. During its deliberations, the Ethics Commission received input from the City's Labor Relations Manager and the San Diego Municipal Employees Association (MEA), who agreed that the issue would be subject to the "meet and confer" process between the City and its labor unions.

The Ethics Commission noted at that time that there were approximately 750 classified employees that were required to file SEIs but were not within the jurisdiction of the Ethics Commission. However, the suggested amendment to the SDMC was tabled by the City Council and has not been revisited since that time.

Our analysis of the Calendar Year (CY) 2018 SEI filings by Classified, Unclassified, and Non-City employees revealed that Classified employees are the largest group of employees that are required to file SEIs. Non-City employees are board and commission members who may be required to file an SEI and are under the jurisdiction of the Ethics Commission.

**Table 1,** below, summarizes the City employees who filed an SEI in CY 2018.

Page 4 of 21

Hotline Investigation of Gifts Received by City Employee

**Table 1**
**Summary of Employees Who File a Statement of Economic Interests[1]**



Source: Auditor generated

According to the Ethics Commission, equivalent agencies in the cities of Los Angeles, Oakland and San Francisco all have jurisdiction over classified employees in addition to unclassified employees.

**Ethics Ordinance Sets Gift Limits and SEI Reporting Threshold**

Gifts are defined in the Ordinance as anything of value that confers a personal benefit on the recipient. SDMC §27.3520 (f) states:

> It is unlawful for a Local Code Filer to accept gifts from any single source in any calendar year with a total value of more than $440 if the Local Code Filer would be required to report the receipt of the gift from that source on his or her statement of economic interests.

---

[1] Non-City employees are board and commission members; percentages are rounded.

Page 5 of 21

Hotline Investigation of Gifts Received by City Employee

The gift threshold limitations are amended biennially in CCR **Title 2**, Section 18940.2 and incorporated in the Ordinance by reference. **Table 2** below shows the gift thresholds for the past ten years.

**Table 2**
**Annual Gift Limitations Increase Every Two Years**

| Period | Gift Limitation |
|--------|-----------------|
| January 1, 2011 - December 31, 2012 | $420 |
| January 1, 2013 - December 31, 2014 | $440 |
| January 1, 2015 - December 31, 2016 | $460 |
| January 1, 2017 - December 31, 2018 | $470 |
| January 1, 2019 - December 31, 2020 | $500 |

Source: CCR Title 2, Section 18940.2

In addition to gift threshold limitations, the CCR Section 18940 (d) states:

> ...any gift, or combination of gifts, received from any source is reportable by the official if the value of the gift, or the cumulative value of multiple gifts, received from the source in the reporting period is $50 or more.

The gift limitations and the $50 reportable threshold are both explained in the FFPC Form 700 Instructions to Schedule D Income – Gifts.

Page 6 of 21

Hotline Investigation of Gifts Received by City Employee

The City reiterates its Ethics policies regarding the acceptance of gifts in its Administrative and Personnel regulations. Administrative Regulation 95.60 Conflict of Interest and Employee Conduct, dated May 23, 1990, Section 3.4 Acceptance of Favors, Gifts, and Gratuities states:

> Persons shall not accept gifts, gratuities or favors of any kind which might reasonable [sic] be interpreted as an attempt to influence their actions with respect to City business.

Personnel Regulations go further than the Ordinance. Specifically, Section G-1 Code of Ethics and Conduct, dated February 1, 2001, states in paragraph D, "City employees shall not accept gifts from persons doing business or seeking to do business with the City or from persons regulated by the City."

**City Policies Prohibit Conflicts of Interest**

In addition to the limiting acceptance of gifts, City policy also prohibits conflicts of interest. The City of San Diego Administrative Regulation 95.60, dated December 1, 2017, titled Conflict of Interest and Employee Conduct, paragraph 4.5.2a. states:

> Pursuant to Council Policy 000-4, employees shall not engage in any collateral employment or business activity which is incompatible or in conflict with the duties, functions, or responsibilities of the City.

Paragraph 4.5.2.a.i. lists activities that may constitute a conflict and states:

> An employee shall not engage in any collateral business activity or employment, which, by its nature, hours, or physical demands, would impair the required quality or quantity of the employee's work with the City, impair the employee's independence of judgement or action in the performance of official duties, reduce the effectiveness or efficiency of the employee's department, reflect discredit on the City...

Page 7 of 21

Hotline Investigation of Gifts Received by City Employee

**Lack of Business Integrity Is Grounds for Debarment**

Vendors who violate state law and the municipal code and demonstrate a lack of integrity may be permanently debarred according to City policy. Administrative Regulation 25.90 subsection 4.3.1 states:

> A department may recommend to the Chief Operating Officer to permanently debar a bidder or contractor. The recommendation must be in writing and include evidence to support at least one of the grounds for debarment listed in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code.

The SDMC §22.0807 (a) Grounds for Permanent Debarment, (1) (B) states, "any offense, action, or inaction indicating a lack of business integrity or business honesty."

Additionally, the SDMC §22.3004(a) states:

> Prior to awarding a contract, the City shall make a determination that the bidder has the capability to fully perform the contract requirements and the business integrity to justify the award of public funds. The factors the City may consider include, but are not limited to… (6) A satisfactory record of compliance with applicable statutes and regulations.

Finally, the SDMC §22.3004(e) states, "Violations of the provisions of this Section may be reported to the City Manager who shall investigate such complaint."

**Investigation**

Our review of documents obtained from the law enforcement investigation uncovered emails on the employee's personal email account discussing various gifts and activities with two City vendors. The investigation revealed that the employee accepted the following gifts from two vendors: a paid trip to attend a professional sporting event in the San Francisco Bay Area, free contracting work performed at their residence, two tickets to a Las Vegas show, annual entry fees to a golf tournament, and amusement park tickets for their family. The employee admitted

Page 8 of 21

Hotline Investigation of Gifts Received by City Employee

to receiving these gifts after being questioned about them by law enforcement, then reported the gifts on their SEI forms.

**Unreported Free Trip to Professional Sporting Event**

During a law enforcement interview, the subject employee admitted that they attended a professional sporting event which included round-trip airfare, hotel, and game ticket. In an email found in the employee's personal email account, Vendor A had forwarded the reservation information to the employee for a Southwest flight from San Diego to Oakland with the message, "Here are the updated flights." The trip was not reported in the employee's SEI prior to questioning.

**Unreported Free Home Construction Work**

The employee was shown an email from their personal email account where Vendor B wrote, "…let me know when you want the saw cut and demo done and I'll take care of ASAP." The employee replied:

> How's Monday, Tues, or Wed next week for the concrete cutting. I included some photos. I need the concrete cut and removed.

On the following Wednesday, the employee sent the following email to Vendor B:

> The guys did a great job! And, they even removed the weed pile I had to clean up to uncover the pool deck…Thanks!!!!

Included in the personal emails between the employee and Vendor B were before and after photos of the area where a large section of concrete was removed.

After reviewing the email, the employee admitted to receiving the concrete cutting, removal and disposal services at their house from Vendor B. However, the employee stated they didn't consider it a gift. When the interviewer asked if they considered it a favor from a friend, the employee replied, "Yes." The gift was not reported in the employee's SEI filed at the time.

Page 9 of 21

Hotline Investigation of Gifts Received by City Employee

**Unreported Free Theater Tickets in Las Vegas**

The employee was shown another email from their personal email account with the subject line, "Fwd: Tickets Attached." The email contained a PDF file with two tickets to Cirque du Soleil's show "O" at the Bellagio in Las Vegas. The tickets were issued to Vendor B with a face value of $170.50 each. Later that same night, the night of the show, the employee sent another email to Vendor B which simply said, "Killer seats!!" When asked, the employee stated that they attended the show with a second person and had forgotten that they received the tickets. The gift was not reported in the employee's SEI prior to questioning.

**Image 1** below, is the ticket to Cirque du Soleil's show "O" at the Bellagio in Las Vegas emailed to the employee's personal account by Vendor B.

**Image 1**
**Ticket to Cirque du Soleil's Show "O" at the Bellagio Las Vegas for $170.50**



Source: Employee's personal email account

Page 10 of 21

Hotline Investigation of Gifts Received by City Employee

**Unreported Free Golf**

When asked specifically about golfing with vendors, the employee admitted to participating in an annual golf tournament at least four times. The employee explained that Vendor A would buy a foursome for the tournament and include the subject employee in the foursome. The employee said they did not consider it a gift because Vendor A invited other agencies to participate in the foursome.

