1   Jenny L. Riggs (SBN: 204417)
    jriggs@meyersnave.com
2   Margaret W. Rosequist (SBN: 203790)
    mrosequist@meyersnave.com
3   MEYERS, NAVE, RIBACK, SILVER & WILSON
    600 B Street, Suite 1650
4   San Diego, California 92101
    Telephone: (619) 330-1700
5   Facsimile: (619) 330-1701

6   Attorneys for Defendants
    CITY OF SAN DIEGO
7

8               UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  AMERICAN ASPHALT SOUTH, INC,         Case No. 3:21-cv-00176-DMS-NLS
    a California corporation,
12                                        *[Assigned for All Purposes to:*
                 Plaintiff,               *Hon. Dana M. Sabraw, Dept. 13A]*
13
         v.                               **DECLARATION OF IAN
14                                        JOHNSON IN SUPPORT OF
    CITY OF SAN DIEGO, a Municipal        DEFENDANT CITY OF SAN
15  corporation,                          DIEGO'S OPPOSITION TO
                                          PLAINTIFF'S EX PARTE
16               Defendant.               APPLICATION FOR TEMPORARY
                                          RESTRAINING ORDER AND
17                                        ORDER TO SHOW CAUSE RE:
                                          PRELIMINARY INJUNCTION**
18
19                                        Action Filed:    January 29, 2021
                                          Trial Date:      None Set
20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF IAN JOHNSON**

I, Ian Johnson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am Senior of Counsel with Meyers, Nave, Riback, Silver & Wilson, counsel for Defendant City of San Diego ("City") in this action.  I submit this Declaration in support of the City's Opposition to Plaintiff American Asphalt South, Inc.'s ("AAS") Ex Parte Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction.  I make this Declaration based on my own personal knowledge

2.      AAS alleges in its Complaint that the "City's own attorney has represented that the City has no intention of granting AAS its evidentiary hearing [in the underlying debarment proceedings] until June 2021, at the earliest."  (Complaint, p. 2:10-11).  The allegation is incorrect and misleading.

3.      The City has not decided, and cannot not decide, when the debarment hearing will take place.  Rather, hearing dates are set by the Office of Administrative Hearing ("OAH"), the body before which the debarment proceedings will be heard.  In that regard, I contacted the OAH by telephone on or around January 8, 2021 to ask about the earliest dates available for the debarment proceedings.  The OAH informed me that a hearing of any appreciable length (more than two or three days) would likely be slated for no earlier than June 2021.

4.      Following my call with the OAH, on January 11, 2021, I sent a letter to counsel for AAS explaining that the debarment proceedings would likely be scheduled for June 2021 and offering three dates in that month for hearing (June 14, 21 and 28).  A true and correct copy of my letter is attached hereto as Exhibit A.  AAS' counsel responded by a letter of January 19, 2021, in which it stated that it was available for hearing in June 2021.  A true and correct copy of that letter is attached hereto as Exhibit B.

5.      On February 2, 2021, the City filed and served its Verified Accusation (*i.e.*, its initial pleading) in the OAH debarment proceedings and also requested the

1

DECLARATION OF IAN JOHNSON IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX
PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1  above-referenced hearing dates in June 2021 from the OAH by filing a Request to

2  Set.  A true and correct copy of the Accusation, with proof of service, is attached

3  hereto as Exhibit C.  A true and correct copy of the Request to Set is attached hereto

4  as Exhibit D.

5

6        I declare under penalty of perjury that the foregoing is true and correct.

7

8        Dated this 3RD day of February, 2021.

9

10

11

12                                          _____

13                                                      Ian Johnson

14  3687037.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF IAN JOHNSON IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX
PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

# Exhibit A

1999 Harrison Street, 9th Floor          Ian L. Johnson
Oakland, California 94612                ijohnson@meyersnave.com
tel (510) 808-2000
fax (510) 444-1108
www.meyersnave.com



January 11, 2021

**Via Email and U.S. Mail**

Shawn M. Ogle, Esq.
SOgle@aalrr.com
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100
Irvine, CA 92618

**Re:    American Asphalt South, Inc. – Debarment and Public Records Act ("PRA")
           Proceedings**

Dear Mr. Ogle,

The City of San Diego ("City") has engaged our firm to represent it in connection with the above-referenced matters.  Please direct all future inquiries and correspondence to my attention.

We are in receipt of your letter to the City dated December 23, 2020.  While we will not address here each of its points, we note our disagreement with certain of its core assumptions.  For example, we do not agree that the City has unduly delayed in initiating proceedings before the Office of Administrative Hearings ("OAH") and submit that the City's efforts to initiate the proceedings were instead hampered when your client declined to provide available hearing dates.  We also disagree that we have taken evidence material to the debarment issue out of context.

In either event, we are eager to press ahead with the OAH proceedings.  This raises two points on which we invite meet and confer.

The first point relates to the issue of scheduling.  I have spoken with a representative at the OAH, who informs me that the OAH docket is full into mid-May 2021 and that a hearing of any appreciable length (more than 2 or 3 days) would likely be slated for hearing in June.  With that in mind, I suggest we identify June 14, 21, and 28, 2021 as our preferred hearing date alternatives in the OAH Request to Set form.  I will further suggest an estimated hearing length of 30 hours over four days.

Shawn M. Ogle
January 11, 2021
Page 2


The second point relates to your client's pending Public Records Act ("PRA") action, which is not in our view relevant to the debarment proceeding. Your client can seek discovery in the OAH proceedings. We would therefore appreciate the opportunity to discuss with you an approach to discovery and information exchange that does not add an additional layer of expense, with the goal of setting a discovery plan for approval by the Independent Hearing Officer as appropriate.

We look forward to discussing these matters with you.

Best regards,

Ian Johnson


cc: Cassandra Mougin: CMougin@sandiego.gov
  Christina Rae: CRae@sandiego.gov
  Jenny Riggs: jriggs@meyersnave.com

3664809.1

# Exhibit B

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL LAW CORPORATION

ATTORNEYS AT LAW

20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
(949) 453-4260

FAX (949) 453-4262
WWW.AALRR.COM

CERRITOS
(562) 653-3200

FRESNO
(559) 225-6700

MARIN
(628) 234-6200

PASADENA
(626) 583-8600

SOgle@aalrr.com
(949) 536-2225

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:
008905.00027
31051565.1

January 19, 2021

***VIA FIRST CLASS MAIL AND EMAIL***

Ian L. Johnson
Meyers | Nave
1999 Harrison Street, 9th Floor
Oakland, California 94612

ijohnson@meyersnave.com

**Re:** **American Asphalt South, Inc. – Debarment and Public Records Act ("PRA") Proceeding**s

Mr. Johnson:

Please send us a copy of the Accusation as soon as possible.  We have requested a copy of the Accusation on multiple occasions since October 2020 and the City has failed to provide it.  We will need to review the Accusation before we can determine whether your proposal of thirty (30) hours is sufficient to address all issues raised by the Accusation, including AAS's defenses.

On a related note, your contention that the City's efforts to initiate the debarment proceedings were hampered when AAS "declined to provide available dates" is demonstrably false and plainly contradicted by the record.  In fact, since October 2020, we have been demanding that the City initiate the debarment proceedings by filing the Accusation and serving our office with the Accusation as soon as possible.  In our correspondence we also advised the City that we would be available to proceed to the debarment hearing in mid-January 2021, and when the City further delayed by not filing the Accusation (and still has not done so), we advised the City that we would be available to proceed to the debarment hearing within four months of the filing and service of the Accusation.  For example, we explicitly advised the City that if it filed and served the Accusation by the end of October 2020, we would be ready and available to proceed on the debarment hearing in February 2021.  The City never responded and has continued to delay by not filing the Accusation.  A recitation of these points is set forth below.  I have also enclosed copies of our correspondence with the City for your reference.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Ian L. Johnson
Meyers | Nave
January 19, 2021
Page 2

On September 30, 2020, the City requested for the first time our available dates to proceed on the debarment hearing. By that point, we had several PRA Requests that had been pending since July and August (the City has still not produced all responsive documents to these PRA Requests) and the City had represented that all responsive documents would be produced by November 27, 2020.[1] On October 9, 2020, within ten days of the City's initial request for our availability to proceed on the debarment hearing, we informed the City that we would be ready to proceed by the second week of January 2021:

> "If the City is willing to produce *all* responsive documents on a rolling basis, with the final production to be completed by no later than November 27, 2020, including the documents identified in the preceding paragraphs without redaction, then AAS will be prepared and is available to proceed on the debarment hearing in or after the second week of January 2021."

Our October 9, 2020 letter also reiterated many of the discovery issues that we have raised since July 2020, including the deposition of City witnesses and employees: "We will also need to discuss whether the City will be making its witnesses and other City employees available for deposition sufficiently in advance of the debarment hearing."

On October 21, 2020, Deputy City Attorney Cassandra Mougin responded on behalf of the City. In Ms. Mougin's response, the City refused to affirm that all documents would be produced by November 27, 2020, and instead ignored the hearing dates that AAS had already provided. The City also did not address whether it would make its witnesses and employees available for deposition in advance of the debarment hearing, instead simply stating that "once the matter is filed with the OAH, both parties will necessarily engage in further discovery processes and the OAH has processes and rules in that regard."

On October 26, 2020, I provided a response to Ms. Mougin. Despite the City's failure to affirm that all documents would be produced by November 27, 2020, and the City's refusal to provide AAS with a copy of the Accusation, AAS indeed provided the City with its estimated timeline to proceed to the debarment hearing with available dates:

> "[AAS] would require approximately four months after the Accusation has been served on our office (assuming the Accusation is served before the end of the month, that would mean the end of February 2021)."

---

[1] Indeed, the City's delay began as early as July 9, 2020, when the City proposed counsel for AAS prepare and execute a confidentiality agreement with the City and withdraw its PRA requests based on the City's dubious representation that the City would produce documents sooner under a confidentiality agreement than pursuant to the PRA. Despite counsel for AAS sending the proposed confidentiality agreement the next day, the City delayed responding for weeks, eventually abruptly changing course and refusing the confidentiality agreement while failing to produce even a single document for well more than two months. The City's repeated delay tactics since inception of this matter reeks of gamesmanship.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Ian L. Johnson
Meyers | Nave
January 19, 2021
Page 3

The October 21, 2020 email from Ms. Mougin was the last correspondence we received from the City on the debarment proceedings until your January 11, 2021 letter. I sent follow-up correspondence to Ms. Mougin on November 4, 2020 requesting a response and demanded that the Accusation be filed immediately with the Office of Administrative Hearings:

> "[T]wo weeks have elapsed since your October 21st email and we still have not received the Accusation. It is imperative that the Accusation be filed immediately in order to initiate the debarment proceedings, have a Hearing Officer assigned, and address the discovery issues that we have previously raised. Specifically, AAS has been suspended from bidding on City projects since the June 16, 2020 Debarment Notice. Thus, the suspension has been in place for almost five months without affording AAS due process, which is tantamount to de facto or constructive debarment in violation of the law. Not only does this result in irreparable harm to AAS, but it is also results in harm to the City because AAS has consistently been the lowest bidder on these projects. We demand that the City file the Accusation with OAH as soon as possible or, in the alternative, rescind the suspension of AAS so that it can bid on projects for the City."

On November 19, 2020, after receiving no response from the City, I sent another letter to Ms. Mougin and her supervisor, City Attorney Mara Elliott. This letter detailed the foregoing history, specifically referenced the City's delay, the City's silence to AAS's availability to proceed on the debarment hearing, and the City's failure to even initiate the debarment by filing the Accusation:

> "[T]he City admitted in an email dated October 21, 2020, that it had not yet even filed the Accusation to initiate the debarment proceedings with the Office of Administrative Hearings. AAS has provided the City with its available dates for the debarment hearing and has made repeated demands upon the City that it either rescind the debarment proceedings, including the suspension, or file the Accusation. AAS's demands have been met with silence and the Accusation has still not been filed, meaning we are still months away from the debarment hearing. This is tantamount to a *de facto* or constructive debarment without affording AAS due process in violation of the law."

Again, the City failed to respond to my November 19th letter, which resulted in my December 23rd letter. This letter finally elicited a response, dated January 11, 2021; almost three months since the City's last response on October 21, 2020. The evidence clearly shows the City's delay and obfuscation. Now you have informed us that June 2021 is the earliest available date for the debarment hearing as a result of the City ignoring our prior demands and failing to file the Accusation back in October or November. By June 2021, AAS will have been suspended for one year—denied its fundamental right to bid on public works projects with the City—without affording AAS due process in violation of the law. This amounts to an effective debarment and

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Ian L. Johnson
Meyers | Nave
January 19, 2021
Page 4

indeed an unconstitutional taking. As a result, we demand that AAS's suspension be lifted
pending the debarment hearing in June 2021.[2]

With respect to the meet and confer on discovery and information exchange issues, we are
willing to meet and confer on these issues. In fact, we have been requesting such a meet and
confer since October 2020. In order to increase the likelihood that our discussions will be
fruitful, please send me a written proposal so that I can review with my client.

This letter is not intended to be, nor shall it be construed as, a waiver of any of AAS's rights or
remedies, all of which rights and remedies are expressly reserved.

Best regards,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Shawn M. Ogle

SMO:mnn
Enclosures

---

[2] For the sake of clarity: yes, AAS is available to proceed on the debarment hearing in June 2021. However, the
City's delay and obfuscation must be addressed. If the City refuses to rescind the suspension pending the debarment
hearing, then AAS will be pursuing all available rights and remedies to address the City's violations of AAS's
rights.

# ENCLOSURES

# ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL LAW CORPORATION

## ATTORNEYS AT LAW

12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
(562) 653-3200 • (714) 826-5480

FAX (562) 653-3333
WWW.AALRR.COM

FRESNO
(559) 225-6700

IRVINE
(949) 453-4260

MARIN
(628) 234-6200

PASADENA
(626) 583-8600

BWheeler@aalrr.com
(562) 653-3850

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:

September 4, 2020

*VIA EMAIL AND FIRST CLASS MAIL*

Cassandra Mougin
Christina Rae
Deputy City Attorney
Office of the City Attorney — Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
CMougin@sandiego.gov
CRae@sandiego.gov

Re:     **Further Meet and Confer Letter for Public Records Requests Pursuant to
        Government Code §§ 6250 *et seq.***

Dear Counsel:

I am in receipt of your email, sent September 2, 2020, in response to the meet and confer letter
sent by this office on August 25, 2020.  Unfortunately, while your email purports to provide
"[t]he complete history of those contacts," in fact, your description grossly mischaracterizes the
events that have occurred since this office first submitted Public Records Act requests to the City
on July 2, 2020.