Emails were found in the employee's personal email account accepting invitations from Vendor A to attend an annual golf tournament each year for a five-year period. An email showed that Vendor A purchased the Platinum Golf Package for $450. None of the gifts were reported in the employee's SEI filed during the relevant time periods prior to questioning.

**Unreported Television**

The employee was shown an email from their personal email account sent from Vendor A discussing winning a television. The employee explained that they won a television at the golf tournament raffle that year and Vendor A had donated the television. When asked, the employee explained they were joking when they wrote, "...you guys should have just signed the TV over to me instead of giving those people false hope." It is unknown if the television was won in a valid raffle, and it was not reported on the employee's SEI prior to questioning.

**Unreported Amusement Park Tickets**

After being asked twice by law enforcement if a vendor ever gave them amusement park tickets as a gift, the employee admitted that they had received tickets for their family. When asked if this was considered a gift, the employee replied, "I guess it was a gift but not for favors." The gift was not reported in the employee's SEI prior to questioning.

Page 11 of 21

Hotline Investigation of Gifts Received by City Employee

**Employee's Explanation**

The employee told law enforcement that they file the SEI form each year but never claimed any of the gifts they received prior to questioning. The employee said they have never attended any Ethics Commission training nor been given any guidance on how to fill out the SEI. The employee was adamant that they never reciprocated for the gifts received and explained that they were not in charge of payments to vendors and not involved in contract awards. Since the City uses a sealed bid process and awards contracts to the lowest bidder in a public bid opening, the employee claimed they did not have any way of steering contracts to particular vendors.

Although the employee did not attend any formal Ethics Commission training, the SEI does include detailed instructions. The SEI instructions give common examples of reportable gifts and explains the $50 reportable limit as well as the maximum dollar limit that can be accepted from a single source during that reporting period. The first two examples listed under Commonly Reportable Gifts are "Tickets/passes to sporting or entertainment events" and "Tickets/passes to amusement parks." The employee signed and certified each SEI as to its accuracy.

**The City Employee had Authority to Financially Benefit the Vendors**

The employee's statements about not being involved in payments to vendors or awarding contracts are contradicted by the evidence we obtained. The employee had the authority to approve or reject vendor invoices before they were submitted for payment. The employee could approve thousands of dollars in contracts and had discretion to authorize additional expenditures that were not specifically addressed in the contract.

Our review of the department's contracting records indicated that Vendor A was awarded millions of dollars in contracts.

Page 12 of 21

Hotline Investigation of Gifts Received by City Employee

**The City Employee's Emails Reveal They Communicated With Vendor Representatives Without Subordinate City Employee Knowledge**

A review of the employee's email contacts with subordinate employees, and representatives of Vendor A and Vendor B, revealed that the subject employee circumvented the City's efforts to manage contracts by communicating with contractor representatives on their personal email about contract issues without other City employees' knowledge. From as far back as 2011, we found emails from the employee's personal email account communicating with vendor representatives about issues discussed in City communications which the employee forwarded to the vendor representatives to discuss privately. The employee covertly advised Vendor A and Vendor B representatives to give them an advantage when dealing with the City on contract issues and warned them not to tell other City employees about their communications.

In one email, a City employee from another department discussed an issue with Vendor A about an invoice submitted for work not completed. That employee forwarded their email discussion to the subject employee and stated that they cannot pay a bid item for the full amount if the work has not been completed. The subject employee replied with their solution to let Vendor A bill for substantially all of the work, even though not all the work had been completed, and stated that it was not a problem unless the vendor is claiming they are over on a bid item.

The subject employee then forwarded their email conversation with the other department employee to Vendor A and advised the Vendor A representative to not tell any other City staff that the two had talked.

**The Employee Covertly Advised Vendors on How to Increase Their Revenues on City Contracts**

The subject employee acted as a consultant to Vendor A and Vendor B by reviewing and editing their invoices, bids, and correspondence. They also advised them on how to deal with the City on contract issues, even after the employee transferred to another City department. We found emails where the employee revised Vendor A's bid item to increase their revenues.

Page 13 of 21

Hotline Investigation of Gifts Received by City Employee

In an email obtained from the employee's personal account, the employee reviewed a Vendor A invoice and revised it to increase the vendor's revenues. Vendor A sent an Excel spreadsheet file to the employee's personal email account and wrote, "I made this sheet for you to look at." The employee sent back a revised spreadsheet that increased some of the proposed costs by a total of $37,000.

We found another email where the employee revised Vendor A's bid item to increase their revenues. Vendor A emailed the employee at their personal email account to ask a question about a contract line item. The employee wrote back:

> ...but you may have noticed I significantly bumped up a few lump sum bid items to your benefit and I changed the one contract you bid [increasing the cost to the City]

In an email exchange between the employee on their personal email account and Vendor B, the employee increased Vendor B's proposed rates on a job, without a subordinate employee's apparent knowledge, and told Vendor B not to tell the subordinate employee about their arrangement. The employee wrote:

> It's on. Bill me [increased cost to City]. Please schedule it. Don't tell [subordinate employee]. I'm removing him from this contract. Too many issues. I'm assigning a newbie I just hired. Thanks!!

The Vice President (VP) of Vendor B also reached out to the subject employee for advice on issues with the City. The VP of Vendor B sent an email to the employee's personal email account with the subject line, "draft let me know your thoughts." The email contained a letter the VP wrote to a City official about a billing issue with the City. The employee responded to Vendor B:

> I sent my edited e-mail through my secret account, [redacted]. There's no way I'm taking a chance on you guys somehow including my info on the email to [a City official].

Page 14 of 21

Hotline Investigation of Gifts Received by City Employee

## The City Employee Continued to Covertly Advise Contractors After Transferring Out of the Department

During the timeframe of our investigation, the employee transferred from their department to a different City department. Although the employee no longer had responsibilities managing contracts, our investigation revealed that they continued to communicate with representatives of Vendor A and Vendor B and provide advice on their contracting issues with the City. Additional details are contained in the confidential version of our report. However, all the following quotes were from the employee's personal email account to the two vendors after the employee transferred to a different department:

- I'll write you up an e-mail to fix this crap they're trying to pull on you [referring to the employee's former subordinates].

- DON'T DO IT. The old bait and switch. You can't trust that group anymore. Too many chefs in the kitchen and none of them know what they're doing. I'll work on this.

- I told you…he's freaking out about the award timeline. Don't provide any cost estimates.

- They're all screwed over there and pissed off. And, they're FREAKING out that you haven't returned the EOC pages. DON'T return the pages until they give you the pricing you want.

## Interviews of Vendor A and Vendor B Representatives Confirmed That Gifts Were Given

In a law enforcement interview, a Vendor A representative confirmed that they were friends with the employee and went to lunch together occasionally. The Vendor A representative also stated that the lunches were usually paid for with the Vendor A credit card. After being shown an email discussing airline tickets to attend a professional sporting event, the representative acknowledged that Vendor A paid for the employee to travel to attend the event. The Vendor A representative also

Page 15 of 21

Hotline Investigation of Gifts Received by City Employee

stated that the employee participated in more than one golf tournament with Vendor A.

Law enforcement interviewed a Vendor B representative who stated that they had lunch with the employee a few times in the past. After being shown an email with attached photos discussing concrete cutting and removal at the employee's house, the representative recalled doing that job for the employee and characterized it as a favor for a friend. The Vendor B representative estimated the value of the job at $1,500 to $2,000. In regard to the purchase of two tickets to a Las Vegas show for the employee, the representative said the Vice President of Vendor B ordered the tickets for the employee as a thank you for all the help and advice. When asked if Vendor B gave any other gifts to the employee, the representative recalled that Vendor B gave the employee amusement park tickets one year at Christmas.

**The City Employee Under-Reported Gifts Received**

After being interviewed, the employee disclosed the gifts that they admitted to receiving. In summary, the employee received $3,315 in gifts from Vendor A and Vendor B, but underreported them by $1,675 based on information we obtained as part of this investigation. In addition to the items disclosed on their SEI, the employee did not disclose any lunches received in excess of $50 per vendor per year. An analysis of the employee's personal emails and City calendar schedules for lunch dates shows they attended lunch on at least 21 occasions with Vendor A. The Vendor A representative stated that the lunches with the employee were usually paid for with the Vendor A company credit card. If we use the cost of an average lunch at $10, the employee would have reached the SEI reportable $50 threshold after five lunches.