As an initial matter, in your email you inexplicably claim, "The City in fact produced some
documents to you on July 21, 2020."  In reality, the City of San Diego has yet to produce a single
document, on July 21, 2020, or otherwise.  Assuming that your assertion is referencing the
written response provided by the Office of the City Auditor on July 21, 2020, there is absolutely
no legitimate basis for the City to assert that it has produced documents.  First, the City Auditor's
response expressly disavows any association with the City or your office: "this response is only
as it pertain to the Office of the City Auditor and is not intended to constitute a response on
behalf of the City as a whole or any other City department."  Second, even if the City had
provided the July 21 response, it is immaterial as the response does not constitute the production
of any documents.  Indeed, the City Auditor's boilerplate response does nothing more provide a
link to a publicly accessible database in which the visitor must manually hunt and peck through
fourteen years of documents.  Such a response is wholly inadequate and certainly does not
constitute a production, particularly as it fails to even attempt to specify any supposedly relevant

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Cassandra Mougin
Christina Rae
September 4, 2020
Page 2

documents.  The City cannot comply with its obligations under the PRA by merely instructing requesters to review the entirety of a publicly available database filled with irrelevant documents.

To be clear as to the so-called "proposed confidentiality agreement," it was your office that proposed AAS prepare and execute a confidentiality agreement with the City.  In fact, you proposed the confidentiality agreement on July 9, 2020, and AAS submitted a draft agreement for your consideration the following day—on July 10, 2020.  In support of your request that AAS submit a draft confidentiality agreement, you represented to me that the City would be able to produce documents sooner with such an agreement in place than pursuant to the PRA .  But now, almost two months later, the City has failed to produce any documents and it is clear that the City's "further consideration" of the confidentiality agreement was nothing short of a stonewalling tactic to deprive AAS of the documents essential to its defense against your meritless proceedings.  Your assertion that the benefits of a confidentiality agreement are "moot" is particularly outrageous when one of the principal purported premises of executing the agreement was the swift and timely production of documents.  Thus, to the extent that your "proposed confidentiality agreement" is moot (as you contend in your email), it is the flagrant inaction of the City that caused such mootness.

With or without a confidentiality agreement, there is simply no excuse for the City's continued failure to produce documents.  In your letter to AAS entitled "Notice of Suspension and Initiation of Debarment Proceedings," dated June 16, 2020, your office quotes and/or describes numerous emails at length indicating that such emails had already been compiled and reviewed.  In fact, during our telephone conversation on July 9, 2020, you indicated that those emails—which AAS requested on July 2, 2020—could be easily and quickly produced as they had previously been compiled.  Nonetheless, while supposedly considering the confidentiality agreement, your office notified AAS that the City would be taking an "extension" in connection with AAS's PRA requests and then provided AAS with nothing more than non-substantive "updates" on July 24 and August 7, 2020.  For the City to continue to withhold records that your office gathered and reviewed no later than June 16, 2020, can only be viewed as gamesmanship.

Furthermore, in your email you reference "several public record requests for the same documents, most notably from the San Diego Union Tribune."  You do not, however, acknowledge that AAS has a time-sensitive and constitutional right to the records in light of the City's baseless suspension and ongoing crusade to debar AAS.  Each day that that the City continues to delay its obligations under the PRA, AAS remains suspended (despite the fact the City has yet to prove any of its allegations against AAS), denied its fundamental right to bid on public works projects with the City.  Meanwhile, the continued de facto economic sanctions—and indeed unconstitutional taking—imposed by the City by denying AAS this fundamental right threatens the sustainability of AAS and, as a result, the jobs of its many employees, including residents of the City.  While the unwarranted suspension is egregious, it is far worse that the

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Cassandra Mougin
Christina Rae
September 4, 2020
Page 3

City's perpetual stonewalling has deprived AAS of months of preparation for the eventual evidentiary hearing, in a blatant violation of AAS's due process rights.

By your own admission, for months, the City has maintained a file of all emails referenced in your June 16, 2020 letter, but you have unlawfully withheld those documents from AAS without justification.  If the City yet again fails to comply with its obligations to produce all responsive records by 5 p.m. on September 4, 2020, then AAS will have little choice but to seek judicial intervention in short order to protect its constitutional right to due process.

Please do not hesitate to contact with office with any questions or concerns.

Regards

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Brian M. Wheeler

## Shawn M. Ogle

| | |
|---|---|
| **From:** | Shawn M. Ogle |
| **Sent:** | Wednesday, November 4, 2020 3:13 PM |
| **To:** | 'Mougin, Cassandra' |
| **Cc:** | Brian M. Wheeler; Scott K. Dauscher; Rae, Christina |
| **Subject:** | RE: City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027] |
| **Attachments:** | 11.4.20 - Letter to Cassandra Mougin - PDF.PDF |

Cassandra,

Attached please find my letter of today's date following up on my initial letter dated October 9, 2020, your email response dated October 21, 2020, and my email response dated October 26, 2020.

Your prompt attention is much appreciated.

Best,

**Shawn M. Ogle** | Partner
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100, Irvine, California 92618
Direct (949) 536-2225 • Main (949) 453-4260 • Fax (949) 453-4262
sogle@aalrr.com | website | subscribe

**From:** Shawn M. Ogle
**Sent:** Monday, October 26, 2020 8:57 AM
**To:** 'Mougin, Cassandra'
**Cc:** Brian M. Wheeler; Scott K. Dauscher; Rae, Christina
**Subject:** RE: City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

Cassandra,

Your email raises more questions than it answers.  For example, your email states that we have submitted three PRA Requests.  In fact, we have submitted four PRA requests (the three PRA Requests identified in your email plus PRA 20-3770), which include requests involving communications between the City and various third parties, including AAS's competitors and other contractors.  Obviously AAS would not be in possession of such communications despite the statements in your email that AAS should already be in possession of all documents that are the subject of its PRA Requests.  Additionally, now we are not even sure that the City will be producing all documents by November 27, 2020 as the City has previously represented since your email is silent on such request for assurance in my October 9, 2020 letter.  Based upon your email and the failure to provide the assurances requested in my October 9th letter that (1) the City will be producing the underlying documents pertaining to the hotline investigation; (2) all redactions are limited to the "identity individual or individuals reporting the improper government activity, and the subject employee or employees"; and (3) the City will be producing all such documents requested in AAS's PRA Requests by November 27, 2020, we filed the attached Petition for Writ of Mandate.

With respect to available dates for the debarment proceeding, I informed you in my October 9th letter that if the City provided the assurances requested in my letter, in particular the assurance that all responsive documents would be produced by November 27, 2020, then we would be available for the debarment hearing to commence in the second week of January 2021.  However, I advised that if PRA litigation must first proceed to adjudicate

1

the proprietary of the City's responses, redactions, and objections then such further and continued delay by the City will deprive AAS of adequate time to prepare for and proceed with the hearing in January 2021 because the City's delays and obfuscation have prejudiced AAS and infringe upon its due process rights.  It appears that PRA litigation will indeed need to proceed first in order to compel the City to turn over essential documents needed for AAS to prepare its defense and to protect and redeem its fundamental, vested rights.

Additionally, given your statement that the parties will necessarily engage in further discovery processes once the Accusation is filed, and the fact that we have not yet seen the Accusation, we cannot commit to be available and prepared to proceed to the debarment hearing blind and thus would require approximately four months after the Accusation has been served on our office (assuming the Accusation is served before the end of the month, that would mean the end of February 2021).  However, even this timeline is highly uncertain given the pending Petition for Writ of Mandate and the City's repeated delays to provide highly relevant documents and make available crucial witnesses.

Best,

**Shawn M. Ogle** | Partner
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100, Irvine, California 92618
Direct (949) 536-2225 • Main (949) 453-4260 • Fax (949) 453-4262
sogle@aalrr.com | website | subscribe

**From:** Mougin, Cassandra [mailto:CMougin@sandiego.gov]
**Sent:** Wednesday, October 21, 2020 3:52 PM
**To:** Shawn M. Ogle
**Cc:** Brian M. Wheeler; Scott K. Dauscher; Rae, Christina
**Subject:** Re: City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

Dear Shawn,

We are in receipt of your October 9, 2020 letter.

Your firm has requested many categories of documents in their 3 PRA requests.  Request 20-2798 seeks 16 categories of documents.  Request 20-3672 seeks 19 categories of documents and Request 20-4155 seeks another 14 categories of documents. On September 4, 2020, in response to your office's PRA Request 20-2798, the City produced a PDF copy of the Auditor's Hotline Report, which is the same report the Auditor's office referred you to via the website link.  Additionally on September 4, 2020, the City responded by producing over 600 pages of emails, some or all of which were considered in the Chief Operating Officer's decision to pursue the suspension and debarment of American Asphalt South, Inc. (AAS).   On September 29, 2020, in response to your office's PRA Request 20-4155, the City produced 43 PDFs of contracts and related documents for several different contracts.

Responding to these requests takes time to collect, review and redact documents. The City has compiled with the California Government Code in regard to its response and production of documents under these PRA requests, and will continue to do so.

Presumably, AAS has its own copies of the contracts and emails at issue.  At the time the contracts were entered into, AAS received copies of the contracts.  AAS submitted its change orders and invoices to the City so AAS should have those records as well.  AAS sent or was copied on most if not all of the 600 pages of emails, and

2

therefore we expect AAS has its own copies of these emails.  If anything, it is the City that does not have AAS's records.  AAS likely has records that it will use to defend the City's allegations.  The City has to wait until the matter is filed with the Office of Administrative Hearings before it can request documents and information from AAS in a discovery process.  So yes, once the matter is filed with the OAH, both parties will necessarily engage in further discovery processes and the OAH has processes and rules in that regard.

In regard to your claim that the City has redacted too many employee names from the emails, California Government Code section 53087.6 prohibits the City from disclosing the name of individuals that are the subject of an investigation as well as any whistleblowers.  The City does not intend to violate this law by publicly disclosing those names in documents produced in response to public records requests.

Per 1 California Code of Regulation 1018, the OAH requires that when the City files its Accusation, that it provide dates that both parties are available for the debarment hearing, or note its meet and confer efforts to obtain dates from the opposing party.  Please provide dates that you would like us to list on the form that we will submit to the OAH.  Please also provide dates that you are not available in the next 6 months as this information is also requested by the OAH.  If we do not provide dates for the hearing, the OAH will select the date.

Please let me know if you will provide dates for the hearing.  Otherwise, I will submit our meet and confer efforts to the OAH when we file our Accusation.

Very truly yours,
Cassandra Mougin


****DUE TO THE COVID-19 EMERGENCY, I AM WORKING REMOTELY. PLEASE USE EMAIL FOR CONTACT.*****

Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(619) 533-5800 (main)
(619) 533-5850 (direct)
(619) 533-5856 (fax)

PLEASE NOTE: This email is for the sole use of the intended recipient(s) and may contain information protected by the ATTORNEY-CLIENT PRIVILEGE and/or by the ATTORNEY WORK PRODUCT DOCTRINE. The contents of this email may include confidential and/or inside information and may be legally privileged or protected and should not be communicated to or relied upon by any person without express consent of the sender. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited and may be unlawful. If you have received this email in error, please immediately notify the sender by reply email, delete the original communication, and destroy all copies.

**From:** Mougin, Cassandra <CMougin@sandiego.gov>
**Sent:** Wednesday, October 21, 2020 9:57 AM
**To:** Shawn M. Ogle
**Cc:** Brian M. Wheeler; Scott K. Dauscher; Rae, Christina
**Subject:** Re: City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

Dear Shawn,

We received your letter dated October 9, 2020 and are preparing a response.

Very truly yours,
Cassandra

****DUE TO COVID-19 EMERGENCY, I AM WORKING REMOTELY. PLEASE USE EMAIL FOR CONTACT.*****

Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(619) 533-5800 (main)
(619) 533-5850 (direct)
(619) 533-5856 (fax)

PLEASE NOTE: This email is for the sole use of the intended recipient(s) and may contain information protected by the ATTORNEY-CLIENT PRIVILEGE and/or by the ATTORNEY WORK PRODUCT DOCTRINE. The contents of this email may include confidential and/or inside information and may be legally privileged or protected and should not be communicated to or relied upon by any person without express consent of the sender. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited and may be unlawful. If you have received this email in error, please immediately notify the sender by reply email, delete the original communication, and destroy all copies.

**From:** Shawn M. Ogle <SOgle@aalrr.com>
**Sent:** Tuesday, October 20, 2020 4:48 PM
**To:** Mougin, Cassandra
**Cc:** Brian M. Wheeler; Scott K. Dauscher
**Subject:** [EXTERNAL] RE: City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

**This email came from an external source. Be cautious about clicking on any links in this email or opening attachments.**

Good afternoon Ms. Mougin,

I hope this email finds you well.  I left a voicemail with your office regarding the attached letter which was sent on October 9th.

4

Please let me know if you have some time for a call tomorrow.

Best,

**Shawn M. Ogle** | Partner
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100, Irvine, California 92618
Direct (949) 536-2225 • Main (949) 453-4260 • Fax (949) 453-4262
sogle@aalrr.com | website | subscribe

---

**From:** Mai N. Nguyen
**Sent:** Friday, October 09, 2020 3:23 PM
**To:** CMougin@sandiego.gov
**Cc:** Shawn M. Ogle; Brian M. Wheeler; Scott K. Dauscher
**Subject:** City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates [AALRR-Cerritos.008905.00027]

Dear Ms. Mougin:

Attached please find a letter of today's date.

Should you have any questions, please do not hesitate to contact our office.

Thank you.

**Mai N. Nguyen** | Legal Secretary
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100, Irvine, California 92618
Direct (949) 453-4299 • Main (949) 453-4260 • Fax (949) 453-4262
mai.nguyen@aalrr.com | website | subscribe



This electronic message transmission contains information from the Firm of Atkinson, Andelson, Loya, Ruud & Romo which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying or distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify us by telephone (949-453-4260) or by electronic mail immediately. Thank you.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

CERRITOS
(562) 653-3200

FRESNO
(559) 225-6700

MARIN
(628) 234-6200

PASADENA
(626) 583-8600

SOgle@aalrr.com
(949) 536-2225

A PROFESSIONAL LAW CORPORATION

ATTORNEYS AT LAW

20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
(949) 453-4260

FAX (949) 453-4262
WWW.AALRR.COM

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:
008905.00027
29770797.1

October 9, 2020

*VIA EMAIL AND FIRST CLASS MAIL*

Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(858)431-9631

CMougin@sandiego.gov

**Re:    City of San Diego v. American Asphalt South, Inc. – Debarment Hearing Dates**

Ms. Mougin:

This letter is in response to your email sent to my colleagues Scott Dauscher and Brian Wheeler on September 30, 2020.  We would like to coordinate our schedules for the debarment hearing as well.  However, our office has several pending Public Records Act requests.  In response to some of the PRA requests, the City has simply directed us to the City Auditor's Fraud Hotline website. This is not a proper response.  The overwhelming majority of the documents on the City Auditor's Fraud Hotline website have nothing to do with our PRA requests.  An invitation to have the requester sift through voluminous unresponsive City records to locate potentially responsive documents is not appropriate.  Accordingly, demand is hereby made that these records be made available in accordance with Government Code section 6253(b) by providing an exact copy of the responsive records.  Please provide us with an invoice for the direct costs of duplication or statutory fee.