The television that the employee won at the golf tournament raffle may be reportable if the donation is regarded the same as a donation to a government raffle. If it is reportable, the employee exceeded the gift limit from Vendor A in that year. On the FPPC website under Frequently Asked Questions: Form 700 Disclosure, Question 32 states:

> Q: Do prizes donated to a governmental agency by an outside source constitute gifts under the Act if they were received by city employees in a

Hotline Investigation of Gifts Received by City Employee

> drawing conducted by the city for all city employees participating in the city's charitable food drive?
>
> A: Yes. The prizes are gifts if donated by an outside source and subject to the Act's limits and reporting requirements.

Further analysis by the FPPC is warranted to determine if the employee should have reported the value of the television.

Page 17 of 21

Hotline Investigation of Gifts Received by City Employee

**Conclusion**

Our investigation determined that an employee accepted gifts from vendors who did business with the City and did not disclose the gifts on annual SEI disclosures until the gifts were revealed in the investigation. In some of the years, the gifts exceeded the legal limit as set forth in the California Code of Regulations. In addition, the employee failed to disclose all the gifts received on their SEIs, and they under-reported the value of the gifts by over $1,600.

We also found that the employee favored Vendor A and Vendor B when communicating with vendor representatives on a personal email account about contract issues without other City employees' knowledge, and when acting as a consultant to the vendor on contracting issues with the City. As a classified employee, the employee is not under the jurisdiction of the Ethics Commission. Classified employees who are required to file an SEI make up the largest group of City employees who file SEIs.

Our four recommendations are designed to hold the employee and the vendors responsible and to improve City operations. The following is a summary of our recommendations and management's responses.

Page 18 of 21

Hotline Investigation of Gifts Received by City Employee

**Recommendation and Management's Responses (see Attachment A for definitions of Fraud Hotline recommendation priorities)**

1. **We recommend that the Chief Operating Officer present a revision of SDMC §26.0413(a)(4) to the City Council to include Classified employees who file SEIs be under the jurisdiction of the Ethics Commission for both education and enforcement purposes. (Priority 2)**

   **Management Response:** Agree

   **Target Implementation Date:** Given the current work situation related to COVID-19 we expect to present a draft ordinance to Committee in December, 2020.

2. **We recommend that the Chief Operating Officer review the details from our Confidential report, conduct an independent investigation, and take the appropriate corrective action with respect to any identified City employees. (Priority 1)**

   **Management Response:** Agree

   **Target Implementation Date:** Fact Finding will begin no later than May 1, to be concluded by July 1st. Appropriate personnel actions will be initiated upon conclusion of the Fact Finding investigation.

Page 19 of 21

Hotline Investigation of Gifts Received by City Employee

**3. We recommend that the Chief Operating Officer consider permanent debarment for Vendor A for lack of business integrity. Under SDMC 22.0807 Grounds for Permanent Debarment, (1) (B) states, "any offense, action, or inaction indicating a lack of business integrity or business honesty." (Priority 1)**

**Management Response:** Agree

**Target Implementation Date:** COO will determine if debarment proceedings are to be initiated by July 1st.  If proceedings are to be initiated, they will commence within 30 days of the COO's determination.

**4. We recommend that the Chief Operating Officer consider permanent debarment for Vendor B for lack of business integrity. Under SDMC 22.0807 Grounds for Permanent Debarment, (1) (B) states, "any offense, action, or inaction indicating a lack of business integrity or business honesty." (Priority 1)**

**Management Response:** Agree

**Target Implementation Date:** COO will determine if debarment proceedings are to be initiated by July 1st.  If proceedings are to be initiated, they will commence within 30 days of the COO's determination.

Page 20 of 21

Hotline Investigation of Gifts Received by City Employee

This investigation was conducted by Fraud Investigator Gina Rouza under the authority of California Government Code Section 53087.6 which states:

> (e) (2) Any investigative audit conducted pursuant to this subdivision shall be kept confidential, except to issue any report of an investigation that has been substantiated, or to release any findings resulting from a completed investigation that are deemed necessary to serve the interests of the public. In any event, the identity of the individual or individuals reporting the improper government activity, and the subject employee or employees shall be kept confidential.

> (3) Notwithstanding paragraph (2), the auditor or controller may provide a copy of a substantiated audit report that includes the identities of the subject employee or employees and other pertinent information concerning the investigation to the appropriate appointing authority for disciplinary purposes. The substantiated audit report, any subsequent investigatory materials or information, and the disposition of any resulting disciplinary proceedings are subject to the confidentiality provisions of applicable local, state, and federal statutes, rules, and regulations.

Thank you for taking action on this issue.

Respectfully submitted,

Kyle Elser
Interim City Auditor

Page 21 of 21

Hotline Investigation of Gifts Received by City Employee

**Attachment A – Definition of Fraud Hotline Recommendation Priorities**

**DEFINITIONS OF PRIORITY 1, 2, AND 3**

**FRAUD HOTLINE RECOMMENDATIONS**

The Office of the City Auditor maintains a priority classification scheme for Fraud Hotline recommendations based on the importance of each recommendation to the City, as described in the table below. While the City Auditor is responsible for providing a priority classification for recommendations, it is the City Administration's responsibility to establish a target date to implement each recommendation taking into considerations its priority. The City Auditor requests that target dates be included in the Administration's official response to the findings and recommendations.

| Priority Class[1] | Description |
|---|---|
| 1 | Fraud or serious violations are being committed. Significant fiscal and/or equivalent non-fiscal losses are occurring. Costly and/or detrimental operational inefficiencies are taking place. A significant internal control weakness has been identified. |
| 2 | The potential for incurring significant fiscal and/or equivalent non-fiscal losses exists. The potential for costly and/or detrimental operational inefficiencies exists. The potential for strengthening or improving internal controls exists. |
| 3 | Operation or administrative process will be improved. |

---

[1] The City Auditor is responsible for assigning Fraud Hotline recommendation priority class numbers. A recommendation which clearly fits the description for more than one priority class shall be assigned the higher priority.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number 25.90 | Issue 1 | Page 1 of 9 |
|---|---|---|---|
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

1. <u>PURPOSE</u>

    1.1.   To provide policies and procedures for the *suspension* and *debarment* process.

2. <u>SCOPE</u>

    2.1.   This regulation applies to all City *department*s seeking to initiate a *debarment* against a *bidder* or *contractor* and applies to a *Debarment Hearing Board* (*Board*) and independent hearing officer, unless otherwise specified.

    2.2   This regulation does not apply to appeals of unsatisfactory *final performance evaluations,* which are heard in accordance with section 22.0811 of the San Diego Municipal Code.

3. <u>DEFINITIONS</u>

    3.1.   All defined terms in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code apply to this regulation and appear in italics in this regulation.

    3.2.   The Chief Operating Officer or designee is charged with carrying out the provisions of this regulation. The Chief Operating Officer will ensure that no one working within the line of supervision of the *department* requesting *suspension* or *debarment* participates in decisions to *suspend* or *debar*.

4. <u>POLICY</u>

    4.1.   <u>Initiating Department's Roles</u>

        4.1.1.   A *department* may recommend that the Chief Operating Officer *suspend* and *debar*, or *debars*, a *bidder* or *contractor*.

        4.1.2.   Any City *department* seeking to *debar* a *bidder* or *contractor* must first confer with the City Attorney's Office to determine the legal sufficiency and basis for the proposed *debarment* of a *bidder* or *contractor* before making its recommendation to initiate *suspension* or *debarment*.

(New Administrative Regulation, Issue 1, effective January 18, 2019)

_____
Authorized

_____ *[Signature on File]* _____
Chief Operating Officer

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number | Issue | Page |
|---------|--------|-------|------|
| | 25.90 | 1 | 2 of 9 |
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.2.   Suspension Pending Debarment Decision

4.2.1.   When a *department* seeks to *suspend* and *debar* a *bidder* or *contractor*, the *department* shall submit a written recommendation to the Chief Operating Officer. The recommendation must include evidence to support at least one of the grounds for *debarment* listed in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code.

4.2.2.   If the Chief Operating Officer determines that *adequate evidence* exists to *suspend* a *bidder* or *contractor*, the Chief Operating Officer shall notify the *bidder* or *contractor* with a letter of *suspension* which describes the evidence that formed the basis of the *suspension* and informs the *bidder* or *contractor* about the opportunity to appeal and the process for submitting a written request to appeal.