In response to other PRA requests, the City has taken the position that the underlying documents pertaining to the hotline investigations are protected from disclosure under the California Public Records Act.  In support the City has cited Government Code § 53087.6(e)(2).  However, Section 53087.6(e)(2) only protects "the identity of the individual or individuals reporting the improper government activity, and the subject employee or employees."  Contrary to the City's response, the underlying documents pertaining to the hotline investigation are not protected from disclosure under the Public Records Act, particularly those within the possession, custody, or control of the City Attorney's Office as a result of the City's review and preparation of the Suspension Notice and initiation of this debarment proceeding.  Accordingly, the underlying

20

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Cassandra Mougin
Deputy City Attorney
October 9, 2020
Page 2

documents pertaining to the hotline investigation must be produced. Indeed, AAS is entitled to review and rebut the evidence that the City contends support the allegations against AAS along with any exculpatory evidence.

Additionally, the documents that the City has produced in response to our PRA requests thus far include voluminous redactions of names. The name redactions go well beyond "the identity of the individual or individuals reporting the improper government activity, and the subject employee or employees," and include a number of other persons employed by the City and even third parties. Such persons are witnesses who may have relevant exculpatory evidence within their knowledge and/or possession. Accordingly, the documents must be re-produced without redaction of any names other than "the identity of the individual or individuals reporting the improper government activity, and the subject employee or employees."

The City also recently informed our office that documents responsive to other PRA requests will be produced by November 27, 2020. The documents AAS has requested through its PRA requests—many of which we have been waiting several weeks or even months for—are critical for AAS to be able to prepare its defense for the debarment hearing. Thus, more than merely AAS's rights pursuant to the PRA, due process demands that the City provide these records to AAS it is to be afforded a fair and impartial hearing. After all, AAS's fundamental rights, including the right to bid on public works contracts in San Diego, are at stake. If the City is willing to produce *all* responsive documents on a rolling basis, with the final production to be completed by no later than November 27, 2020, including the documents identified in the preceding paragraphs without redaction, then AAS will be prepared and is available to proceed on the debarment hearing in or after the second week of January 2021. However, if the documents are not produced by November 27, 2020, without redactions, or PRA litigation must first proceed to adjudicate the proprietary of the responses, redactions, and objections identified above, such further and continued delay will prevent AAS from being able to prepare for and proceed with the hearing in January 2021 because its right to due process will be infringed.

We will also need to discuss whether the City will be making its witnesses and other City employees available for deposition sufficiently in advance of the debarment hearing.

Best regards,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Shawn M. Ogle

SMO:mnn

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL LAW CORPORATION

ATTORNEYS AT LAW

20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
(949) 453-4260

FAX (949) 453-4262
WWW.AALRR.COM

CERRITOS
(562) 653-3200

FRESNO
(559) 225-6700

MARIN
(628) 234-6200

PASADENA
(626) 583-8600

SOgle@aalrr.com
(949) 536-2225

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:
008905.00027
30155445.1

November 4, 2020

### *VIA EMAIL AND FIRST CLASS MAIL*

Cassandra Mougin
Deputy City Attorney
Office of the City Attorney - Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101
(858)431-9631

CMougin@sandiego.gov

**Re:    City of San Diego v. American Asphalt South, Inc. – Debarment Proceedings**

Cassandra:

This letter is a follow-up to my letter dated October 9, 2020, your email response dated October 21, 2020, and my email response dated October 26, 2020.

Your email from October 21st informed us that the City would be filing its Accusation with the Office of Administrative Hearings in order to initiate the debarment proceedings. At that point, the parties would then "necessarily engage in further discovery processes and the OAH has processes and rules in that regard." Your statement was in response to discovery issues raised in my October 9th letter, including deposition scheduling and the production of documents. I also understand from my colleague Brian Wheeler that he has previously raised these same discovery issues to which you have responded that the Hearing Officer would address these issues.

However, two weeks have elapsed since your October 21st email and we still have not received the Accusation. It is imperative that the Accusation be filed immediately in order to initiate the debarment proceedings, have a Hearing Officer assigned, and address the discovery issues that we have previously raised. Specifically, AAS has been suspended from bidding on City projects since the June 16, 2020 Debarment Notice. Thus, the suspension has been in place for almost five months without affording AAS due process, which is tantamount to de facto or constructive debarment in violation of the law. Not only does this result in irreparable harm to AAS, but it is also results in harm to the City because AAS has consistently been the lowest bidder on these

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Cassandra Mougin
Deputy City Attorney
November 4, 2020
Page 2

projects.  We demand that the City file the Accusation with OAH as soon as possible or, in the alternative, rescind the suspension of AAS so that it can bid on projects for the City.

Best regards,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Shawn M. Ogle

SMO:mnn

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

A PROFESSIONAL LAW CORPORATION

ATTORNEYS AT LAW

20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371
(949) 453-4260

FAX (949) 453-4262
WWW.AALRR.COM

CERRITOS
(562) 653-3200

FRESNO
(559) 225-6700

MARIN
(628) 234-6200

PASADENA
(626) 583-8600

SOgle@aalrr.com
(949) 536-2225

PLEASANTON
(925) 227-9200

RIVERSIDE
(951) 683-1122

SACRAMENTO
(916) 923-1200

SAN DIEGO
(858) 485-9526

OUR FILE NUMBER:

008905.00027
30365754.1

November 19, 2020

*VIA FIRST CLASS MAIL AND EMAIL*

Mara Elliott
San Diego City Attorney
Civic Center Plaza
1200 Third Avenue, #1620
San Diego, CA 92101

cityattorney@sandiego.gov

Re:     **American Asphalt South, Inc. – Suspension and Debarment Proceedings**

Dear Ms. Elliott:

As you may be aware, American Asphalt South, Inc. ("AAS") has been the City of San Diego's lowest responsible bidder on slurry seal projects going back more than two decades. Specifically, from the late 1990s through June 16, 2020, AAS had been the lowest responsible bidder on all but two of the City's slurry seal projects.  On October 29, 2020, Mayor Faulconer touted the success of the campaign to fix the streets of San Diego, including the repair of over 1,700 miles of streets since 2014 (https://www.sandiego.gov/mayor/news/releases/Cityof-San-Diego-Speeds-Past-Road-Repair-Milestone-Under-Mayor-Faulconer).   AAS laid these streets and saved the City millions of dollars in the process.

However, on June 16, 2020, the City's former Chief Operating Officer, Kris Michell, suspended AAS from bidding on the City's projects and claimed to initiate debarment proceedings based upon alleged "corruption."  The "evidence" cited in the June 16, 2020 letter were emails taken out of context with a former City employee, dubbed Employee A, from 2011 through 2016. Employee A left the City's Street Division in early 2016.  Notably, the allegations had nothing to do with the quality of work performed by AAS.  Moreover, both the FBI and local District Attorney spent many months investigating and found no wrongdoing on the part of AAS. Nonetheless, AAS was suspended by Ms. Michell years later.  AAS previously requested and attended an informal appeal meeting with Ms. Michell before her resignation; however, AAS did not have the benefit of documents produced by the City in response to AAS's Public Records Act Requests at that time, and Ms. Michell upheld the unfounded suspension.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Mara Elliott
San Diego City Attorney
November 19, 2020
Page 2

Additionally, it has now been more than five months since Ms. Michell's June 16, 2020 letter and AAS remains suspended.  Yet the City admitted in an email dated October 21, 2020, that it had not yet even filed the Accusation to initiate the debarment proceedings with the Office of Administrative Hearings.  AAS has provided the City with its available dates for the debarment hearing and has made repeated demands upon the City that it either rescind the debarment proceedings, including the suspension, or file the Accusation.  AAS's demands have been met with silence and the Accusation has still not been filed, meaning we are still months away from the debarment hearing.  This is tantamount to a *de facto* or constructive debarment without affording AAS due process in violation of the law.  Mednik v. State Dep't of Health Care Servs., 175 Cal. App. 4th 631, 641-42 (2009); Prime Health Servs., Inc. v. Harris, 216 F. Supp. 3d 1096, 1113 (S.D. Cal. 2016) ("*De facto* debarment occurs when a contractor has, for all practical purposes, been suspended or blacklisted from working with a government agency without due process, namely, adequate notice and a meaningful hearing.").

Based upon this significant delay by the City in violation of AAS's rights, AAS requests that the suspension be rescinded pending the debarment proceedings or that AAS have a further opportunity to appeal the suspension with the City's new Chief Operating Officer.  There are several upcoming City projects that have bid deadlines in December and January, including Slurry Seal Group 2023 (Invitation No. K-21-1975-DBB-3; estimated value $4,460,000.00), Slurry Seal Group 2025 (Invitation No. K-21-1976-DBB-3; estimated value $4,600,000.00), and Slurry Seal Group 2024 (Invitation No. K-21-1977-DBB-3; estimated value $4,620,000.00).  Given AAS's history with the City as the lowest bidder on its slurry seal projects, AAS is confident that if the suspension is lifted it will be the lowest bidder on these projects resulting in a cost savings to the City of at least $1,000,000.00, and likely more.  Again, the suspension and debarment proceedings have nothing to do with the ability of AAS to perform the work or the quality of workmanship of AAS.

The procedures governing suspension pending the hearing on debarment proceedings are set forth in Administrative Regulation 25.90.  Section 4.1.2 of Administrative Regulation 25.90 provides:

> "Any City department seeking to debar a bidder or contractor must first confer with the City Attorney's Office to determine the legal sufficiency and basis for the proposed debarment of a bidder or contractor before making its recommendation to initiate suspension or debarment."

As set forth above, we have been in contact with the City Attorney's Office for the past several months attempting to obtain the documentary "evidence" to support its allegations and schedule the debarment proceedings for hearing as soon as possible.  AAS is confident that should the City proceed with the debarment hearing, it will be vindicated.  As such, AAS is eager to initiate the debarment process and have its day in court so that it can once again provide outstanding

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Mara Elliott
San Diego City Attorney
November 19, 2020
Page 3

service to the City with whom it has had a mutually beneficial relationship going back more than 20 years.

We have also propounded several Public Records Act Requests to the City aimed at marshalling the alleged evidence supporting the claims in Ms. Michell's June 16, 2020 letter. In short, the documents produced by the City thus far in response to the PRA requests demonstrate that the alleged evidence does not support the suspension or the debarment proceedings against AAS. This explains why the City has not yet filed the Accusation, even though it had a duty to ensure that sufficient evidence supported the claims in the June 16, 2020 letter before it suspended AAS.

For example, the June 16, 2020 letter makes much of AAS's dispute with the City over whether Rubber Emulsion Aggregate Slurry (REAS) was a proprietary product that had been required for use in the invitations to bid without the prerequisite sole source certification. In 2011, AAS submitted documentary evidence to the City showing that the only manufacturer of REAS was refusing to quote AAS for the proprietary product, which meant that AAS (and several other similarly situated slurry contractors) would not be able to bid on the project unless an "or equals" clause was added. Employee A complied with his obligations under the law to add an "or equals" clause given that REAS was a proprietary product and the bid deadlines had to be extended. Moreover, the City admitted in 2012 that REAS was a proprietary product, thus, requiring the use of REAS without a sole source certification or the inclusion of an "or equals" clause was a violation of the law by the City. Exh. A (produced by the City with redactions). AAS's advocating for its rights that the City comply with the law in issuing bids is not evidence of "corruption" and certainly does not support suspension or debarment.

In fact, in May of 2011, another bidder, Valley Slurry Seal Company, issued a protest to FY '10 Slurry Seal Group V Project (the same project) because one of the bid items was a sole source product, PASS CR. The City agreed that the item was a proprietary product, added an "or equals" clause, and extended the bid deadlines. Exh. B (produced by the City with redactions). This is precisely what occurred with the proprietary REAS product. There is absolutely nothing "corrupt" about AAS's dispute over the City's required use of the proprietary REAS product without the issuance of a sole source certification. Indeed, the City cannot require the use of a proprietary product without the issuance of a sole source certification.

Furthermore, the City selectively used quotes out of context from AAS's response once it learns that Valley Slurry's bid protest had been successful and that the bid dates would have to be pushed back. In response, AAS inquired whether the required use of the proprietary PASS CR could simply be deleted rather than pushing back the bid deadline. In response, Employee A states "Nope. It's set in stone...politics bro." AAS responds "10-4", acknowledging and accepting the explanation from Employee A. Contrary to the City's out of context quote in the June 16, 2020 letter, this email exchange does not support any allegation of "corruption." Exh. B.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Mara Elliott
San Diego City Attorney
November 19, 2020
Page 4

These examples directly rebut the initial evidence that the City sets forth in its June 16, 2020 letter as alleged support for the suspension and initiation of debarment proceedings. However, this evidence does not withstand even a minimal level of scrutiny. The remaining allegations in Ms. Michell's June 16, 2020 letter similarly do not withstand scrutiny, which AAS will show if ever given the opportunity.

Given the City's failure and refusal to initiate the debarment proceedings by filing the Accusation, resulting in a *de facto* debarment without due process in violation of the law, AAS requests that the suspension be rescinded pending the debarment proceedings. AAS further requests an opportunity to further appeal the suspension with City's new Chief Operating Officer.

Best regards,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

Shawn M. Ogle

SMO:mnn
Enclosures

cc:    Cassandra Mougin: CMougin@sandiego.gov
       Christina Rae: CRae@sandiego.gov

# EXHIBIT "A"

## Abarca, Claudia

| | |
|---|---|
| **From:** | Adams, Lisa |
| **Sent:** | Friday, March 9, 2012 9:56 AM |
| **To:** | ███████████ |
| **Subject:** | FW: Rubberized Emulsion Aggregate Slurry |

---

**From:** Adams, Lisa
**Sent:** Thursday, March 08, 2012 3:12 PM
**To:** Zoumaras, Dave
**Cc:** Nagelvoort, James; Gibson, Marnell; Maali, Mohsen; Dayton, Myrna; Greenhalgh, Darren; Navarro, Jose
**Subject:** RE: Rubberized Emulsion Aggregate Slurry

Dave,
    From what I understand only one company makes it and sells it and it is Petrochem Manufacturing, Inc in Carlsbad.   REAS is a proprietary product.  The City of Los Angeles has stopped using REAS because over the years the product is not what is used to be.   The company that provides the product will not warranty it and the contractors using it have to warranty it at their cost.   REAS is sensitive to the weather and temperature and cost more than the RPMS.   The RPMS product that has been placed with the recent and is being placed with the current Surry projects looks really good and can be placed anytime of the year.   From the conversations I have had with Street Division they prefer the RPMS.