4.2.3.   If the *bidder* or *contractor* submits a timely written request to appeal the *suspension*, then the Chief Operating Officer will conduct an informal meeting within seventy-two (72) hours, unless there is good cause as determined by the Chief Operating Officer to extend the time.

4.2.4.   The appeal is an informal, non-evidentiary meeting. The meeting may include the *bidder* or *contractor* and, if requested by the Chief Operating Officer, a representative of the *department* who has knowledge regarding the basis for the proposed *suspension*.

4.2.5.   The appeal is limited to the issue of the sufficiency of the evidence supporting the *suspension*.

4.2.6.   The Chief Operating Officer will notify the *bidder* or *contractor* in writing of the City's final decision on the *suspension* and the basis for his or her decision.

4.2.7.   When a *bidder* or *contractor* is *suspended*, the Chief Operating Officer should appoint a *Board* or an independent hearing officer to hear the *debarment* within a reasonable amount of time, based on the circumstances of the case, not to exceed 30 calendar days unless the *bidder* or *contractor* presents good cause to extend the time.

4.2.8.   A *suspension* will stay in effect until a final decision on the proposed *debarment* is made.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number 25.90 | Issue 1 | Page 3 of 9 |
|---|---|---|---|
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.3.  Permanent Debarment - Appointment of Independent Hearing Officer

4.3.1.  A *department* may recommend to the Chief Operating Officer to permanently *debar* a *bidder* or *contractor*. The recommendation must be in writing and include evidence to support at least one of the grounds for *debarment* listed in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code.

4.3.2.  For any proposed permanent *debarment*, the Chief Operating Officer shall appoint an impartial independent hearing officer, except for *debarment*s based on unsatisfactory *final performance evaluation*s, which are heard in accordance with section 22.0811 of the San Diego Municipal Code. The Chief Operating Officer may *contract* for services for an independent hearing officer or may appoint an independent hearing officer from a list of qualified individuals maintained by the City.

4.3.3.  All independent hearing officers who preside over hearings of permanent *debarment* must follow City policies, procedures, and regulations that govern permanent *debarment*.

4.3.4.  If a *bidder* or *contractor* seeks to disqualify the independent hearing officer on the basis of bias, prejudice, or conflict of interest, the *bidder* or *contractor* must submit a written request to the Chief Operating Officer within five (5) calendar days of receiving notice of the hearing.

4.3.5.  If the Chief Operating Officer determines that the request to disqualify the independent hearing officer has merit, the Chief Operating Officer shall replace the independent hearing officer or *contract* with another agency.

4.4.  Less-Than Permanent Debarment – Appointment of Debarment Hearing Board

4.4.1.  A *department* may recommend to the Chief Operating Officer to *debar* a *bidder* or *contractor* for two years, or three or more years. The recommendation must be in writing and include evidence to support at least one of the grounds for *debarment* listed in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code.

4.4.2  The Chief Operating Officer shall appoint a three-member *Board* to hear *debarment* proceedings and shall designate one member as the chairperson.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number | Issue | Page |
|---|---|---|---|
| | 25.90 | 1 | 4 of 9 |
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.4.3. If a *bidder* or *contractor* seeks to disqualify any member of the *Board* on the basis of bias, prejudice, or conflict of interest, the *bidder* or *contractor* must submit a written request to the Chief Operating Officer within five (5) calendar days of receiving notice of the hearing. If the Chief Operating Officer determines that the request has merit, the Chief Operating Officer shall replace the disqualified *Board* member.

4.5.    Notice for Debarment Hearings

4.5.1. The Chief Operating Officer shall serve written notice, as authorized under section 22.0806 of the San Diego Municipal Code, of the date, time, and location of the *debarment* hearing at least ten (10) calendar days prior to the date of the hearing.

4.5.2. The notice should include: (1) a statement that *debarment* is being considered; (2) the grounds for the proposed *debarment*, in terms sufficient to put the respondent on notice of the conduct or action(s) upon which it is based; (3) any supporting documentation to support the grounds for the proposed *debarment*; (4) the intended period of the *debarment*; (5) a reference to the San Diego Municipal Code on *debarment* procedures and this administrative regulation; and (6) if known, the name, address, and telephone number of any employee who has been designated to appear at the hearing on behalf of the City.

4.6.    Representation by Counsel

4.6.1. Legal representation in *debarment* hearings is not required. However, both parties are entitled to legal representation, if desired. A City *department* may be represented by the City Attorney's Office. It is the *bidder*'s or *contractor's* responsibility to obtain legal representation at its own expense if so desired. Alternatively, the *bidder* or *contractor* may designate an authorized representative (non-legal representative) either in person at the hearing, or by a signed written letter before the hearing.

4.6.2. Failure of the *person* recommended for *debarment* or his or her authorized representative to appear at a *debarment* hearing after notice is given constitutes a waiver of that *person*'s right to contest the *debarment* recommendations. Failure to appear will result in the *department*'s recommendation becoming the City's final decision.

### CITY OF SAN DIEGO
### ADMINISTRATIVE REGULATION

| SUBJECT | Number | Issue | Page |
|---|---|---|---|
| | 25.90 | 1 | 5 of 9 |
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.7.   Presentation of Evidence

    4.7.1.   The parties must exchange all evidence and any documents or written legal arguments supporting the parties' position, along with the names and addresses of witnesses (collectively "evidence"), no later than five business days prior to the hearing date, unless otherwise directed by the *Board* or the independent hearing officer. A copy must also be submitted to the *Board* or the independent hearing officer. Evidence that is not timely submitted may not be introduced at the hearing.

    4.7.2.   The *Board* or the independent hearing officer may conduct a pre-hearing conference to deal with such matters as exploring a settlement, prepare stipulations, clarifying issues, hearing any preliminary motions (i.e., excluding certain evidence or limiting testimony of witnesses) and either disposing of them or taking them under advisement, and other such matters that will promote an orderly and efficient hearing.

    4.7.3.   The presentation of evidence, including allowing opening statements and closing arguments, is within the discretion of the *Board* or the independent hearing officer.

    4.7.4.   All testimony must be taken under oath administered by the *Board* or the independent hearing officer.

    4.7.5.   It is the *department's* burden to prove by a *preponderance of evidence* that *debarment* is appropriate.

    4.7.6.   The *Board* or the independent hearing officer may continue the hearing based on good cause shown by one of the parties to ensure a fair and orderly presentation of the evidence.

4.8.   Conduct of Hearing

    4.8.1.   The proceedings shall be as informal as is compatible with the requirements of justice. The hearing need not be bound by the common law or statutory rules of evidence and procedure. Evidence may be oral or written. The *Board* or the independent hearing officer may make inquiry in the matter through oral testimony and records presented at the hearing.

    4.8.2.   The parties shall not engage in ex-parte communication with members of the *Board* or with the independent hearing officer.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number | Issue | Page |
|---|---|---|---|
| | 25.90 | 1 | 6 of 9 |
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.8.3.   The *Board* or the independent hearing officer may consider hearsay evidence as part of the determination, except that no finding may be based solely on such hearsay evidence unless the hearsay evidence is supportive or supplementary to other legally competent evidence. Hearsay evidence may be admissible if the independent hearing officer or the *Board* determines that it is reliable.

4.8.4.   All hearings shall be recorded. Any party may arrange for a certified stenographer to record the hearing. The requestor of the certified stenographer shall bear all recording costs and shall provide, at no cost, a complete copy of the hearing transcript to the *Board* or the independent hearing officer.

4.8.5.   The *Board* or the independent hearing officer may ask questions, seek clarification, and request additional information from the parties at any time during the hearing.

4.9.   <u>Decision</u>

4.9.1.   The *Board* or the independent hearing officer may uphold or deny the *department's* recommendation for *debarment*.

4.9.2.   If *debarment* is upheld, but the evidence presented supports a different duration of *debarment*, the *Board* or the independent hearing officer may increase or decrease the duration of *debarment*. The duration of *debarment* shall not be less than one year.

4.9.3   The *Board* or the independent hearing officer shall determine all factual issues raised in the hearing and include findings of fact in a written decision to support its conclusions.