Lisa

---

**From:** Zoumaras, Dave
**Sent:** Wednesday, March 07, 2012 8:14 AM
**To:** Navarro, Jose; Adams, Lisa
**Cc:** Nagelvoort, James; Gibson, Marnell; Maali, Mohsen; Dayton, Myrna; Greenhalgh, Darren
**Subject:** RE: Rubberized Emulsion Aggregate Slurry

Jose/Lisa...please share any knowledge you have of this issue with everyone copied.

Thanks...Zoom.

---

**From:** Nagelvoort, James
**Sent:** Wednesday, March 07, 2012 8:01 AM
**To:** Gibson, Marnell; Maali, Mohsen; Dayton, Myrna; Greenhalgh, Darren
**Cc:** Zoumaras, Dave
**Subject:** FW: Rubberized Emulsion Aggregate Slurry

Marnell, Darren, Mohsen, and Myrna

Please see the email below and the attachments concerning Rubberized Emulsion Aggregate Slurry.  I need your assistance is responding.  What is our current slurry seal policy concerning allowable materials?  What have we been allowing on our projects and do we know what Street Division has been using?

Thanks, James

1

29

PRA000192

**From:** Lyle Stone [mailto:LyleS@americanasphaltsouth.com]
**Sent:** Tuesday, March 06, 2012 1:37 PM
**To:** Nagelvoort, James
**Subject:** Rubberized Emulsion Aggregate Slurry

Mr. Nagelvoort,

I am sending you this letter regarding the use of REAS on all of the Water and Sewer Projects that are currently bidding for the City of San Diego.

Sincerely,

Lyle Stone

PRA000193

EXHIBIT "B"

**Abarca, Claudia**

| | |
|---|---|
| **From:** | Tim Griffin <tgriffin@americanasphaltsouth.com> |
| **Sent:** | Monday, May 9, 2011 2:50 PM |
| **To:** | █████████ |
| **Subject:** | Re: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT |

10-4

Sent from my iPhone

On May 9, 2011, at 2:35 PM, ████████████████ @sandiego.gov> wrote:

> Nope.  It's set in stone...politics bro.
>
>
> ████████████
>
> █████████
>
> Transportation & StormWater Dept.
>
> Street Division
>
> Street Div. Service Request

**From:** Tim Griffin [mailto:tgriffin@americanasphaltsouth.com]
**Sent:** Monday, May 09, 2011 2:33 PM
**To:** ████████
**Subject:** Re: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT


You can't just delete the item

Sent from my iPhone

On May 9, 2011, at 2:28 PM, ████████████████ @sandiego.gov> wrote:

> It's been pushed back to 5/20 at 2:00pm.  Thank you Valley.  All I'm doing is issuing an
> 'or approved equal' clause for the PASS scurb seal.
>
>
> 

1

32

**From:** Giordano, Clementina
**Sent:** Monday, May 09, 2011 2:25 PM
**To:** Batta, Nabil; ███████████; Samaniego, Laura
**Cc:** Shamoun, Ikhlass; Riego, Rosa
**Subject:** RE: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

The new Bid Opening date is 5/20 at 2PM. Thanks.

*Clementina Giordano, BA, MPA*
*Contract Specialist*
*Purchasing & Contracting*
*1200 Third Ave., Suite 200,*
*MS 56P*
*(619) 235-5227*
*(619) 235-5204 (FAX)*

**From:** Batta, Nabil
**Sent:** Monday, May 09, 2011 2:22 PM
**To:** ███████████; Giordano, Clementina; Samaniego, Laura
**Cc:** Shamoun, Ikhlass; Riego, Rosa
**Subject:** RE: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

Laura,

Could you please work with ████████ group on this addendum for Spec # 5268?

Thx.

Nabil

**From:** ███████████
**Sent:** Monday, May 09, 2011 2:20 PM
**To:** Giordano, Clementina; Batta, Nabil
**Cc:** Shamoun, Ikhlass
**Subject:** RE: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

Ok. Let's extend it and just place the 'or approved equal' clause.  I want the least amount of extension possible.

PRA000096

Thanks.

██████████████

████████████

Transportation & StormWater Dept.

Street Division

Street Div. Service Request

**From:** Giordano, Clementina
**Sent:** Monday, May 09, 2011 1:46 PM
**To:** Batta, Nabil; ████████████
**Cc:** Shamoun, Ikhlass
**Subject:** RE: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

████████

I also agree with Nabil that an addendum needs to be issued and the Bid Opening needs to be extended.

*Clementina*

**From:** Batta, Nabil
**Sent:** Monday, May 09, 2011 1:44 PM
**To:** ████████████; Giordano, Clementina
**Cc:** Shamoun, Ikhlass
**Subject:** RE: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

████████

Yes, we should have added **or approved equal** to the material requirement on page 141 of this contract since we mentioned a brand name. It seems the product specifications apply for various products and no problem with that.  Unless you want solely this

PRA000097

material to provided, we need to issue an addendum to extend the bid opening and add **or approved equal** to the required material**.**

Nabil .

**From:** ▮▮▮▮▮▮▮
**Sent:** Monday, May 09, 2011 1:23 PM
**To:** Giordano, Clementina; Batta, Nabil
**Cc:** Shamoun, Ikhlass
**Subject:** FW: Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

Clementina/Nabil,

I just received this 'protest' about 2 hours ago.  I need your advice on what the best way to proceed is.  If we do have to issue an addendum, then let me know.  The bid opening is tomorrow at 2:00pm.  I don't know why this contractor waited until the last minute, but oh well.

▮▮▮▮▮▮▮▮

▮▮▮▮▮

Transportation & StormWater Dept.

Street Division

Street Div. Service Request

**From:** Ron Bolles [mailto:ron.bolles@slurry.com]
**Sent:** Monday, May 09, 2011 11:48 AM
**To:** Shamoun, Ikhlass
**Cc:** ▮▮▮▮▮▮ Alan Berger; Tim Schmid
**Subject:** Scrub Seal - FY '10 SLURRY SEAL GROUP V PROJECT

The Scrub Seal item in the above referenced project appears to specified as a sole source product. PASS CR ®. The specification also speaks to PASS patent #5180428, patent #7357594, other patents pending. The specification also appears to require a sole source latex component "The polymer shall be PA-AS-1 a product of Polymer Science of America."

As a taxpayer, I am offended by the one-page advertisement for Western Emulsions on page 136.

If that weren't enough, within the specification for PASS CR®, The City has included a specification for "Specific Gravity of residue of recovered latex min. WE-EM – 100-2" a self-serving proprietary testing procedure developed by Western Emulsions in attempt to exclude all other products.

The WE-EM-100-2 test does has had no un-biased scientific review, makes assumptions that are not necessarily correct, and there are concerns about the reproducibility of results. We find it hard to believe that the city would even consider using this kind of test.

This letter is also to advise that the current specifications are not compliant with Public Contract Code section 3400 (b) which states:

(b) No agency of the state, nor any political subdivision, municipal corporation, or district, nor any public officer or person charged with the letting of contracts for the construction, alteration, or repair of public works, shall draft or cause to be drafted specifications for bids, in connection with the construction, alteration, or repair of public works, (1) in a manner that limits the bidding, directly or indirectly, to any one specific concern, or (2) *calling for a designated material, product, thing, or service by specific brand or trade name unless the specification is followed by the words "or equal"*

In their present state, the City Project's bid specifications are unlawful, as they call for sole sourcing of the Polymer Modified Asphalt Surface Sealer. Namely, the specifications have effectively precluded all available "or equal products, with a clear favoritism toward PASS. Bid specification, in any form, that preclude the use of all "or equal" products are contrary to the Public Contract Cod section 3400 requirements.

It is well established that in California, Public Works contracts must be publicly bid in order to maximize resources land limit the cost to taxpayers. Section 3400(a) states a clear purpose:

> The legislature finds and declares that it is the intent of this section to encourage contractors and manufacturers to develop and implement new and ingenious materials, products, and services that **function** as well, in all essential respects, **as materials, products, and services that are required by contract, but at a lower cost to the taxpayers**

Inherent in this scheme is that public entities may not require in their invitation for bids, as the sole source, a specific product or brand name without a proper exemption. The goal is to encourage competition equal products. Fundamentally, section 3400 prohibits "sole sourcing" of one product in any public works project.

5

PRA000099

Specifically, this Code section requires that any

> Agency of the state … political subdivision, municipal corporation, or district … public officer, or person charged with letting of contracts for the construction, alteration, or repair of public works, shall draft or cause to be drafted specification for bids , in connection with the construction, alteration, or repair of public works, **(1) in a manner that limits the bidding, directly or indirectly, to any one specific concern,** or (2) calling for a designated material, product, thing, or service by specific brand or trade name unless the specification is followed by the words **'or equal'** so that bidders may furnish any equal material, product, thing, or service.  In applying this section, **the specifying agency shall, if aware of an equal product manufactured in this state, name that product in the specifications…**

The objective behind section 3400 is "to widen the area of competition, and to bar procurement officials from choosing a particular source either out of favoritism or honest preference." *Jack Stove Co. v. United States* (1965) 344 F.2d 370, 373-374. This aim is consistent with the reasons behind competitive public bidding generally, which is "to guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent waste of public funds; and to obtain the best economic result for the public." *Graydon v Pasadena Redevelopment Agency* (1980) 104 Cal.App3d 631, 636.

However, sole sourcing can still be present even when a public entity contemplates more than one potential source of materials in its specification. In the case of *Argo Construction Co. v. County of Los Angeles* (1969), Los Angeles County issued specification which contemplated two different types of wall partitions that would be allowable in the completion of a construction project. 271 Cal.App.2d 54, 56. On of the brands was to be held as the standard for construction and quality with respect to the particular project. The contractor for the Project sought relief when the county foreclosed it ability to utilize a third brand of partitions, which varied as to aesthetics but was able to perform the same function as the partitions listed in the specification. The contractor ultimately sued the county for the difference in cost between its proposed partitions and those he was forced to install to comply with the specifications. The court awarded damages to the contractor, based upon the principle that if aesthetics were permitted to rule the choice, the code section preventing "sole sourcing: would be dead letter.

The City's intent is further evidenced by the new non-standard testing criteria in the specification referred to "specific gravity of residue of recovered latex" or referred to by Western Emulsion as WE-EM-100-2

The City is seeking to limit the universe of Polymer Modified Asphalt Surface Sealer without any true regard to the threshold inquiry – functionality.

PRA000100

The City has no justification for their conduct other than its apparent preference for Western Emulsions' product. Whether this is an honest preference or motivated by some other reason, the City has no subjective authority in this field. "Functionality" is the key word under section 3400, and the competition among equal functioning materials is good for the taxpayers. This de facto sole sourcing violates section 3400.

Valley Slurry Seal requests that the city take the following actions:

1.  Republish or amend the current specification to comply with Public Contract Code Section 3400.

2.  Refer to the product as "Polymer Modified Rejuvenating Emulsion" (The standard industry-accepted, non-proprietary name for this type of product. Remove the references to Western Emulsions and its patents.

3.  Remove references to PA-AS- 1 a product of Polymer Science of America."

4.  Delete the reference to "specific gravity of residue of recovered latex" and the  non-standard WE-EM-100-2 proffered by Western Emulsions.

Valley Slurry Seal is asking for nothing more than for the City to go forward with a specification that complies with the Public Contract Code section 3400 and to allow for a level playing field that will not preclude our StyraFlex CS or any other legal and functional "or equal" to the PASS product.

I have also attached  Caltrans specification for a Scrub Seal project currently bidding in District 2.  Caltrans does an excellent job in providing a non-proprietary specification. I would suggest that the City adopt this specification.

Regards,

Ron Bolles
Vice President – Business Development
Valley Slurry Seal Company
P.O. Box 981330, West Sacramento, CA 95798
Ph:    (916) 373-1500
FAX:  (916) 373-0183

PRA000101

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
20 PACIFICA, SUITE 1100
IRVINE, CALIFORNIA 92618-3371

NEOPOST
US POSTAGE $000.80⁰
FIRST-CLASS MAIL
OAKLAND CA 946
SUN 24 JAN 2021  PM
ZIP 92618
041L10255087

RECEIVED
MEYERS NAVE
JAN 27 2021

Ian L. Johnson
Meyers | Nave
1999 Harrison Street, 9th Floor
Oakland, California 94612

# Exhibit C

1  Jennifer L. Riggs (SBN 204417)
   jriggs@meyersnave.com
2  Ian Johnson (SBN 208713)
   ijohnson@meyersnave.com
3  MEYERS NAVE
   600 B Street, Suite 1650
4  San Diego, CA  92101
5  Telephone: 619-330-1700

6  Attorneys for Complainant                    EXEMPT FROM FILING FEES
   CITY OF SAN DIEGO                            GOV'T CODE § 6103
7

8

9              OFFICE OF ADMINISTRATIVE HEARINGS

10         STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

11  City of San Diego,                    OAH Case No. _____

12              Complainant,              **ACCUSATION IN ACTION FOR**
                                          **DEBARMENT(San Diego Municipal Code**
13         v.                             **§ 22.0807)**

14  American Asphalt South, Inc., a California
15  Corporation,

16              Respondent.
17

18

19

20

21

22

23

24

25

26

27

28

                                    1
              CITY OF SAN DIEGO'S ACCUSATION IN ACTION FOR DEBARMENT

# I.   INTRODUCTION

1.      Complainant City of San Diego ("City") brings this Accusation pursuant to the San Diego Municipal Code ("Code") for an order permanently debarring Respondent American Asphalt South, Inc. ("AAS") from bidding on, being awarded or performing any contract with the City either as a general contractor or a subcontractor.  The City seeks the remedy of permanent debarment rather than only temporary debarment because AAS engaged in a pattern of conduct over the course of many years whose sole aim was to deceive the City and to defraud City taxpayers.  AAS' unlawful and deceitful acts – perpetrated by, among others, AAS' Chief Executive Officer and another Corporate Officer – include:

- influencing and currying favor with a City employee ("Employee A") by giving "gifts" to Employee A (tickets, a trip, etc.) in violation of San Diego Municipal Code § 27.3520(f);

- repeatedly conspiring with Employee A to artificially inflate prices on option contracts;

- conspiring with Employee A so that AAS would receive double payment for defective work;

- conspiring with Employee A so that AAS would receive payment for work not performed;

- conspiring with Employee A to manipulate bidding requirements and violate bidding laws; and

- conspiring with Employee A to unlawfully remove approved subcontractors on projects, which would have allowed AAS to increase profit margins through "self-performed" work.