4.9.4.   For hearings before the *Board*, the decision must be made by a majority of the *Board* members.

4.9.5   The written decision shall be prepared and mailed no later than thirty (30) calendar days after the conclusion of the hearing. If the *Board* or the independent hearing officer determines that the complexity of the case requires additional time in which to render a decision, the time may be extended by another thirty (30) calendar days. Notice of such extension shall be promptly served upon the parties.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number | Issue | Page |
|---|---|---|---|
| | 25.90 | 1 | 7 of 9 |
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

4.9.6   The written decision shall be mailed to the parties in accordance with the notice procedures in Chapter 2, Article 2, Division 8 of the San Diego Municipal Code and is final on the date it is mailed.

4.10.   Appeal Process

4.10.1. All *debarment* decisions shall be final and shall constitute exhaustion of remedies by the *bidder* or *contractor*. Either party may seek writ review of the *debarment* decision.

4.11.   Creation of List of Debarred and Suspended Persons

4.11.1. The Purchasing and Contracting Department shall create and maintain a list of names, addresses, and applicable *debarment* or s*uspension* commencement and expiration dates of all *debarred* or *suspended bidders* and *contractors.* The Purchasing and Contracting Department shall publish this list on the City's website. The Purchasing and Contracting Department shall review the list annually and make any necessary updates, and add *debarred* or *suspended bidders* and *contractors* upon final decision from the *Board* or the independent hearing officer.

5.   RESPONSIBILITY

5.1   Department

5.1.1   The *department* must submit to the Chief Operating Officer, in writing, any recommendation to *suspend* and *debar*, or *debar*, including confirmation that the *department* conferred with the City Attorney's Office as required under section 4.1.2 of this regulation, and must represent the City at the hearing.

5.2   Bidder or Contractor

5.2.1.   A *bidder* or *contractor* must timely notify the Chief Operating Officer in writing to appeal a *suspension*.

5.2.3.   A *bidder* or *contractor* must be present at the *debarment* hearing. Failure to appear constitutes a waiver to contest the *debarment* recommendations. Failure to appear will result in the *department's* recommendation becoming the City's final decision.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number 25.90 | Issue 1 | Page 8 of 9 |
|---|---|---|---|
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

5.3.   Chief Operating Officer

5.3.1.   The Chief Operating Officer is responsible for providing an informal meeting for *suspensions*.

5.3.2.   The Chief Operating Officer is responsible for providing a hearing, arranging for a *Board* or independent hearing officer, and providing notice to all parties of the hearing date and the final written decision for *debarment* hearings.

5.4.   Board or Independent Hearing Officer

5.4.1.   The *Board* or the independent hearing officer is responsible for ensuring that an administrative record is properly recorded and all evidence admitted during the hearing is maintained.

5.4.2.   The *Board* or the independent hearing officer is responsible for following City policies, procedures, and regulations that govern *debarment*.

CITY OF SAN DIEGO
ADMINISTRATIVE REGULATION

| SUBJECT | Number 25.90 | Issue 1 | Page 9 of 9 |
|---|---|---|---|
| PROCEDURES FOR INITIATING DEBARMENT AND DEBARMENT HEARINGS | Effective Date January 18, 2019 | | |

## APPENDIX

Legal References

Chapter 2, Article 2, Division 8 of the San Diego Municipal Code
Council Policy 000-29

Forms

None

Subject Index

Debarment Policy
Debarment Roles
Debarment Hearing Procedures

Administering Department

Purchasing & Contracting

# EXHIBIT B

| | |
|---|---|
| **From:** | Mougin, Cassandra <CMougin@sandiego.gov> |
| **Sent:** | Wednesday, September 30, 2020 4:31 PM |
| **To:** | Scott K. Dauscher; Brian M. Wheeler |
| **Cc:** | Rae, Christina |
| **Subject:** | American Asphalt Debarment Hearing Dates |

Dear Scott and Brian,

We were recently advised that the City has decided to not pursue further action against your firm in regard to the conflict of interest issues previously identified.   The Office of Administrative Hearings (OAH) requires the City, as the filing agency, to obtain available dates from your office for the debarment hearing.  We will provide those dates to the OAH, along with dates that our office is available.  We are not exactly sure when the OAH is setting hearings but we think it is likely sometime this year.  Please provide dates in next few months and we will provide those to the OAH.

Thank you,
Cassandra


Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(858)431-9631


PLEASE NOTE: This email is for the sole use of the intended recipient(s) and may contain information protected by the ATTORNEY-CLIENT PRIVILEGE and/or by the ATTORNEY WORK PRODUCT DOCTRINE. The contents of this email may include confidential and/or inside information and may be legally privileged or protected and should not be communicated to or relied upon by any person without express consent of the sender. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited and may be unlawful. If you have received this email in error, please immediately notify the sender by reply email, delete the original communication, and destroy all copies.

# EXHIBIT C

**From:** Scott K. Dauscher <SDauscher@aalrr.com>
**Sent:** Friday, October 2, 2020 9:25 AM
**To:** Mougin, Cassandra
**Cc:** Rae, Christina; Brian M. Wheeler
**Subject:** [EXTERNAL] RE: American Asphalt Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

**\*\*This email came from an external source. Be cautious about clicking on any links in this email or opening attachments.\*\***

Cassandra,

Thank you for your email.  We will get available dates and send them to you.

**Scott K. Dauscher** | Partner
Atkinson, Andelson, Loya, Ruud & Romo
12800 Center Court Drive, Suite 300, Cerritos, California  90703
Main (562) 653-3200 • Fax (562) 653-3333
sdauscher@aalrr.com | vcard | website | subscribe | blog

**From:** Mougin, Cassandra [mailto:CMougin@sandiego.gov]
**Sent:** Wednesday, September 30, 2020 4:31 PM
**To:** Scott K. Dauscher; Brian M. Wheeler
**Cc:** Rae, Christina
**Subject:** American Asphalt Debarment Hearing Dates

Dear Scott and Brian,

We were recently advised that the City has decided to not pursue further action against your firm in regard to the conflict of interest issues previously identified.   The Office of Administrative Hearings (OAH) requires the City, as the filing agency, to obtain available dates from your office for the debarment hearing.  We will provide those dates to the OAH, along with dates that our office is available.  We are not exactly sure when the OAH is setting hearings but we think it is likely sometime this year.  Please provide dates in next few months and we will provide those to the OAH.

Thank you,
Cassandra


Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(858)431-9631


PLEASE NOTE: This email is for the sole use of the intended recipient(s) and may contain information protected by the ATTORNEY-CLIENT PRIVILEGE and/or by the ATTORNEY WORK PRODUCT

DOCTRINE. The contents of this email may include confidential and/or inside information and may be legally privileged or protected and should not be communicated to or relied upon by any person without express consent of the sender. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited and may be unlawful. If you have received this email in error, please immediately notify the sender by reply email, delete the original communication, and destroy all copies.

# EXHIBIT D

COPY TO: CITY ATTORNEY ✓
RISK MANAGEMENT ✓
DATE 11/9/2020
DCC NAME Lou ✓

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO RESPONDENT:**
*(AVISO AL DEMANDADO):*
CITY OF SAN DIEGO, a Municipal corporation; and DOES 1 to 50, inclusive

**YOU ARE BEING SUED BY PETITIONER:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AMERICAN ASPHALT SOUTH, INC., a California corporation

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/22/2020** at 10:54:54 AM

Clerk of the Superior Court
By Jose Hernandez, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego Superior Court<br>330 W. Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2020-00038338-CU-WM-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher S. Andre SBN 180326 (562) 653-3200 (562) 653-3333
Atkinson, Andelson, Loya, Ruud & Romo
12800 Center Court Drive South, Suite 300 Cerritos, California 90703

| DATE:<br>*(Fecha)* 10/23/2020 | Clerk, by<br>*(Secretario)* J. Hernandez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* City of San Diego, a Municipal Corp.
   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com |

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1   ATKINSON, ANDELSON, LOYA, RUUD & ROMO
    A Professional Law Corporation
2   Scott K. Dauscher          State Bar No. 204105
     SDauscher@aalrr.com
3   Brian M. Wheeler           State Bar No. 266661
     BWheeler@aalrr.com
4   Christopher S. Andre       State Bar No. 180326
     CAndre@aalrr.com
5   Shawn M. Ogle             State Bar No. 266259
     SOgle@aalrr.com
6   12800 Center Court Drive South, Suite 300
    Cerritos, California 90703-9364
7   Telephone: (562) 653-3200
    Fax: (562) 653-3333
8