2.      These facts, which the City will establish at hearing, warrant the immediate and permanent debbarment of AAS under three separate provisions of the Code[1]:

///

---

[1] The Code provisions related to debarment (Article 2: Administrative Code; Division 8: Debarment; §§ 22.0801-22.0819) are attached hereto as Exhibit A.

2

1             •     <u>Section 22.0807(a)(4)</u> – Providing for permanent debarment where a

2                  contractor "has engaged in any corrupt practice in bidding, award,

3                  administration or performance of a contract";

4             •     <u>Section 22.0807(a)(3)</u> – Providing for permanent debarment where a

5                  contractor has engaged in collusive bidding practices; and

6             •     <u>Section 22.0807(a)(7)</u> – Providing for permanent debarment where a

7                  contractor "has committed an act or omission so serious or compelling in

8                  nature that it affects the present responsibility of the . . . contractor to be

9                  awarded a contract or to participate as a subcontractor."

## II.    THE PARTIES

3.      The City is a local government agency and subdivision of the State of California.

4.      AAS is a California Corporation having its address, on information and belief, at 14436 Santa Ana Avenue, Fontana, CA 92337.

## III.    SPECIFIC ALLEGATIONS

### A.    The City's Slurry-Seal Contracts

5.      Slurry seal is an emulsion applied to asphalt street surfaces to preserve and extend the life of the asphalt. The City regularly enters into public works contracts for the application of slurry seal to its streets.

6.      Each of the City's slurry-seal contracts is, by law, competitively bid, with the contract going to the lowest responsible bidder. A contractor who has won a slurry-seal contract must thus complete the contract at the bid price, subject only to legitimate change and field orders. In addition, any contractor bidding on a slurry-seal contract must submit an affidavit pursuant to Cal. Pub. Cont. Code § 7106 and 23 U.S.C. § 112 that its bid is genuine and has not been submitted or manipulated through collusion with another.

7.      The City's slurry-seal contracts contain per-unit and lump-sum elements. For example, the application of the slurry seal itself is a per-unit item, *e.g.*, $0.16 per square foot. Lump-sum items include bonds, mobilization costs and the cost for traffic control. These per-unit and lump elements are not subject to adjustment.

8.      The value of the City's slurry-seal contracts generally ranges from $2 to $4 million. The contracts also normally contain an "option" clause, which affords the City a one-time right to extend the contract at the original contract price.  For example, if a $2 million contract called for the application of slurry seal to certain City streets at a price of $0.16 per square foot, the option allows the City to demand the application of slurry seal on additional City streets at a price of $0.16 cents per square foot, but only up to an additional option contract value of $2 million.  The City has sole discretion whether to exercise its right under an option clause.  That is, the City can either trigger the clause to get additional work done at the original contract price or can send the additional work out to public bid if that promises to result in a lower price.

9.      The option clauses also contain important protections for the contractor.  First, and as suggested, the value of the option contract generally cannot exceed the value of the original contract (*i.e.*, $2 million in the example above).  Second, the City can only trigger the clause within a certain period, thus limiting the time in which the contractor has to hold to its original price.

10.     The City's slurry-seal contracts incorporate by express reference the City's "Whitebook Standard Specification for Public Works Construction."  Section 3-4 of the Whitebook provides, among other things, that the City's Resident Engineer ("RE") on a project is to be a contractor's "single point of contact" with respect to the project and that the RE must be included in all project-related communications.  This provision, when followed, ensures that the City has proper oversight over a project and that a contractor cannot prevail on others at the City in a bid to secure illegitimate price adjustments, change orders, field orders, etc.

**B.      <u>Employee A</u>**

11.     Prior to sending a slurry-seal contract out for bid, the City prepares specifications for the project stamped by a City engineer.  Employee A, no longer employed by the City, was the engineer who stamped the specifications for certain of the AAS slurry-seal contracts at issue here. Employee A also had considerable authority over the AAS contracts, including the authority to approve change orders up to $250,000, to authorize field orders up to $150,000, and, of particular

1  importance here, to decide whether to exercise the option in an AAS contract for additional work
2  or instead to send that additional work out to public bid.

3      12.    Employee A was <u>not</u>, however, the RE on any of the AAS contracts at issue.  Thus,
4  pursuant to Section 3-4 of the Whitebook, AAS was not to communicate privately with Employee
5  A regarding any of its contracts with or work for the City.

6      C.    **AAS Actions Mandating Debarment**

7      13.    AAS entered into numerous slurry-seal contracts with the City over the course of
8  more than ten years.  Throughout that time, AAS plied Employee A with unlawful gifts in a
9  successful bid to secure Employee's A's cooperation in bilking City taxpayers.

10          1.    **Unlawful Gifts to Employee A**

11     14.    Employee A was prohibited by the Code and associated provisions in the California
12  Code of Regulations from receiving gifts in a given year exceeding a certain combined value.
13  (*See* Code §§ 27.3501-3595; Cal. Code. R. §§ 1811-18997).  The maximum allowable per-year
14  value for gifts has increased slightly over time, with the cap set at $420 for 2011 and 2012, and
15  increasing to $500 for 2019 and 2020.  AAS sought to buy favor from and influence Employee A
16  – and did so successfully – by flouting these rules.  AAS' gifts to Employee A included:

17  • <u>April 13, 2012</u> – Tim Griffin, AAS's Operations Manager, sent an email to
18     Employee A's private Gmail account with an invitation to a golf tournament on
19     May 11, 2012 at Eagle Crest golf course in Escondido.  Employee A responded
20     "Thanks, Sign me up."  Shortly before the tournament, Employee A sent an
21     email to Lyle Stone, an AAS Corporate Officer, stating, "You're damn lucky
22     you've got Tim on your side. **I was going to put that Valley Slurry job back**
23     **out to bid and Tim convinced me to option it to you guys**.  He's a tough
24     negotiator." (emphasis added).

25  • <u>May 11, 2012</u> – AAS paid for Employee A to attend the 2012 Maintenance
26     Superintendents Association Golf Tournament in San Diego.  AAS purchased
27     the Platinum Package which included an entry fee of $450 for four golfers, or
28     $112.50 per golfer.

5
CITY OF SAN DIEGO'S ACCUSATION IN ACTION FOR DEBARMENT
45

- <u>March 28, 2013</u> – Mr. Griffin of AAS sent an email to Employee A's personal Gmail account with an invitation to attend the 2013 Maintenance Superintendents Association Golf Tournament. City Employee A responded "It's already on my calendar. Thanks Tim!"

- <u>May 28, 2013</u> – Employee A sent an email on his personal Gmail account to Mr. Stone to explain he had won a TV in an AAS-sponsored raffle. He wrote, "No joke. Keep it quiet," and stated, "I was joking with Tim after the raffle that you guys should have just signed the TV over to me instead of giving those people false hope."

- <u>March 26, 2014</u> – Mr. Griffin sent an email to Employee A's personal Gmail account inviting him to the 2014 Maintenance Superintendents Association Golf Tournament. City Employee A responded "I already reserved the date. Thanks!!"

- <u>On or about December 20, 2014</u> – AAS paid more than $500 for Employee A to attend a football game in Oakland, California, which included flight, hotel accommodations and tickets to the game. This gift, in itself, exceeded permissible thresholds and thus violated the law.

- <u>July 8, 2015</u> – Mr. Griffin emailed Employee A's personal Gmail account with an invitation to attend the 2015 Maintenance Superintendents Association Golf Tournament. City Employee A responded "I am all in!" Shortly after the tournament, on November 11, 2015, Employee A emailed Allan Henderson, the President and CEO of AAS, via his personal Gmail account, stating "Tim [Griffin] is a shrewd negotiator. **He <u>made me</u> option about $6M in contracts to your company about 2 weeks ago. I wanted to go out to bid to get better pricing but <u>he told me no</u>.**" (emphasis added).

- <u>April 7, 2016</u> – Mr. Griffin sent an email to Employee A's personal Gmail account with an invitation to attend the 2016 Maintenance Superintendents Association Golf Tournament. City Employee A responded "I'll be there!"

6

CITY OF SAN DIEGO'S ACCUSATION IN ACTION FOR DEBARMENT

2. **AAS Conspires with Employee A to Defraud San Diego Taxpayers**

15.    AAS' various gifts to Employee A had their intended effect.  Over the course of several years, AAS and Employee A regularly conspired in a series of acts intended to benefit AAS at the taxpayer's expense, which ranged from artificially (and unlawfully) increasing option contract prices, to securing payment for defective work, to manipulating bids and flouting bidding statutes.  Moreover, and as the foregoing suggests, they often did so through secretive correspondence using Employee A's private Gmail account, which not only violates the above-described contract specifications requiring the RE's participation in all communications (Whitebook § 3-4) but also serves as compelling evidence of an intent to deceive.

(a)    **Unlawful Increase in Contract Option Prices**

16.    As noted, the option clause in the City's slurry-seal contracts ensures that the City has the right to secure additional work at the original contract price.  However, AAS routinely colluded with Employee A to unlawfully increase prices under option contracts to above the original contract price.  AAS did this in essentially two ways: (1) increasing the per-square-foot price in the option contract, and (2) increasing the price in the option contract for traffic control.

17.    Per-Square-Foot Increases – A very small increase in the per-square-foot price on a slurry-seal contract – *e.g.*, an increase of only two or three cents – can have a huge impact on overall cost given that the contracts involve many millions of square feet.  The per-square-foot increases in option contracts on which AAS and Employee conspired include:

- March 7, 2013 – Employee A sent an email using his personal Gmail account to Mr. Stone of AAS, with the re line "Option Contracts."  Employee A stated in the email, "[Y]ou may have noticed I significantly bumped up a few lump sum bid items to your benefit and I changed one contract you bid at $0.14/SF to $0.17/ SF."  Mr. Stone responded, "**I did notice that the unit price and the TC [*i.e.*, traffic control] was bumped up.  I greatly appreciate that!**" (emphasis added).

- May 21, 2013 – The original contract, which AAS won on January 31, 2012, stated a price of $0.16 per square foot.  Employee A triggered the contract

7

1    option on May 21, 2013, again "bumping up" the price to $0.19 per square foot.

2    This, on information and belief, resulted in an additional payment to AAS of

3    approximately $157,000, to which AAS was not lawfully entitled.

4    • July 2014 – The original contract, awarded to AAS on February 27, 2013,

5    stated a price of $0.16 per square foot. Prior to the option being triggered,

6    Mr. Griffin of AAS emailed Employee A, again using the personal Gmail

7    account, outlining a proposal for the option contract that increased the price to

8    $0.22 per square foot. Employee A agreed to "bump up" certain items

9    proposed by AAS – *e.g.*, doubling the price for traffic control from $40,000 to

10    $80,000 – and stated that AAS could obtain additional "bump ups" in change

11    orders: "[You'll] make it up in about $3 or $400k in change orders for

12    mill/paves **AND check out the bonus I'm giving you guys in bid items 12,**

13    **13, & 15! PARTY! Make sure you guys get yourself a little something**

14    **special**." (emphasis added).

15    • October 2015 – The original contract, awarded on June 11, 2015, stated a price

16    of $0.30 per square foot. AAS and Employee A conspired to increase the price

17    to $.32 per square foot for the option contract, which resulted in an additional

18    unlawful payment to AAS of more than $87,000.

19    18.    Traffic Control – The cost for traffic control in an option contract must be

20 commensurate to the cost in the original contract. Generally speaking, this would mean that the

21 cost for traffic control in the option contract would go down if the option contract has a smaller

22 scope than the original contract, *i.e.*, fewer square feet of street. However, in several instances,

23 AAS and Employee A colluded to increase the price of traffic control even where the option

24 contract had a smaller scope:

25    • May 23, 2013 – The original contract involved 7.4 million square feet and

26    traffic control costs of $116,085. The option contract priced traffic control at

27    $130,000 even though it involved only 6.9 million square feet.

28

8

CITY OF SAN DIEGO'S ACCUSATION IN ACTION FOR DEBARMENT

1      •   <u>May 21, 2013</u> -- The original contract involved approximately 7.1 million

2        square feet and a traffic control cost of $129,000.  The option contract involved

3        only circa 5.2 million square feet – some 1.8 million fewer square feet – and yet

4        fixed traffic control costs at $135,000.

5      •   <u>October 5, 2015</u> – The original contract was for approximately 7.5 million

6        square feet and set the price for traffic control at $148,615.  The option contract

7        increased the price of traffic control to $168,000 despite the fact it involved

8        only approximately 6.3 million feet.

9               **3.**      **Double Payment for Defective Work**

10      19.      AAS served as the slurry-seal subcontractor on a 2012-2013 project along Aldine

11 Drive in San Diego.  City field engineers later determined that AAS's work on the project was

12 defective and demanded remedial repairs.  However, Employee A agreed to accept the work and

13 then added the remediation work to a separate AAS contract.  AAS was thus paid for defective

14 work and then paid to cure its own defect.

15               **4.**      **Payment for Work Not Performed**

16      20.      On more than one occasion, AAS received payment for work it did not perform.  In

17 March 2015, for example, AAS billed the City for 300,000 linear feet of "crack seal," even though

18 it had in fact applied only 182,000 linear feet.  When City personnel balked at paying the invoice,

19 Employee A – all the while conspiring with AAS via his private Gmail account – pressured City

20 personnel to pay $111,000 on the invoice, although AAS was entitled to only approximately

21 $67,000.  In addition, Employee A approved a $111,000 change order under that same contract for

22 an additional 300,000 linear feet of crack seal.  AAS, on information and belief, did not apply

23 600,000 linear feet of crack seal under the contract and change order.

24      21.      On another occasion in September of 2013, a member of City staff rejected an AAS

25 invoice seeking full payment (100%) for street striping that had not been completed.  Employee A

26 then directed the staff member by email to have AAS resubmit the invoice to seek payment for

27 95% completion.  Employee A later forwarded that email to Mr. Griffin of AAS, stating

28

1    "Obviously, don't tell them we talked."  Mr. Griffin responded, "That's for sure.  I'll let you know

2    as soon I [*sic*] get something."

3            **5.**     <u>**Manipulation of Bidding Requirements/Violation of Bidding Laws**</u>

4         22.     AAS' collusion with Employee A extended to the manipulation of bids and the

5    violation of public-bidding statutes.  For example, and as discussed above in connection with

6    AAS' "gifts" to Employee A, AAS and Employee A conspired on at least two occasions to have

7    additional work performed under an option clause rather than sending the work out for public bid

8    so to as obtain the lowest competitive price.  As Employee A stated in an email of November 11,

9    2015 to AAS' CEO – sent shortly after yet another golf outing with AAS – "Tim [Griffin of AAS]

10   is a shrewd negotiator.  He made me option about $6M in contracts to your company about 2

11   weeks ago. **I wanted to go out to bid to get better pricing but he told me no**."  (emphasis

12   added).