9   Attorneys for Petitioner AMERICAN ASPHALT SOUTH, INC., a
    corporation
10

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

10/22/2020 at 10:54:54 AM

Clerk of the Superior Court
By Jose Hernandez, Deputy Clerk

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                COUNTY OF SAN DIEGO

13

| | |
|---|---|
| 14   AMERICAN ASPHALT SOUTH, INC., a<br>California corporation , | Case No.    37-2020-00038338-CU-WM-CTL |
| 15 | **VERIFIED PETITION FOR WRIT OF** |
|           Petitioner, | **MANDATE (C.C.P. §1085) AND** |
| 16 | **COMPLAINT FOR DECLARATORY** |
| v. | **RELIEF FOR PUBLIC RECORDS** |
| 17 | |
|   CITY OF SAN DIEGO, a Municipal | |
| 18   corporation; and DOES 1 to 50, inclusive, | |
| 19            Respondents. | |

20

21

22       By this verified petition, pursuant to Code of Civil Procedure section 1085, Government

23   Code section 6258 (California Public Records Act ("PRA")), Petitioner American Asphalt South,

24   Inc. ("AAS" or "Petitioner") hereby petitions this Court for a writ of administrative mandamus

25   directed to the City of San Diego (the "City"), commanding it to comply with the PRA.

26                  **I. INTRODUCTION**

27      1.      On June 16, 2020, AAS received a letter from the City of San Diego in which the

28   City made a series of unfounded and baseless allegations against AAS in connection with its role

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1   as public works contractor.  In its letter, the City wrongfully accused AAS of "corrupt practices in
2   the bidding, award, administration, or performance of a contract."

3     2. Based on the City's erroneous allegations, the City has suspended AAS from
4   bidding on City public works projects and the City has declared its intention to pursue debarment
5   proceedings, in which the City would attempt to permanently bar AAS from bidding on any public
6   works projects for the City of San Diego.  AAS has been denied its fundamental right to bid on
7   public works contracts in the City of San Diego since June 16, 2020.

8     3. AAS was shocked and confused by the City's allegations and immediately
9   requested clarification as to the supposed corruption that AAS was accused of committing.  On
10  July 2, 2020, AAS, through its undersigned counsel, submitted a PRA request (PRA 20-2798) for
11  the documents and records related to the City's investigation of AAS.  *See* Exhibit A.  On August
12  21 and August 27, 2020, AAS submitted two additional PRA requests (PRA 20-3672 and PRA 20-
13  3770) concerning the City's communications with various third parties, such as AAS's
14  competitors.  *See* Exhibits B and C.  On September 18, 2020, AAS submitted a fourth set of PRA
15  Requests (PRA 20-4155) relating to specific contracts and products referenced in the City's June
16  16 letter.  *See* Exhibit D.

17    4. Despite the City's clear obligation to provide the requested records and AAS's
18  critical need to understand the basis of the City's error, the City has sought to avoid its obligations
19  under the PRA.  As a result of the City's ongoing failures, AAS has been compelled to petition
20  this Court to ensure the City finally produces all of the responsive public records it has in its
21  possession, custody, or control, which it has been withholding for months.

22  **II. PARTIES**

23    5. Petitioner American Asphalt South, Inc. is a corporation who requested the public
24  records sought in this proceeding under the California Public Records Act.  AAS was denied
25  access by the City to the records sought under unlawful pretenses.

26    6. Respondent City of San Diego is a California Municipal Corporation that is subject
27  to the Public Records laws.  The City is in possession of the records sought, was requested access
28  to the records sought by AAS, and thereafter denied AAS access to said records.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 2 -

7.     The true names and capacities of those Respondents sued herein as DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Petitioner, who sues those Respondents by such fictitious names.  When the DOE parties' true names and capacities and their actual involvement in the matter alleged herein are ascertained, Petitioner will amend this Complaint to accurately reflect the same.

8.     Petitioner is informed and believes, and thereon alleges, that each of the factiously named Respondents designated hereunder as a DOE is responsible in some manner for the occurrences alleged herein, and that Petitioner's damages as herein alleged were proximately caused contributed to by their conduct.

9.     Petitioner is informed and believes, and thereon alleges, that at all relevant times herein, each of the Respondents was the agent, employee, partner, joint venture, alter ego, and/or co-conspirator of one or more remaining Respondents and in doing the acts alleged herein, was acting within the purpose, course and scope of such agency, employment joint venture or conspiracy, and with the consent, permission or ratification of one or more remaining Respondents.

### III. JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to California Code of Civil Procedure section 410.10 and California Constitution Article VI, Section 10, which confers upon Superior Courts original jurisdiction over applications for mandamus, injunctive and declaratory relief.

11.     Venue in San Diego County is proper under California Government Code section 6259, subd. (a) because some or all the public records sought are located in San Diego County.

### IV. GENERAL ALLEGATIONS

12.     On July 2, 2020, pursuant to the Public Records Act, Government Code §§ 6250 *et seq.*, AAS submitted to the City PRA 20-2798, constituting seventeen requests for public government records concerning the City's supposed basis for its debarment proceedings against AAS.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

PETITION AND COMPLAINT FOR DECLARATORY RELIEF
FOR PUBLIC RECORDS

008905.00027
29940189.2

13.     AAS has made numerous good faith attempts to work with the City to ensure the timely production of the requested government records.  On July 9, 2020, the City's attorneys proposed that AAS enter into a confidentiality agreement with the City to facilitate an exchange of documents and information, and even represented that the City would be able to produce documents more quickly if AAS agreed to proceed in this fashion than it would in response to the PRA requests.

14.     During a telephone conversation on July 9, 2020, a City attorney indicated that the emails quoted in the letter to AAS could be easily and quickly produced as they had previously been compiled.

15.     In an effort to amicably resolve any obstacles to production and obtain the documents requested, AAS, through its counsel, promptly provided the City with a draft confidentiality agreement the following day, on July 10, 2020.

16.     The City repeatedly claimed that it was reviewing the confidentiality agreement and that it would respond within a few days, but each time no further response was forthcoming.

17.     On July 15, 2020, during a meeting with the City, counsel for AAS asked whether the City intended to agree to the confidentiality agreement and was told the City would likely make that determination by the end of the week (*i.e.*, July 17, 2020).

18.     After receiving no further communication from the City about either the confidentiality agreement or the PRA requests, counsel for AAS sent the City an email on July 21, 2020, to confirm the City intended to execute the confidentiality agreement for production of the documents requested in the PRA requests forthwith.  In response, counsel for the City stated that the City would reply by the end of that week (*i.e.*, July 24, 2020).

19.     But again, AAS received no further communication from the City regarding the confidentiality agreement framework the City suggested or any production of documents in response to the PRA requests.

20.     Finally, on August 3, 2020, after approximately two weeks of silence—and a full month after AAS submitted its initial PRA requests—the City finally informed AAS that the City now refused to execute the confidentiality agreement that the City had suggested and had

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 4 -

1  supposedly been considering for more than three weeks in order to expeditiously produce
2  documents.

3       21.    Instead, the City stated—for the first time—that it "will respond to your office's
4  public record request on a rolling basis."  Nonetheless, the City failed to produce a single
5  document until September 4, 2020—more than two months after AAS submitted its initial PRA
6  request.

7       22.    Moreover, the City's record production remains woefully incomplete.  In a message
8  accompanying the document production, which only includes documents responding to AAS's
9  first PRA request, the City expressly admitted that the documents constitute only "a portion of
10 records that are responsive to your Public Records Act request."  The City's message also noted,
11 "we are still in the process of reviewing a large volume of other potentially responsive documents.
12 . ."

13      23.    On September 25, 2020, the City claimed it would produce documents responsive
14 to AAS' first set of requests (PRA 20-2798) on October 9, 2020.  However, the City has not even
15 complied with its own deadline.  On the day of the City's deadline, rather than producing the
16 requested documents, the City sent AAS another message in which it asserted, "the City does not
17 have records to upload at this time."  The City then claimed that it "expect[s] to produce the next
18 set of disclosagle *[sic]* records by the end of business on November 6."

19      24.    Also in the October 9 message, the City expressly reserved its supposed "right to
20 withhold and/or redact any records or information that may be exempt from disclosure under the
21 Public Records Act and/or other applicable legal privileges. . ."  The City has yet to provide a
22 privilege log, *Vaughn* index, or any other document identifying any of the alleged "applicable
23 legal privileges" asserted in connection with its prior productions.