13         23.     AAS collusion with Employee A also extended to altering project requirements so

14   that AAS could qualify to bid.  In 2010, for example, Employee A prepared specifications for a

15   contract in which he specified the use of a particular PASS scrub seal product.  Prior to bid

16   opening, Mr. Stone of AAS emailed Employee A to state that AAS could not obtain that product,

17   the implication being that AAS could thus not qualify to bid.  Employee A responded that he

18   would change the specifications to allow AAS to use its own proprietary "in house" product and

19   stated that he was willing to delay all of his projects by a month to change specifications to permit

20   use of AAS' own product.  Employee A then sent an internal email to City staff instructing them

21   to delay bid openings.  He later forwarded that internal email to Mr. Griffin, who responded,

22   "You're the MAN!!!!!!!!!!!!!!!!!"  Employee A replied, "[The manufacturer] doesn't have me in

23   their pocket AND I don't take kindly to them playing dirty.  It's a good thing AAS has you

24   working for them and we both like guns."

25         24.     AAS and Employee A also conspired to ignore public bidding rules altogether.  On

26   one occasion in February 2012, for example, Employee A offered AAS work that involved laying

27   pavement for a library parking lot.  However, and as AAS well knew, this work was not within the

28   scope of any AAS contract and should have been put out to bid in accordance with the applicable

1   public contracting laws so as to secure the best competitive price.  In addition, Employee A

2   forwarded to AAS an internal email exchange among City staff, which gave AAS insider

3   knowledge on what City staff expected, the urgency of work, and willingness to execute a contract

4   that AAS could leverage to obtain favorable terms.

5           **6.      Attempt to Remove Subcontractors**

6           25.     Section 4107 of the Public Contract Code prohibits general contractors from

7   removing subcontractors from a publicly-bid and awarded contract, save in very limited

8   circumstances not applicable here.  On at least two occasions, AAS took steps to violate that

9   statute so that it could self-perform subcontractor work and thus unlawfully increase its profit

10  margins.

11          26.     In January 2014, for example, Mr. Griffin of AAS emailed Employee A regarding

12  an option contract and stated his intent to "get rid" of one of its subcontractors, Frank & Sons, so

13  that AAS could self-perform the work.  Mr. Griffin later sent a very similar email to Employee A

14  on another project, discussing AAS' removal of subcontractor Safe USA to allow for self-

15  performance of the work.  These are yet additional examples of AAS' steadfast willingness to

16  flout public contracting rules to obtain a financial advantage.

17          **7.      Miscellaneous Wrongful Acts by AAS**

18          27.     Certain of AAS's acts, while clearly improper and worthy of debarment, do not fall

19  neatly into any particular category.  On June 14, 2012, for example, Tyler Skender of AAS sent an

20  email to Employee A's personal Gmail account with the re line "June Billings for FY 11 Groups 6

21  7 8."  Mr. Skender stated in the email, "When we spoke a couple of weeks ago, **you told me to**

22  **send the June billings to you before sending them to the City** for your review.  I have attached

23  the 3 estimated Billings that would be completed at that time." (emphasis added).

24          28.     Employee A responded on June 18, 2012, writing, "Looks good.  I noticed the

25  'Crack Seal' bid item is really low on the billing.  **Can you bill me a lot more for that and still**

26  **justify it to Field [*i.e.*, the Resident Engineer] without them questioning you?**" (emphasis

27  added).  Mr. Stone of AAS replied to Employee A's email, stating in essence that a "padded bill"

28

---

11

1  would not work because the City – *i.e.*, the RE – was aware that the crack seal work had been

2  completed in May.

3      29.    This is thus an instance in which AAS found itself unable to extract unlawful

4  payments from the City.  However, it also (1) exemplifies AAS's steadfast willingness to collude

5  with Employee A by, among other things, shutting the RE out of communications relating to

6  pricing and billing; and (2) establishes that AAS and Employee A conspired to bilk the City and

7  its taxpayers almost as a matter of course.

8      30.    Yet another miscellaneous act of collusion occurred in February 2016, when AAS

9  sought to increase the unit price for asphalt pavement repair and other items.  After City staff

10  rejected the request, Mr. Griffin of AAS emailed Employee A's personal Gmail account asking

11  him to intervene on AAS' behalf.  Employee A then secretly counseled Mr. Griffin via Gmail

12  emails to hold onto work force reports required by the City until the City caved and acquiesced to

13  AAS' demands.  This only underscores AAS' willingness to go outside contractually-mandated

14  communication channels to extract concessions to which it had no legal claim.

15  **IV.    LEGAL BASIS FOR PERMANENT DEBARMENT**

16      31.    Debarment should in many instances be only a temporary measure, one designed to

17  ensure that a contractor that has engaged in lower-level misconduct does not repeat that

18  misconduct in the future.  Indeed, the Code expressly contemplates debarment for a period of one,

19  two or three or more years.  (*See* Code at § 22.0807(b)-(d)).  However, the Code also makes clear

20  that certain types of misconduct – persistent and collusive misconduct meant to defraud and

21  deceive – should result in the stricter remedy of permanent debarment so as to protect the City and

22  its taxpayers from still further harm.  This case involves just that sort of misconduct.

23      **A.    Code §§ 22.0807(a)(3) and (4): Corrupt Practices and Collusive Bidding**

24      32.    Section 22.0807(a)(4) of the Code provides that a contractor may be permanently

25  debarred when it "has engaged in any corrupt practice in bidding, award, administration, or

26  performance of a contract."  Section 22.0807(a)(3) provides that permanent debarment may be

27  ordered where a contractor has violated Section 97 of the City Charter ("Section 97"), entitled,

28  "No Collusion in Bidding."  Section 97 states:

1     If at any time it shall be found that any party or parties to whom a contract has

2     been awarded has, in presenting any bid or bids, been guilty of collusion with

3     any party or parties in the submission of any bid or for the purpose of

4     preventing any other bid being made, then the contracts so awarded may be

5     declared null and void by the Council and the Council shall thereupon re-

6     advertise for new bids for said work or the incomplete portion thereof. The

7     Council shall debar from future bidding all persons or firms found to be in

8     violation of this Section, or any future firm in which such person is financially

9     interested.

10       33.    The allegations recounted above, when established at hearing, mandate AAS'

11  permanent debarment under both of these Code provisions.  AAS, after plying Employee A with

12  gifts over the course of several years, regularly and routinely colluded with Employee A to

13  (1) increase amounts paid by the City for work by, among other things, "bumping up" option

14  contract prices, (2) to violate public-bidding statutes by, *inter alia*, placing additional work under

15  option contracts when, by Employee A's own admission, the work could have been put out to

16  public bid to obtain a better price; (3) to secure payment to AAS for work never performed; and

17  (4) to secure double payment to AAS for work it defectively performed.  This is a longstanding,

18  well-documented and egregious pattern of misconduct warranting immediate and permanent

19  debarment.

20    **B.**  **Code §§ 22.0807(a)(7): Acts and Omissions of a Serious and Compelling**
          **Nature**

21

22       34.    Section 22.0807(a)(7) of the Code provides that a contractor may be permanently

23  debarred when it "has committed an act or omission so serious or compelling in nature that it

24  affects the present responsibility of the contractor to be awarded a contract or to participate as a

25  subcontractor."  Section 1103 of the Public Contract Code explains the meaning of

26  "responsibility" in this context, stating that a "responsible bidder" is one "who has demonstrated

27  the attribute of **trustworthiness**, as well as quality, fitness, capacity, and experience to

28  satisfactorily perform the public works contract."  (emphasis added).  Thus, the central question

1 under Section 22.0807(a)(7) is whether the City, in light of AAS' many acts, could ever trust AAS

2 in the future.

3      35.    The answer is undoubtedly, no.  This case does not involve an isolated incident or

4 two, but rather involves a years-long pattern of conduct with a single aim: to take money from the

5 City to which AAS was not entitled.  Nor does this case involve a single "bad apple" at AAS.  As

6 the above-recited allegations make clear, no fewer than four people at AAS were involved in the

7 collusion, to include AAS' CEO (Mr. Henderson) and its Corporate Secretary (Mr. Stone).  Also,

8 the fact that Employee A has left the City's employ does nothing to obviate concerns about

9 potential misconduct by AAS in the future.  AAS, left to its own devices, would simply look for

10 some other means of circumventing contractually-mandated hierarchies and communications

11 channels.

12 **V.    PRAYER FOR RELIEF**

13      36.    Based on the foregoing allegations, each re-alleged and incorporated here, the City

14 respectfully prays for an order permanently debarring AAS pursuant to Code §§ 22.0807(a)(3), (4)

15 and (7).  Pursuant to Code § 22.0814(a), AAS, by the order of debarment would be "excluded

16 from submitting bids, submitting responses to requests for proposal or qualifications, receiving

17 contract awards, executing contracts, participating as a subcontractor, employee, agent or

18 representative of another person contracting with the City."  In addition, pursuant to Code

19 § 22.0815(a), any affiliate of AAS, as defined in Code § 22.0802, would be likewise permanently

20 debarred.

21 DATED:  February 2, 2021        MEYERS NAVE

24 By:

25 Jennifer L. Riggs
26 Ian Johnson
   Attorneys for Complainant CITY OF SAN
27 DIEGO

14

1
## **VERIFICATION**

2
STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

3
    I, Claudia Abarca, am employed by the City of San Diego ("City"), the Complainant in

4
this action. My role at the City is Interim Director of the Purchasing and Contracting Department.

5
    I have read the foregoing ACCUSATION IN ACTION FOR DEBARMENT and know its

6
contents. The facts as alleged therein are true to the best of my knowledge, except as to those

7
matters alleged on information and belief, which I believe to be true. I am authorized to make this

8
verification for and on behalf of the City.

9
    I declare under penalty of perjury under the laws of the State of California that the

10
foregoing is true and correct.

11
    Executed on February 1st , 2021 at San Diego, California.

12

13

14
                    Claudia Abarca

15

16

17

18
3686036.1

19

20

21

22

23

24

25

26

27

28

15
CITY OF SAN DIEGO'S ACCUSATION IN ACTION FOR DEBARMENT

# Exhibit A

**16**

## Article 2:  Administrative Code

### Division 8:  Debarment
*("Budget Estimate" added 1–22–1952 by O–5046 N.S.)*
*(Retitled to "Debarment" on 4–15–1996 by O–18283 N.S.)*

§22.0801    **Purpose and Intent**

    (a)    In order to promote integrity in the City's contracting processes and to protect the public interest, the City shall only do business with responsible *bidders* and *contractors*.

    (b)    This Division sets forth the grounds for *debarment* and *suspension*.

*("Statement of Purpose" repealed and "Statement of Purpose" added 9–3–2002 by O–19093 N.S.)*
*("Retitled from "Statement of Purpose" to "Purpose and Intent" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0802    **Definitions**

All defined terms in this Division appear in italics. For purposes of this Division:

*Adequate evidence* means information sufficient to support the reasonable belief that a particular act or omission has occurred.

*Affiliate* means:

    (a)    the assignee, successor, subsidiary of, or parent company, of another *person*; or,

    (b)    a *controlling stockholder* of a *person*; or,

    (c)    a *person* who has the same or similar *management* of the *debarred* corporate or other legal entity; or,

    (d)    a *person* who directly or indirectly controls, or has the power to control, another *person*, or is directly or indirectly controlled by another *person*. Indicia of control include interlocking *management* or ownership, identity of interests among *relatives*, shared facilities and equipment, and common use of employees; or,

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**17**

(e)     a business entity organized following the *debarment*, *suspension*, or proposed *debarment* of a *person* which has the same or similar *management*, ownership or principal employees as the *bidder* or *contractor* that was *debarred*, *suspended* or proposed for *debarment*, or the *debarred person* or the business entity created after the *debarment*, *suspension*, or proposed *debarment* operates in a manner designed to evade the application of this Division or to defeat the purpose of this Division.

*Bidder* means a *person* who submits a bid, proposal, or other document to the City seeking award of a *contract*. The term *bidder* does not include a *subcontractor*.

*Contract* means any written agreement between the City and a *person* for public works, goods, services, franchise, or consultant services.

*Contractor* means a *person* who has contracted with the City to provide public works, goods, services, franchise, or consultant services for or on behalf of the City. The term *contractor* includes a *subcontractor*, vendor, franchisee, consultant, or any of their respective officers, directors, shareholders, partners, managers, employees, or other individuals associated with the *contractor*, *subcontractor*, consultant, or vendor.

*Controlling stockholder* means a stockholder who:

(a)     owns more than 25% of the voting stock of a corporation; or,

(b)     notwithstanding the number of shares that the stockholder owns, has the power to direct or control the direction of the *management* or policies of a corporation.

*Debar* or *Debarment* means an action taken by the City which results in a *bidder* or *contractor* being prohibited from any of the following: bidding or proposing on a *contract*; being awarded a *contract*; or performing work on a *contract* for a defined period of time. A *bidder* or *contractor* subject to such prohibition is *debarred*.

*Debarment Hearing Board* means a board established by the City Manager to hold hearings, to take evidence, and to make *debarment* determinations for the City.

*Department* means a City department acting through the department director or designee.

*Final Performance Evaluation* means a City-issued final evaluation of a *contractor's* overall performance which is generally issued subsequent to completion of performance on the *contract*.

| Ch. | Art. | Div. |
|-----|------|------|
| 2   | 2    | 8    |

**18**

*Management* means the officers, partners, owners, foremen, or other individuals responsible for a corporate or other legal entity's financial and operational policies and practices.

*Person* has the same meaning as that in San Diego Municipal Code section 11.0210. In addition, if a *person* is a corporate or other legal entity, it includes individuals who constitute the *person's management*. It also includes any individual or other legal entity that

(a)      Directly or indirectly (e.g. through an *affiliate*), submits offers for or is awarded, or reasonably may be expected to submit offers for or be awarded, a *contract*, or a subcontract under a *contract*; or

(b)      conducts business, or reasonably may be expected to conduct business, with the City as an agent or representative of another *person*.

*Preponderance of the evidence* means proof by information that, compared with that opposing it, leads to the conclusion that the fact at issue is more probably true than not.

*Prime contractor* means a *person* who enters a *contract* directly with the *City*.

*Relative* means:

(a)      an individual related by consanguinity within the second degree as determined by the common law; or,

(b)      a spouse; or,

(c)      an individual related to a spouse within the second degree as determined by the common law; or,

(d)      an individual in an adoptive relationship within the second degree as determined by the common law; or

(e)      any individual considered to be "family" in commonly understood terms of the word.

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**19**

*Subcontractor* means:

(a)     a *person* who contracts directly with a *prime contractor* but not directly with the *City*; or,

(b)     any *person* under contract with a *prime contractor* or another *subcontractor* to provide any service, materials, labor or otherwise perform on a *contract*.