24      25.    Accordingly, even if the City does indeed produce some records on November 6,
25 2020 (which is far from certain), the production will still be almost a full month late and there is
26 still no indication that the City intends to provide a complete production by that much belated
27 date.  Furthermore, the City's October 9 response reflects no willingness by the City to rectify or
28 cease its ongoing practice of improperly redacting responsive public records.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

- 5 -

PETITION AND COMPLAINT FOR DECLARATORY RELIEF
FOR PUBLIC RECORDS

26.     Furthermore, the City has failed to produce a single document responsive to PRA 20-3672 or PRA 20-3770.  In response to AAS's August 21 PRA request (PRA 20-3672), the City responded that it intends to produce responsive documents on October 30, 2020.   Despite receiving AAS's third set of PRA requests (PRA 20-3770) on August 27, 2020, the City has indicated that will not any produce documents until November 27, 2020—a full three months after AAS submitted the requests.

27.     In response to AAS's fourth set of requests (PRA 20-4155), the City only produced documents responsive to four of the thirteen requests.   The City claims that it will produce additional records on October 19, 2020, but yet again asserts its supposed right to unilaterally withhold and redact records without notice to AAS.

28.     Indeed, even the documents that the City has provided are not code compliant as the City has redacted what appear to be names from many records without any lawful basis. According to the City's September 4 message, the City redacted the documents because a City Deputy Director unilaterally determined that the "public interest in disclosure is outweighed by public interest in nondisclosure."

29.     In reality, the public interest demands that an accused—such as AAS—receive an unrestricted view of the documents supposedly forming the case against the accused.   In the extremely rare circumstances in which a defendant is deprived of the evidence the government is relying upon, it is critical that the government justify, in detail, precisely why the defendant should be denied equal access to the documents relevant to the defendant's case.  Thus, at a minimum, the City should be ordered to provide a privilege log identifying the specific basis asserted for each redaction and/or provide AAS with unredacted documents designated for confidential treatment by AAS to use in preparing its defense.

30.     In contrast, the supposed public interest in nondisclosure is negligible as AAS is merely a small company without any ability—much less any desire—to retaliate against any so-called "government whistleblowers."

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

31.     Moreover, based upon information and belief, the name redactions go well beyond the identity of the whistleblower and include a number of persons employed by the City and even third parties.  Such persons are witnesses who may have relevant exculpatory evidence within their knowledge and/or possession.

32.     Furthermore, the City has unlawfully withheld the confidential version of the City Auditor's April 13, 2020, report, entitled "Hotline Investigation of Gifts Received by a City Employee."  This withholding is wholly improper and only further deprives AAS of due process by wrongfully hindering its preparation for the City's baseless debarment proceeding.

33.     According to the City's message, dated September 4, 2020, the City relies upon Government Code section 53087.6 in its attempt to withhold the confidential version of the auditor's report.  However, the statute provides that investigative audits are to be kept confidential, *"except to issue any report of an investigation that has been substantiated. . ."*  Gov. Code § 53087.6(e)(2) (emphasis added).

34.     In the City's letter to AAS, dated June 16, 2020, the City noted that its decision regarding the debarment proceedings was based upon on the City's review of specifically the confidential version of the report.  As such, AAS will be unfairly denied its right to due process if the City were to continue the debarment proceedings while withholding from AAS the primary document upon which the City bases its determination.

35.     The City's position regarding the auditor's report is entirely inconsistent.  The City is attempting to withhold the confidential report by effectively asserting that its allegations are not substantiated, but relied upon that same confidential report to suspend AAS from its fundamental right to bid on public contracts.

36.     In addition to the public interest in government transparency, AAS also has a time-sensitive and constitutional due process right to the records in light of the City's baseless suspension and ongoing crusade to debar AAS.

37.     Upon information and belief, the City's efforts to debar AAS arise from the City's desire to redirect blame for well-documented administrative issues within the City's internal contracting and public works processes.  The public has a substantial interest in understanding the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1  supposed basis upon which the City has launched its smear campaign against AAS and an even

2  greater interest in understanding the City's actual motives.

3    38.    Furthermore, it is critical that the City cease its gamesmanship and begins

4  providing documents on a reasonable "rolling basis," as the City claimed it would. Each day that

5  that the City further delays its performance of its PRA obligations, AAS remains suspended

6  (despite the fact the City has yet to prove any of its allegations against AAS) and denied its

7  fundamental right to bid on public works projects with the City.

8    39.    Meanwhile, the continued de facto economic sanctions—and indeed

9  unconstitutional taking—imposed by the City by denying AAS this fundamental, vested right

10  threatens the sustainability of AAS and, as a result, the jobs of its many employees, including

11  residents of the City.

12    40.    While the unwarranted suspension is egregious, it is far worse that the City's

13  perpetual stonewalling has deprived AAS of months of preparation for the eventual debarment

14  hearing, in a blatant violation of AAS's due process rights.

15    41.    In fact, per the City's own admission, the City will not provide a single document

16  in response to PRA 20-3770 before November 27, 2020. Nonetheless, according to an email from

17  City Deputy Attorney Cassandra Mougin, dated October 2, 2020, the City intends to proceed with

18  its baseless debarment hearing against AAS by the end of the year. Such an unconscionable

19  attempt to push through an enforcement proceeding without responding to AAS's critical requests

20  must not be permitted.

**FIRST CAUSE OF ACTION**

**Writ of Mandate (Code Civ. Proc. § 1085), Prohibit, or Other Extraordinary Relief**

23    42.    Petitioner incorporates the allegations of the preceding paragraphs as though fully

24  set forth herein.

25    43.    Respondents have a clear, present, and ministerial duty to expeditiously produce

26  the records it is withholding from Petitioner.

27    44.    Petitioner has performed all conditions precedent to filing this Petition. There are

28  no administrative exhaustion requirements under Government Code section 6250, *et seq.*

008905.00027
29940189.2

PETITION AND COMPLAINT FOR DECLARATORY RELIEF
FOR PUBLIC RECORDS

1   Petitioner has no plain, speedy, and adequate remedy in the ordinary course of law other than the

2   relief sought in this Petition.

3       45.    Petitioner, and the general public, have been and continue to be harmed by

4   Respondents' improper refusal to comply with the PRA.

5       46.    Petitioner thereby requests a writ of mandate ordering Respondents to produce the

6   above-described withheld records in unredacted form.

7       47.    At a minimum, the City should be ordered to produce a privilege log or *Vaughn*

8   index listing all withheld or redacted records and identifying the City's asserted privilege in

9   connection with each document.

**SECOND CAUSE OF ACTION**

**Declaratory Relief (Code Civ. Proc. §1060)**

12      48.    Petitioner incorporates the allegations of the preceding paragraphs as though fully

13  set forth herein.

14      49.    An actual controversy has arisen and now exists between Petitioner and

15  Respondents concerning their respective rights and duties as to Petitioner's right to receive

16  records.

17      50.    Petitioner requests the Court issue a declaration affirming Petitioner's right to be

18  provided all the documents requested in PRA 20-2798, PRA 20-3672, PRA 20-3770, and PRA 20-

19  4155 in their unredacted form within 30 days.

**PRAYER FOR RELIEF**

21      Wherefore, Petitioner prays as follows:

22      1.    For a declaration that the records withheld, as set forth herein, are required to be

23  produced under the Public Records Act;

24      2.    For the issuance of a peremptory writ of mandate directing the City to produce to

25  AAS the documents requested within 30 days;

26      3.    In the alternative, for the issuance of an order to the City to show cause why the

27  Court should not issue such a writ;

28      4.    For attorneys' fees and costs; and

- 9 -

008905.00027
29940189.2

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

5.     For all other relief the Court determines is warranted.

Dated:  October 20, 2020

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By:  _____
Scott K. Dauscher
Brian M. Wheeler
Christopher S. Andre
Shawn M. Ogle
Attorneys for Petitioner AMERICAN ASPHALT
SOUTH, INC., a corporation

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

008905.00027
29940189.2

- 10 -

**VERIFICATION**

STATE OF CALIFORNIA )

)

COUNTY OF LOS ANGELES )

I have read the foregoing **Verified Petition For Writ Of Mandate (C.C.P. §1085) And Complaint For Declaratory Relief For Public Records** and know its contents.