*Suspend* or *Suspension* means the *debarment* of a *bidder* or *contractor* for a temporary period of time pending the completion of an investigation and any proceedings before a *Debarment Hearing Board* or independent hearing officer and any appeals therefrom.

*("Definitions" repealed and "Definitions" added 9–3–2002 by O–19093 N.S.) (Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0803     **Scope of Division**

(a)     This Division establishes procedures for determining whether a *bidder* or *contractor* is to be *debarred*, *suspended*, or both.

(b)     This Division sets forth the grounds for *debarment* and *suspension*.

(c)     The City Manager shall adopt procedures and regulations to implement this Division, including procedures for the conduct of *debarment* hearings, *suspension* meetings, and appeals of *final performance evaluations*.

*("Debarment Procedures for Procurement and Public Works Contracts" repealed; "Scope of Division" added 9–3–2002 by O–19093 N.S.) (Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.) (Amended 6-4-2020 by O-21193 N.S.; effective 7-4-2020.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**20**

§22.0804      **Debarment Hearing Board**

(a)      Upon a recommendation from a *department* for *debarment* other than
*debarments* set forth in sections 22.0808(a)(1) and 22.0808(a)(2), the City
Manager shall appoint a *Debarment Hearing Board* to hear and determine
whether a *bidder or contractor* should be *debarred*.

(b)      The City Manager shall appoint three individuals to serve on each *Debarment
Hearing Board*. These individuals may be City employees, but shall not be
employees who have participated in the decision to recommend the
*debarment*, or employees who work in the department recommending
*debarment*.

*("Debarment Procedures for Materials, Supplies, Equipment, Insurance or Personal
Service Contracts" repealed; "Debarment Hearing Board to be Established" added
9–3–2002 by O–19093 N.S.)*
*(Retitled from "Debarment Hearing Board to be Established" to "Debarment
Hearing Board" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0805      **Suspension While Debarment Proceedings are Pending**

(a)      The City Manager may *suspend* a *bidder* or *contractor* pending a *debarment*
decision if the City Manager determines that *adequate evidence* of one of the
grounds for *debarment* listed in section 22.0807 exists.

(b)      The City Manager shall, upon 72 hours' notice, provide a *suspended bidder* or
*contractor* with an opportunity to appeal the *suspension* at an informal
meeting.

(c)      The City Manager shall notify the *bidder* or *contractor* of the *suspension* in
accordance with section 22.0806.

(d)      The *suspension* is effective until a final *debarment* decision is issued.

*("General" repealed; "Suspension Once City Manager Decides to Recommend
Debarment" added 9–3–2002 by O–19093 N.S.)*
*(Retitled from "Suspension Once City Manager Decides to Recommend Debarment"
to "Suspension While Debarment Proceedings are Pending" and amended 8-10-2016
by O-20715 N.S.; effective 9-9-2016.)*
*(Amended 6-4-2020 by O-21193 N.S.; effective 7-4-2020.)*

| Ch. | Art. | Div. |
|-----|------|------|
| 2 | 2 | 8 |

**21**

§22.0806        **Notices Required Under This Division**

(a)        Notice shall be by any of the following methods:

(1)        Personal delivery with service effective on the date of delivery; or,

(2)        Certified mail, postage prepaid, return receipt requested. Simultaneously, the same notice may be sent by regular mail. If a notice that is sent by certified mail is returned unsigned, then service shall be deemed effective five calendar days after mailing by regular mail, provided the notice that was sent by regular mail is not returned; or

(3)        Regular mail, if not returned, with service effective five calendar days after mailing; or,

(4)        Publication. Service shall be deemed effective on the first date of publication.

(b)        Proof of delivery of notice shall be made by the certificate of any officer or employee of the City or by declaration under penalty of perjury of any person over the age of eighteen years. The proof of delivery shall show that delivery was done in conformity with this Division.

(c)        The failure of any *person* to receive any notice served in accordance with this Division shall not affect the validity of any *debarment* proceedings.
*("List of Debarred Contractors" repealed; "Notices" added 9–3–2002 by O-19093 N.S.)*
*(Retitled from "Notices" to "Notices Required Under This Division" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0807        **Grounds for Debarment**

(a)        Grounds for Permanent Debarment

(1)        A judgment, settlement, stipulation, plea agreement, final conviction, including a plea of nolo contendere, or final unappealable civil judgment, of any of the grounds listed below, constitutes grounds for permanent *debarment* of the *bidder* or *contractor* who is subject to, or the *affiliate* of, the *bidder* or *contractor* who is subject to the judgment, settlement, stipulation, plea agreement, final conviction, or final unappealable civil judgment:

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

22

      (A)    under any local, state, or federal law or regulation for embezzlement, theft, bid rigging, perjury, forgery, bribery, falsification or destruction of records, conspiracy, collusion, or receiving stolen property; or,

      (B)    any offense, action, or inaction indicating a lack of business integrity or business honesty; or,

      (C)    for commission of a criminal offense arising out of obtaining or attempting to obtain a public or private *contract* or *subcontract*, or in the performance of such *contract* or *subcontract*.

(2)    A Fair Political Practices Commission enforcement order against a *bidder* or *contractor*, either following a hearing or by stipulation, imposing a penalty for a violation of California Government Code sections 84300(c) or 84301, or a City of San Diego Ethics Commission enforcement order against a *bidder* or *contractor*, either following a hearing or by stipulation, imposing a penalty for a violation of San Diego Municipal Code sections 27.2941, 27.2943, or 27.2944.

(3)    The *bidder* or *contractor* violated San Diego Charter section 97.

(4)    The *bidder* or *contractor* has engaged in any corrupt practice in bidding, award, administration, or performance of a *contract*.

(5)    The *bidder* or *contractor* operates in a manner designed to evade the application of this Division or to defeat the purpose of this Division.

(6)    The City has issued the *bidder* or *contractor* four or more *final performance evaluations* with a rating of unsatisfactory in any four year period.

(7)    The *person* has committed an act or omission so serious or compelling in nature that it affects the present responsibility of the *bidder* or *contractor* to be awarded a *contract* or to participate as a *subcontractor*.

(b)    Grounds for Debarment of Three Years or More

(1)    The *bidder* or *contractor* willfully breaches a material term of a *contract*.

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2   | 2    | 8    | |

**23**

(2)     Violation of a local, state, or federal law or regulation applicable to a *contract* other than those identified in section 22.0807(a).

(3)     The *bidder* or *contractor* used substandard materials, or has failed to furnish or install materials in accordance with *contract* requirements, even if the discovery of the defect is subsequent to acceptance of the work and expiration of the warranty, if such defect is because of intentionally deficient or grossly negligent performance of the *contract.*

(4)     The *bidder* or *contractor* submits materially false information to the City pertaining to:

    (A)     the City's evaluation of the *bidder* or *contractor* as a Minority Business Enterprise, Woman Business Enterprise, Disadvantaged Business Enterprise, Small Local Business Enterprise, Emerging Local Business Enterprise, or Disabled Veteran Business Enterprise;

    (B)     the City's prequalification or eligibility process; or,

    (C)     the *bidder's* or *contractor's* statement of gross income submitted under the City's Minor Public Works Construction Project Program.

(5)     The *bidder* or *contractor* has not implemented its Equal Employment Opportunity Plan, or taken corrective action after sufficient notice by the City.

(6)     The *bidder* or *contractor* has engaged in unlawful discrimination in employment.

(7)     The *bidder* or *contractor* has received three or more *final performance evaluations* with a rating of unsatisfactory in any three year period.

(8)     The *bidder* or *contractor* fails to pay prevailing or living wages, or fails to comply with the City of San Diego's Earned Sick Leave and Minimum Wage Ordinance.

(9)     The *bidder* or *contractor* violates a material provision of any settlement of a *debarment* action.

| Ch. | Art. | Div. | |
|-----|------|------|---|
| 2 | 2 | 8 | |

**24**

    (c)     Grounds for Debarment of Two Years

         A *bidder* or *contractor* may be *debarred* for two years if a *bidder* or *contractor* has received two or more *final performance evaluations* with a rating of unsatisfactory in any two-year period.

    (d)     Grounds for Debarment of One Year

        (1)    The *bidder* or *contractor* made two or more claims of computational or other error in a bid to the City within a two-year period.

        (2)    The *bidder* or *contractor* failed to timely submit bond, *contract*, insurance documents, or any other documentation required as a condition of award or performance of a *contract*.

*("Effect of Listing" repealed; "Grounds for Debarment" added 9–3–2002 by O-19093 N.S.)*
*(Amended 1-24-2005 by O-19353.)*
*(Amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*
*(Amended 6-4-2020 by O-21193 N.S.; effective 7-4-2020.)*

§22.0808     **Debarment Proceedings before a Debarment Hearing Board**

    (a)     The *Debarment Hearing Board* shall hear all recommendations for *debarment* other than:

        (1)    permanent *debarment*, which are heard in accordance with section 22.0809; and

        (2)    *debarment* based on unsatisfactory *final performance evaluations*, which are heard in accordance with section 22.0811.

    (b)     The *Debarment Hearing Board* shall determine by a *preponderance of the evidence* whether a *bidder* or *contractor* is to be *debarred* and for what length of time in accordance with this Division. The *Debarment Hearing Board* may increase, decrease, or accept the *department's* recommendation of the length of *debarment*. The *debarment hearing board* may not impose less than the length of *debarment* specified in section 22.0807(b) and (d).

    (c)     The *Debarment Hearing Board's* decision on *debarment* must be in writing and is final.

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**25**

(d)    The failure of a *person* recommended for *debarment* to appear at a *debarment* hearing after notice under section 22.0806 constitutes a waiver of that *person's* right to contest the *debarment* recommendation, and the *department's* recommendation shall become final.

*("Continuation of Existing Contracts" repealed; "Debarment Proceedings before the Debarment Hearing Board or City Council" added 9–3–2002 by O–19093 N.S.) (Retitled from "Debarment Proceedings before the Debarment Hearing Board or City Council" to "Debarment Proceedings before a Debarment Hearing Board" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0809      **Debarment Proceedings before an Independent Hearing Officer**

(a)    The City Manager shall appoint an independent hearing officer.

(b)    An independent hearing officer shall hear all recommendations that include one or more grounds for permanent *debarment*, except for *debarments* based on unsatisfactory *final performance evaluations*, which are heard in accordance with section 22.0811.

(c)    The independent hearing officer shall determine by a *preponderance of the evidence* whether a *person* is to be *debarred* and for what length of time, in accordance with this Division. The independent hearing officer may increase, decrease, or accept the *department's* recommendation of the length of *debarment*. The independent hearing officer may not reduce the length of a permanent *debarment* if the hearing officer determines a violation identified in section 22.0807(a) occurred, or impose less than the length of debarment specified in section 22.0807(b) and (d).

(d)    The independent hearing officer's decision on *debarment* must be in writing and is final.

(e)    The failure of a *person* recommended for *debarment* to appear at a *debarment* hearing after notice under section 22.0806 constitutes a waiver of that *person's* right to contest the *debarment* recommendation, and the *department's* recommendation shall become final.

(f)    Notwithstanding (d) and (e), any decision by an independent hearing officer that *debars* a *bidder* or *contractor* based on collusion is not final and shall be referred to the City Council to permanently *debar* that *bidder* or *contractor* in accordance with Charter section 97. The City Council may adopt or deny the independent hearing officer's finding of collusion. The City Council's decision is final.

Ch.   Art.   Div.
2      2      8

26

66

*("Scope of Debarment" repealed; "Debarment Hearing Board's Authority to Debar;
Debarment Hearing Board's Decision Final" added 9–3–2002 by O–19093 N.S.)
(Retitled from "Debarment Hearing Board's Authority to Debar; Debarment
Hearing Board's Decision Final" to "Debarment Proceedings before an Independent
Hearing Officer" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)
(Amended 6-4-2020 by O-21193 N.S.; effective 7-4-2020.)*

§22.0810    **Imputation of Knowledge and Conduct**

(a)    The fraudulent, criminal, or other serious misconduct of any officer, director,
shareholder, partner, employee, or other individuals associated with a *bidder*
or *contractor* may be imputed to the *bidder* or *contractor* when the conduct
occurred in connection with the individual's performance of duties for, or on
behalf of, the *bidder* or *contractor*, or with the *bidder's* or *contractor's*
knowledge, approval, or acquiescence. Acceptance of the benefits derived
from the conduct shall be evidence of such knowledge, approval, or
acquiescence.

(b)    The fraudulent, criminal, or other serious misconduct of a *bidder* or
*contractor* may be imputed to any officer, director, shareholder, partner,
employee, or other individual associated with the *bidder* or *contractor* who
participated in, knew of, or had reason to know of the *bidder's* or *contractor's*
conduct.

(c)    The fraudulent, criminal, or other serious misconduct of one *bidder* or
*contractor* participating in a joint venture or similar arrangement may be
imputed to other participating *bidders* or *contractors* if the conduct occurred
for, on approval of, or acquiescence of these *bidders* or *contractors*.
Acceptance of the benefits derived from the conduct shall be evidence of such
knowledge, approval, or acquiescence.

*("Appeals to City Council from Certain Decisions of Debarment Hearing Board"
added 9-3-2002 by O-19093 N.S.)
(Retitled from "Appeals to City Council from Certain Decisions of Debarment
Hearing Board" to "Imputation of Knowledge and Conduct" and amended
8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

Ch. Art. Div.
2  2  8

**27**

§22.0811    **Appeal of Final Performance Evaluations**

(a)     A *bidder* or *contractor* may appeal a *final performance evaluation* with a rating of unsatisfactory on a public works *contract* or an architectural or engineering consultant *contract* to the City Engineer.

(b)     A *bidder* or *contractor* may appeal a *final performance evaluation* with a rating of unsatisfactory on a goods, services, or non-engineering, non-architectural consultant *contract* to the Purchasing Agent.

(c)     A *bidder* or *contractor* must submit an appeal in writing to the City Engineer or Purchasing Agent within sixty days after notice of the *final performance evaluation* pursuant to section 22.0806. Evaluations may not be appealed after sixty days from the date of such notice.

(d)     The decision of the City Engineer and the Purchasing Agent to uphold an unsatisfactory performance evaluation or a *debarment* determination shall be issued to the *bidder* or *contractor* in writing and are final.

(e)     The City Manager may, upon recommendation of the City Engineer or Purchasing Agent, *debar* a *bidder* or *contractor* who has received an unsatisfactory *final performance evaluation*. This determination shall be in writing and is final.

*("Submission of Argument on Appeal" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Submission of Argument on Appeal" to "Appeal of Final Performance Evaluations" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0812    **Judicial Review**

California Code of Civil Procedure section 1094.6 governs judicial review of a final *debarment* decision.

*("Standard of Proof" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Standard of Proof" to "Judicial Review" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0813    **Creation of List of Debarred and Suspended Persons**

(a)     The City Manager shall create, maintain, and make publicly available a list of the names, addresses, and applicable *debarment* or *suspension* commencement and expiration dates of all *debarred* or *suspended bidders* and *contractors*.