I am the Chief Executive Officer of American Asphalt South, Inc. ("AAS"), a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing document, and know the contents thereof. The information necessary to prepare said document came from various sources both within and outside AAS, and was gathered by various agents, employees, or attorneys on behalf of AAS. I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 20th, 2020, at Hayward, California.

Allan Henderson, CEO
American Asphalt South, Inc.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott K. Dauscher, SBN 204105 Brian M. Wheeler, SBN 266661<br>Christopher S. Andre, SBN 180326, Shawn M. Ogle, SBN 266259<br>Atkinson, Andelson, Loya, Ruud & Romo<br>12800 Center Court Drive South, Suite 300, Cerritos, California 90703<br>TELEPHONE NO.: (562) 653-3200   FAX NO.: (562) 653-3333<br>ATTORNEY FOR *(Name):* Petitioner | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**10/22/2020** at 10:54:54 AM<br><br>Clerk of the Superior Court<br>By Jose Hernandez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

CASE NAME: AMERICAN ASPHALT SOUTH, INC. v. CITY OF SAN DIEGO, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☒ **Unlimited**  ☐ **Limited**<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ **Counter**  ☐ **Joinder**<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2020-00038338-CU-WM-CTL<br>JUDGE:<br>DEPT:   Judge Ronald F. Frazier |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☒ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* One
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 21, 2020

Christopher S. Andre
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) (*if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability (*not asbestos or
   toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice--
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) (*not civil
   harassment*) (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36) Other
   Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract (*not unlawful detainer
         or wrongful eviction*)
   Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage (*not provisionally
   complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   (*arising from provisionally complex
   case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment (*non-
      domestic relations*)
   Sister State Judgment
   Administrative Agency Award
      (*not unpaid taxes*)
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
   above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-
      harassment*)
   Mechanics Lien
   Other Commercial Complaint
      Case (*non-tort/non-complex*)
   Other Civil Complaint
      (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition (*not specified
   above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2020-00038338-CU-WM-CTL     CASE TITLE: American Asphalt South Inc VS City of San Diego [IMAGED]

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7065 |

PLAINTIFF(S) / PETITIONER(S):     American Asphalt South Inc

DEFENDANT(S) / RESPONDENT(S):  City of San Diego

AMERICAN ASPHALT SOUTH INC VS CITY OF SAN DIEGO [IMAGED]

| **NOTICE OF CASE ASSIGNMENT** **and CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 37-2020-00038338-CU-WM-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Ronald F. Frazier                                                    Department: C-65

**COMPLAINT/PETITION FILED:** 10/22/2020

| **TYPE OF HEARING SCHEDULED** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

SDSC CIV-721 (Rev. 01-17)                                                                                                    Page: 1

**NOTICE OF CASE ASSIGNMENT**



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

Page: 2

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | |

| PLAINTIFF(S): American Asphalt South Inc |
|---|
| DEFENDANT(S): City of San Diego |
| SHORT TITLE: AMERICAN ASPHALT SOUTH INC VS CITY OF SAN DIEGO [IMAGED] |

| STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2020-00038338-CU-WM-CTL |
|---|---|

Judge: Ronald F. Frazier                                    Department: C-65

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                            ☐ Binding private arbitration

☐ Voluntary settlement conference (private)       ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                    ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                  Name of Defendant

_____          _____
Signature                                          Signature

_____          _____
Name of Plaintiff's Attorney                       Name of Defendant's Attorney

_____          _____
Signature                                          Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 10/23/2020                                  _____
                                                   JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott K. Dauscher, SBN 204105 Brian M. Wheeler, SBN 266661 Christopher S. Andre, SBN 180326 / Shawn M. Ogle, SBN 266259 ATKINSON, ANDELSON, LOYA, RUUD & ROMO 12800 Center Court Drive South, Suite 300, Cerritos, California 90703-9364 | |

TELEPHONE NO: (562) 653-3200   FAX NO. *(Optional):* (562) 653-3333

E-MAIL ADDRESS *(Optional):* SDauscher@aalrr.com/BWheeler@aalrr.com/CAndre@aalrr.com/ SOgle@aalrr.com

ATTORNEY FOR *(Name):* Attorneys for Petitioner AMERICAN ASPHALT SOUTH, INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**

STREET ADDRESS: 330 W Broadway

MAILING ADDRESS: 330 W Broadway

CITY AND ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME: Central

PLAINTIFF/PETITIONER: AMERICAN ASPHALT SOUTH, INC.

DEFENDANT/RESPONDENT: CITY OF SAN DIEGO, a Municipal corporation

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 37-2020-00038338-CU-WM-CTL |
|---|---|

TO *(insert name of party being served):* City of San Diego, a Municipal corporation, c/o Office of the City Clerk, 202 C Street MS 2A, San Diego, CA 92101

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 3, 2020

Shawn M. Ogle
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):* Civil Case Cover Sheet, Notice to Litigants, Notice of Case Assignment and Case Management Conference, and Stipulation to Alternative Dispute Resolution Process (ADR)

*(To be completed by recipient):*

Date this form is signed: 11/9/2020

Lei Tanya D. Wise office of city clerk ▶
_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory se Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Scott K. Dauscher, SBN 204105 Brian M. Wheeler, SBN 266661 Christopher S. Andre, SBN 180326 / Shawn M. Ogle, SBN 266259 ATKINSON, ANDELSON, LOYA, RUUD & ROMO 12800 Center Court Drive South, Suite 300, Cerritos, California 90703-9364 | |

TELEPHONE NO: (562) 653-3200    FAX NO. (Optional): (562) 653-3333
E-MAIL ADDRESS (Optional): SDauscher@aalrr.com/BWheeler@aalrr.com/CAndre@aalrr.com/ SOgle@aalrr.com
ATTORNEY FOR (Name): Attorneys for Petitioner AMERICAN ASPHALT SOUTH, INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego, CA 92101-3827
BRANCH NAME: Central

PLAINTIFF/PETITIONER: AMERICAN ASPHALT SOUTH, INC.

DEFENDANT/RESPONDENT: CITY OF SAN DIEGO, a Municipal corporation

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 37-2020-00038338-CU-WM-CTL |
|---|---|

TO (insert name of party being served): City of San Diego, a Municipal corporation, c/o Office of the City Clerk, 202 C Street MS 2A, San Diego, CA 92101

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 3, 2020

Shawn M. Ogle
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. ☒ A copy of the summons and of the complaint.
2. ☒ Other (specify): Civil Case Cover Sheet, Notice to Litigants, Notice of Case Assignment and Case Management Conference, and Stipulation to Alternative Dispute Resolution Process (ADR)

(To be completed by recipient):

Date this form is signed:

_____          ▶
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       _____
ON WHOSE BEHALF THIS FORM IS SIGNED)          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory se
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott K. Dauscher, SBN 204105 Brian M. Wheeler, SBN 266661<br>Christopher S. Andre, SBN 180326 / Shawn M. Ogle, SBN 266259<br>ATKINSON, ANDELSON, LOYA, RUUD & ROMO<br>12800 Center Court Drive South, Suite 300, Cerritos, California 90703-9364 | |

TELEPHONE NO: (562) 653-3200  FAX NO. *(Optional):* (562) 653-3333
E-MAIL ADDRESS *(Optional):* SDauscher@aalrr.com/BWheeler@aalrr.com/CAndre@aalrr.com/ SOgle@aalrr.com
ATTORNEY FOR *(Name):* Attorneys for Petitioner AMERICAN ASPHALT SOUTH, INC.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego, CA 92101-3827
BRANCH NAME: Central

PLAINTIFF/PETITIONER: AMERICAN ASPHALT SOUTH, INC.

DEFENDANT/RESPONDENT: CITY OF SAN DIEGO, a Municipal corporation

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2020-00038338-CU-WM-CTL |
|---|---|

City of San Diego, a Municipal corporation, c/o Office of the City Clerk, 202 C Street
TO *(insert name of party being served):* MS 2A, San Diego, CA 92101

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: November 3, 2020

Shawn M. Ogle
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):* Civil Case Cover Sheet, Notice to Litigants, Notice of Case Assignment and Case Management Conference, and Stipulation to Alternative Dispute Resolution Process (ADR)

*(To be completed by recipient):*

Date this form is signed:

_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory se<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com