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**28**

(b)     The City Manager shall establish procedures to provide for the effective use
of the list to ensure that the City does not do business with *bidders* or
*contractors* who have been *debarred* or *suspended*.

*("Imputation of Knowledge and Conduct" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Imputation of Knowledge and Conduct" to "Creation of List of*
*Debarred and Suspended Persons" and amended 8-10-2016 by O-20715 N.S.;*
*effective 9-9-2016.)*

§22.0814     **Effect of Debarment or Suspension**

(a)     *Bidders* and *contractors* who have been *debarred* or *suspended* are excluded
from submitting bids, submitting responses to requests for proposal or
qualifications, receiving *contract* awards, executing *contracts,* participating as
a *subcontractor*, employee, agent or representative of another *person*
contracting with the City.

(b)     The City shall not accept, evaluate for award, or include any proposals,
quotations, bids, or offers from any *debarred* or *suspended bidders* and
*contractors*.

(c)     The City shall not award or approve the award of a *contract* or execute a
*contract* under which a *debarred* or *suspended bidder* or *contractor* is
intended to participate as a *subcontractor* or material supplier.

(d)     A *prime contractor* shall not employ, subcontract with, or purchase materials
or services from a *debarred* or *suspended bidder* or *contractor*.

(e)     The City Manager shall report *debarments* under this Division to the
appropriate local, state, and federal agencies and authorities.

*("Judicial Review" added 9-3-2002 by O-19093 N.S.)*
*(Retitled from "Judicial Review" to "Effect of Debarment or Suspension" and*
*amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

§22.0815     **Effect of Debarment or Suspension on an Affiliate**

(a)     *Affiliates* are debarred or suspended to the same extent as the *debarred* or
*suspended bidder* or *contractor*.

(b)     A *bidder* or *contractor* may appeal the City's determination that the *bidder* or
*contractor* is an *affiliate* in writing to the City Manager within sixty days after
notice of the *affiliate's debarment* pursuant to section 22.0806.

| Ch. | Art. | Div. | |
|-----|------|------|--|
| 2 | 2 | 8 | |

**29**

(c)    An *affiliate* may not appeal the *debarment* of any other *bidder* or *contractor* underlying the *affiliate's debarment*.

(d)    The decision of the City Manager shall be issued to the *bidder* or *contractor* who is an *affiliate* in writing and is final.

*("Effect of Debarment or Suspension on an Affiliate" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0816**    **Effect of Debarment by Another Governmental Agency**

The City Manager may *debar* a *bidder* or *contractor* who has been debarred by another governmental agency until the term of the debarment by the other governmental agency expires. The City Manager's decision under this section is final, and not subject to a hearing before the *Debarment Hearing Board* or an independent hearing officer.

*("Effect of Debarment by Another Governmental Agency" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

**§22.0817**    **Liability for Increased Costs**

Any *bidder or contractor* who enters into a *contract*, either directly as a *prime contractor* or indirectly as a *subcontractor*, during a period of *suspension* or *debarment* imposed upon that *bidder* or *contractor*, shall be liable to the City for increased costs incurred as a result of replacing the *debarred* or *suspended bidder* or *contractor*.

*("Liability for Increased Costs" added 8-10-2016 by O-20715 N.S.: effective 9-9-2016.)*

**§22.0818**    **Effect of Debarment or Suspension on Existing Contracts**

(a)    The *City* may continue or terminate *contracts* or subcontracts it has with a *debarred* or *suspended bidder* or *contractor* that are in existence at the time the *bidder* or *contractor* is *debarred* or *suspended*.

(b)    The City shall not renew or otherwise extend the duration of current *contracts,* or consent to subcontracts, with *debarred* or *suspended bidders* or *contractors*, unless the City Manager certifies in writing compelling reasons for such renewal or extension.

(c)    The City may contract with another *person* to perform public works, goods, services, or consultant services that a *debarred contractor* had been hired to perform.

*("Effect of Debarment or Suspension on Existing Contracts" added 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

| Ch. | Art. | Div. | |
|---|---|---|---|
| 2 | 2 | 8 | |

**30**

§22.0819       **Agreement Not to Bid or Submit Proposals in Lieu of Debarment or Suspension**

(a)       The City may offer a *bidder* or *contractor* the opportunity to execute a written agreement not to bid or submit proposals or perform any work on *contracts* in lieu of the City's pursuing *debarment or suspension.*

(b)       This agreement not to bid or submit proposals for *contracts* in lieu of the City's pursuing *debarment or suspension* does not constitute a *debarment.*

*("Creation of List of Debarred and Suspended Persons" added 9-3-2002 by O-19093 N.S.)*
*(Renumbered from former Section 22.0820, retitled from "Creation of List of Debarred and Suspended Persons" to "Agreement Not to Bid or Submit Proposals in Lieu of Debarment or Suspension" and amended 8-10-2016 by O-20715 N.S.; effective 9-9-2016.)*

*Ch.  Art.  Div.*
| 2 | 2 | 8 | |

31

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Alameda, State of California.  My business address is Meyers Nave, 1999 Harrison Street, 9th Floor, Oakland, CA 94612.  I served a true and correct copy of the below-listed document(s) on the interested parties in this action as follows:

**ACCUSATION IN ACTION FOR DEBARMENT**
**(San Diego Municipal Code § 22.0807)**

**BY MAIL:**  On February 2, 2021, I enclosed the document in sealed envelope addressed to the person(s) listed below.  I am readily familiar with Meyers Nave's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with first-class postage fully prepaid.

Shawn M. Ogle
Atkinson, Andelson, Loya, Ruud & Romo
20 Pacifica, Suite 1100
Irvine, CA  92618

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.  Executed on February 2, 2021 at Oakland, California.

*Robyn L Hunt*

Robyn L. Hunt

# Exhibit D

# OFFICE OF ADMINISTRATIVE HEARINGS
## STATE OF CALIFORNIA
## GENERAL JURISDICTION DIVISION

## Local Agency Request to Set

### Case Information

Date        02/02/2021

From                    City of San Diego

Case Name               City of San Diego v. American Asphalt South, Inc.

OAH Case Number

Name of Agency          City of San Diego

Agency Case Number   Not applicable

### Agency Attorney/Representative Contact Information

Name                    Jennifer L. Riggs; Ian Johnson

Mailing Address         MEYERS NAVE
                        600 B Street, Suite 1650
                        San Diego, CA 92101

Telephone               (619) 330-1700

Email                   jriggs@meyersnave.com; ijohnson@meyersnave.com

### Agency Attorney/Representative Preferred Method of Service

☒ E-file                            ☐ U.S. Mail

**Respondent/Appellant/Petitioner Contact Information**

| | |
|---|---|
| Name | American Asphalt South, Inc. |
| Mailing Address | Respondent is represented by counsel (see contact information directly below) |
| Telephone | |
| Email | |

**Respondent/Appellant/Petitioner Preferred Method of Service**

☐ E-file                    ☐ U.S. Mail

**Respondent Attorney/Representative Contact Information**

| | |
|---|---|
| Name | Scott K. Dauscher; Brian M. Wheeler |
| Mailing Address | ATKINSON, ANDELSON, LOYA, RUDD & ROMO<br>12800 Center Court Drive South, Suite 300<br>Cerritos, CA 90703 |
| Telephone | (562) 653-3200 |
| Email | SDauscher@aalrr.com; BWheeler@aalrr.com |

**Respondent Attorney/Representative Preferred Method of Service**

☐ E-file                    ☐ U.S. Mail

**Pleading Type**

☐ Employee Discipline                    ☐ Disability Retirement

☐ Industrial Disability Retirement

☒ Other (List)          Accusation (Debarment)

**IF PLEADINGS ARE NOT ATTACHED A HEARING MAY NOT BE SET**

**Statutory Time Limit**

☒ Yes                                    ☐ No

If yes, provide legal authority (Code & Section Number) and date by which case must

be heard.  City of San Diego Admin. Reg. 25.90 § 4.9.5 - Decision to be prepared and mailed within 30 days after
conclusion of hearing; can be extended for an additional 30 days in complex cases

**Time Estimate for Hearing**

Hours  30                                Days   4

**Hearing Location**   OAH San Diego Administrative Hearings Office
1350 Front Street, No. 3005, San Diego, CA 92101

**Provide at least three dates preferred (All Parties) (California Code of**

**Regulations, title 1 section 1018(a)(6))**  June 14, 2021; June 21, 2021; June 28, 2021

**Dates coordinated with all parties?**

☐ Yes                                    ☒ No

**If no, attach DGS-OAH Form 21 (Statement of Agency's Reasonable Efforts to**

**Confer). Failure to coordinate dates or provide an explanation will result in OAH**

**assigning hearing dates.**

DGS OAH 14 (California Code of Regulations., Title 1, Section 1018)          (For Optional Use)
(Revised 2/20)                                                             Page 3

**Dates unavailable for at least 6 months (All Parties)**

**Additional comments and/or instructions**

**Hearing Record Information**

☐ Electronic recording by consent (Government. Code, section 11512, subdivision (d)) (Attach copy of written consent)

☐ OAH to request court reporter (Agency is responsible for court reporting charges)

☐ Agency to provide court reporter

**(If no selection is made a Court Reporter will be ordered and the agency will be charged.)**

**Current court reporting rates are available on the OAH website at: https://www.dgs.ca.gov/OAH/Case-Types/General-Jurisdiction/Resources/Page-Content/General-Jurisdiction-Resources-List-Folder/Find-Contract-Information-to-Obtain-OAH-Court-Reporter-Services.**

**For E-filing https://www.applications.dgs.ca.gov/oah/oahsftweb**

**NOTICE: This is not a reservation of dates.  Completion of this form does not guarantee that you will receive the hearing dates requested.  Dates are subject to availability at the time OAH processes this form.**

# OFFICE OF ADMINISTRATIVE HEARINGS

# STATE OF CALIFORNIA

# GENERAL JURISDICTION DIVISION

# Privacy Notice

This notice is provided pursuant to the Information Practices Act of 1977 (Civil Code, Section 1798 et seq.).

All information and records submitted to OAH may be subject to disclosure in accordance with the California Public Records Act (Government Code, Section 6250 et seq.), and other applicable authority unless expressly prohibited by law. Proceedings before OAH and records held by OAH are public unless otherwise provided by statute (Government Code, Section 11425.20). For example, the Family Educational Rights and Privacy Act (FERPA 20 United States Code Section 1232(g)) recognizes privacy rights to educational records in certain limited circumstances. It is the obligation of the parties to determine if case filings or proceedings require privacy protections. OAH cannot provide legal advice.

The Information Practices Act requires OAH to provide notice to individuals who submit personal information to OAH.

(Rev. 12/2019)

1)      This notice does not apply to information provided by an agency or to routine contact information collected by OAH for the purpose of identification or communication regarding the case.

2)      To the extent this form seeks information about a need for accommodation, OAH requests the information for the sole purpose of making a determination about the accommodation an individual is seeking.  An individual seeking an accommodation is not required to use this form; it is provided as a convenience only.  OAH can request this information in accordance with the Americans with Disabilities Act (42 United State Code Section 12101 et seq.).

3)      Requests for Public Records or information maintained in accordance with the Information Practices Act shall be directed to the OAH Public Records Officer, 2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833, (916) 263-0550, or OAHPRA@dgs.ca.gov.

(Rev. 12/2019)

# OFFICE OF ADMINISTRATIVE HEARINGS

## STATE OF CALIFORNIA

## GENERAL JURISDICTION DIVISION

## Statement of Agency's Reasonable Efforts to Confer

**Instructions**

This form is to be filed with every Request to Set form where the agency or counsel has been unable to meet and confer with all parties regarding available and unavailable dates for hearing.  Detail efforts to meet and confer with each party. Attach additional sheets if necessary.

**Case Information**

Case Name
City of San Diego v. American Asphalt South, Inc.
OAH Case Number


Name of Agency
City of San Diego
Agency Case Number

Not applicable

**Statement of Efforts to Confer**

I have made the efforts detailed below to meet and confer with the following parties

or their representatives before submitting a Request to Set form to OAH.

Party Name
City of San Diego

Party Representative
Jennifer L. Riggs; Ian Johnson
MEYERS NAVE
600 B Street, Suite 1650, San Diego, CA 92101

Efforts to Meet and Confer
Please see attached.

By typing my name below, I am agreeing to electronically signing this form.

Signature
Ian Johnson

Printed Name
Ian Johnson

Dated
02/02/2021

**For E-filing https://www.applications.dgs.ca.gov/oah/oahsftweb**

# OFFICE OF ADMINISTRATIVE HEARINGS

# STATE OF CALIFORNIA

# GENERAL JURISDICTION DIVISION

# Privacy Notice

This notice is provided pursuant to the Information Practices Act of 1977 (Civil Code, Section 1798 et seq.).

All information and records submitted to OAH may be subject to disclosure in accordance with the California Public Records Act (Government Code, Section 6250 et seq.), and other applicable authority unless expressly prohibited by law. Proceedings before OAH and records held by OAH are public unless otherwise provided by statute (Government Code, Section 11425.20).  For example, the Family Educational Rights and Privacy Act (FERPA 20 United States Code Section 1232(g)) recognizes privacy rights to educational records in certain limited circumstances.  It is the obligation of the parties to determine if case filings or proceedings require privacy protections.  OAH cannot provide legal advice.

The Information Practices Act requires OAH to provide notice to individuals who submit personal information to OAH.

1)      This notice does not apply to information provided by an agency or to routine contact information collected by OAH for the purpose of identification or communication regarding the case.

2)      To the extent this form seeks information about a need for accommodation, OAH requests the information for the sole purpose of making a determination about the accommodation an individual is seeking.  An individual seeking an accommodation is not required to use this form; it is provided as a convenience only.  OAH can request this information in accordance with the Americans with Disabilities Act (42 United State Code Section 12101 et seq.).

3)      Requests for Public Records or information maintained in accordance with the Information Practices Act shall be directed to the OAH Public Records Officer, 2349 Gateway Oaks Drive, Suite 200, Sacramento, CA 95833, (916) 263-0550, or OAHPRA@dgs.ca.gov.

## City of San Diego v. American Asphalt South, Inc. – Efforts to Confer

Complainant City of San Diego ("City"), through counsel, has conferred with counsel for American Asphalt South, Inc. ("AAS") regarding hearing dates. The City believes on the basis of that discussion that AAS is available for the hearing dates set out in the accompanying Request to Set. The City thus submits this meet-and-confer statement out of an abundance of caution.

The City notes, however, that the Parties have not as yet reached agreement on the number of days required for hearing. The City submits that four days (30 hours) is sufficient. AAS has stated that it will need additional information before providing an estimate of days needed.